UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ELAZAR ROSENSHINE,

               Plaintiff,

       -against-

A. MESHI COSMETICS INDUSTRIES
LTD., A TO Z IMPORT INC., and EVAL
NOACH,

               Defendants.
----------------------------------------------------------x

**MEMORANDUM AND ORDER**

18-CV-3572 (LDH) (LB)

LaSHANN DeARCY HALL, United States District Judge:

On June 18, 2018, Plaintiff Elazar Rosenshine[1] filed this action *pro se* alleging trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and requesting that the Court enter an *ex parte* order seizing certain allegedly counterfeit goods in New York and Israel. For the reasons stated below, the request for an *ex parte* seizure order is denied.

## BACKGROUND[2]

Plaintiff purports to be the successor in interest to the U.S. trademark STAR GEL for hair-care products. In 2004, Defendant A. Meshi Cosmetics Industries Ltd. ("Meshi") entered into a written agreement with Global Manufacturing Import Export Inc. ("Global Manufacturing") to manufacture a hair-care product bearing the name STAR GEL. (Compl. ¶ 1, ECF No. 1.) The written agreement provided Global Manufacturing the exclusive right to use the name STAR GEL. (*Id.* ¶ 2.) Global Manufacturing sold STAR GEL-branded products to customers and distributors throughout the United States, including to Defendant A to Z Import Inc. ("A to Z"). (*Id.* ¶ 5.) On July 31, 2014, Global Manufacturing executed an agreement

---

[1] While the complaint refers to "Plaintiffs" throughout, only Plaintiff Rosenshine signed the complaint and is referenced therein.
[2] The following facts are drawn from Plaintiff's complaint and attached documents.

assigning the STAR GEL trademark to International Grooming, Inc. ("International Grooming").[3] (Compl. ¶ 8, Exhibit 4.) In November 2016, International Grooming became aware that A to Z had been acquiring hair-care products directly from Meshi and was selling these products under the STAR GEL name. (Compl. ¶ 10.) On June 20, 2017, International Grooming sent demand letters to Defendants requesting that they cease the use of the STAR GEL name. (Compl. ¶ 11.) Despite this demand, Defendants continued to sell hair-care products under the STAR GEL name. (Compl. ¶ 12.)

On December 19, 2017, International Grooming registered the STAR GEL mark with the United States Patent and Trademark Office under Registration Number 5,359,134. (Compl. Exhibit 7.) On January 31, 2018, International Grooming executed a Trademark Assignment Agreement purporting to assign the STAR GEL trademark to Plaintiff Elazar Rosenshine. (Compl. Exhibit 5.)

Plaintiff alleges to have devoted substantial time, effort, and resources to the promotion and development of the STAR GEL mark and associated products. (Compl. ¶ 18.) Plaintiff claims that, as a result of his efforts, the public has come to recognize and rely upon the STAR GEL mark as an indication of the high quality associated with Plaintiffs' products. (*Id*.)

In conjunction with his complaint, Plaintiff filed an unsworn document captioned "Affidavit/Affirmation in Support of Ex Parte Seizure Order Seeking Seizure of Counterfeit Goods" (the "Affirmation"). (ECF No. 2.) In the Affirmation, Plaintiff requests that the Court issue an *ex parte* seizure order directing the United States Marshals Service to seize the allegedly counterfeit goods and "all documents relating to the counterfeit goods" from two locations in Brooklyn, New York and a location in Israel. (Aff. ¶ 1.) Plaintiff further requests that Plaintiff

---

[3] Notably, the STAR GEL mark was not registered with the United States Patent and Trademark office until December 19, 2018. (Compl. Exhibit 7.)

2

be allowed to accompany the U.S. Marshals "when the seizure occurs so that infringing items can be identified." (Aff. ¶ 7.) Plaintiff claims that an *ex parte* order is necessary because "[t]he Defendants against whom seizure would be ordered . . . would destroy, move, hide, or otherwise make such matter inaccessible to the court, if I were to proceed on notice to Defendants." (Aff. ¶ 5.) Plaintiff also requests that he be exempted from posting a bond considering his financial status. (Aff. ¶ 8.)

## DISCUSSION

Pursuant to 15 U.S.C. § 1116, a district court can grant requests for *ex parte* seizures "of goods and counterfeit marks . . . and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved . . . ." 15 U.S.C. § 1116(d)(1)(A). To grant such a request, a party must satisfy two threshold requirements. *First*, the party seeking seizure must provide notice to the United States Attorney for the judicial district in which such order is sought. 15 U.S.C. § 1116(d)(2). *Second*, the party seeking seizure must provide adequate security to cover any damages caused by a wrongful seizure. 15 U.S.C. § 1116(d)(4). Further, the court must find that it "clearly appears from specific facts" that:

> (i) an order other than an ex parte seizure order is not adequate . . . ; (ii) the applicant has not publicized the requested seizure; (iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services; (iv) an immediate and irreparable injury will occur if such seizure is not ordered; (v) the matter to be seized will be located at the place identified in the application; (vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and (vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

15 U.S.C. § 1116(d)(4)(B). Plaintiff's application fails almost every one of these requirements.

3

Plaintiff has provided no evidence that he has complied with the requirement that he notify the U.S. Attorney for the Eastern District of New York. Further, rather than provide adequate security to cover any damages caused by a wrongful seizure, Plaintiff asks that the court waive this requirement. But the provision requiring the posting of adequate security is not discretionary. *See* 15 U.S.C. § 1116(d)(4)(A) ("The court *shall* not grant such an application unless . . . the person obtaining an order under this subsection provides the security determined adequate by the court for the payment of such damages as any person may be entitled to recover as a result of a wrongful seizure or wrongful attempted seizure under this subsection.") (emphasis added). Moreover, setting aside the pre-requisites to the sought *ex parte* relief, Plaintiff has failed to provide specific facts establishing the requirements of 15 U.S.C. § 1116(d)(4)(B).

Plaintiff's Affirmation includes conclusory allegations that largely track the statute. For example, Plaintiff claims that in the absence of such an order, defendants will "continue to sell the counterfeit version of the federally registered Star Gel® branded merchandise, causing me to suffer major damages." (Aff. ¶ 2.) But Plaintiff provides no specific facts, as required by the statute, to support this conclusory allegation. Plaintiff does not, for example, identify specific stores where the allegedly counterfeit goods are sold, decreases in Plaintiff's sales that could be attributable to Defendants, or any evidence of customer confusion. Plaintiff has not alleged that the product offered for sale by A to Z is of such inferior quality that the public could be harmed by mistakenly purchasing the alleged counterfeit products rather than Plaintiff's products.[4] Plaintiff further asserts that in the absence of an order, Defendants "would destroy, move, hide,

---

[4] To the contrary, Plaintiff alleges that the product offered for sale by A to Z was sourced from Plaintiff's very own supplier, implying that the products are identical. (Compl. ¶ 10.)

or otherwise make such matter inaccessible to the court." (Aff. ¶ 5.) Once again, however, Plaintiff provides no specific facts to support this conclusory statement.

Further, while Plaintiff lists three addresses where the allegedly counterfeit goods are located, Plaintiff fails to offer any specific facts as to why "the matter to be seized will be located at the place identified in the application." 15 U.S.C. 1116(d)(4)(B)(v). For example, Plaintiff does not explain how he became aware that any allegedly counterfeit goods are located at the addresses provided or how he knows the goods remain there.[5]

## CONCLUSION

For the foregoing reasons, Plaintiff's request for an *ex parte* seizure order is DENIED. This matter is referred to the Honorable Lois Bloom for all pre-trial proceedings.

 /s/ LDH
LaShann DeArcy Hall
United States District Judge

Dated: Brooklyn, New York
September 20, 2018

---

[5] Moreover, Plaintiff's request that the Court order U.S. Marshals, accompanied by Plaintiff, to seize goods located in Israel, likely exceeds this Court's authority under 15 U.S.C. § 1116.