UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

OREN ROSENSHINE AND AMIR
ROSENSHINE,

                              Plaintiffs,

            v.

A. MESHI COSMETICS INDUSTRIES LTD., A
TO Z IMPORT INC., EYAL NOACH,

                              Defendants.

**MEMORANDUM AND ORDER**
18-cv-3572 (LDH)

LaSHANN DeARCY HALL, United States District Judge:

Plaintiffs Oren Rosenshine and Amir Rosenshine, proceeding pro se, bring the instant

action against Defendants A. Meshi Cosmetics Industries Ltd. ("A. Meshi"), A to Z Import Inc.,

and Eyal Noach (collectively, "A to Z") asserting claims pursuant to the Lanham Act, 15 U.S.C.

§§ 1114, 1125, and New York state laws.  A. Meshi moves pursuant to Rules 12(b)(1), 12(b)(2),

and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of subject-

matter jurisdiction, lack of personal jurisdiction, and failure to state a claim.

## BACKGROUND[1]

Plaintiffs own the federally-registered Star Gel trademark (the "Trademark").  (Am.

Compl. ("Compl.") ¶ 15, ECF No. 32.)  The Trademark was created in 2004 by Global

Manufacturing Import Export, Inc. ("Global Manufacturing"), a New York corporation.  (*Id.*

¶¶ 4, 6.)  On October 5, 2004, Global Manufacturing entered into an agreement with A. Meshi,

an Israel-based cosmetics producer, for the manufacture of hair gel bearing the Trademark (the

---

[1] Unless otherwise indicated, the following facts are taken from the amended complaint. (ECF No. 32.)  Citations to
the complaint refer to the pagination assigned by the Court's ECF system.

"Agreement"). (*Id*.) The Agreement granted Global Manufacturing the exclusive right to the Trademark without limitations.[2] (*Id*. ¶ 5.) Global Manufacturing sold hair gel bearing the Trademark to retail customers and distributors across the U.S., including to A to Z, a Brooklyn-based distributor of grocery items. (*Id*. ¶¶ 6, 7.) On July 31, 2014, Global Manufacturing assigned its rights to the Trademark to International Grooming, Inc. ("International Grooming"). (*Id*. ¶ 8; Compl., Ex. 4.) International Grooming continued to market the Star Gel brand in the same manner as Global Manufacturing. (*Id*. ¶ 9.)

According to the Complaint, in November 2016, International Grooming discovered that A. Meshi had been selling counterfeit versions of the hair gel, and approaching U.S. customers, including A to Z, to do the same. (Compl. ¶ 10.) Plaintiffs allege that Defendants have established a "sprawling counterfeit operation targeted at [the Trademark]" and that the mark used on the counterfeit products is essentially indistinguishable from the Trademark. (*Id*. ¶¶ 11, 36.) Plaintiffs further allege that the only distinction between the labels on the official Star Gel hair gel, and those on the counterfeit goods sold to A to Z is the removal of the "™" indication included on the Trademark from the mark included on the counterfeit goods, and the replacement of Plaintiffs' address with A to Z's New York address. (*Id*. ¶ 31; *see also* Compl., Ex. 5.) On June 20, 2017, International Grooming sent letters to Defendants, notifying them of its trademark rights and demanding that they cease all use of the Trademark. (*Id*. ¶ 12.) Plaintiffs allege that despite these warnings, Defendants' unauthorized use of the Trademark persists. (*Id*. ¶¶ 13, 16, 21.)

---

[2] The complaint alleges that the Agreement grants Global Manufacturing the exclusive right to the Trademark. (Compl. ¶ 5.) However, the language of the Agreement (translated from Hebrew) grants Global Manufacturing the exclusive right to use the Star Gel name. (*See* Compl., Ex. 3 ¶ 7 ("The name of the gel will be Star Gel according to the logo that was recently sent and hereby attached. Buyer has exclusivity on this name without time limit.").)

On December 19, 2017, International Grooming registered the Trademark with the U.S. Patent and Trademark Office. (Compl., Ex. 6.) On January 31, 2018, International Grooming assigned all rights to the Trademark to Elazar Rosenshine, who, on January 1, 2019, assigned all rights to the Trademark to Plaintiffs. (Compl. ¶ 15; *id.*, Ex. 7; *id.*, Ex. 8.) Plaintiffs allege that the public has come to recognize the Trademark and rely on the Star Gel brand as an indication of high quality based on Plaintiffs' significant investment in the promotion and development of the Trademark. (Compl. ¶ 19.) The allegedly counterfeit products are distributed through the same retail channels and sold to the same target customers as Plaintiffs' Star Gel brand. (*Id.* ¶ 23.)

## DISCUSSION

### I.     Personal Jurisdiction

#### A.     Standard of Review

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). To survive a motion to dismiss for lack of personal jurisdiction, "a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). That is, a plaintiff must allege "facts that, if credited, would suffice to establish jurisdiction over the defendant." *In re Magnetic Audiotape*, 334 F.3d 204, 205 (2d Cir. 2006) (internal quotations and modifications omitted). It is true that personal jurisdiction must eventually be established by a preponderance of the evidence at an evidentiary hearing or at trial. *A. I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993). However, "where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a

controverting presentation by the moving party." *Id*. at 79-80; *see also Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1991).

### B.    New York's Long-Arm Statute

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" N.Y. C.P.L.R. § 302(a)(1). To determine whether New York's long-arm statute permits the exercise of personal jurisdiction over a foreign defendant, the court must conduct a two-step inquiry. *First*, the court must determine whether the defendant transacts any business in New York or contracts anywhere to supply goods or services in the state. *Best Van Lines v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). In conducting this inquiry, the court must examine "the totality of the defendant's activities within the forum" to determine whether a defendant has contracted to supply goods in New York in such a way that it constitutes 'purposeful activity. *Id*. at 247 (quoting *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873-74 (2d Cir. 1975)) (setting out the standard to determine personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1)); *see also Chloe*, 616 F.3d at 169 (internal modifications, citations and quotations omitted) ("[A] defendant need not be physically present in New York to transact business there within the meaning of the first clause of section 302(a)(1), as long as he engages in [p]urposeful activities or volitional acts through which he avails himself of the privilege of conducting activities within the State, thus invoking the benefits and protections of its laws."). *Second*, the court must determine whether the claims asserted arise from such business transactions or contracts to supply goods in New York. *Best Van Lines*, 490 F.3d at 246. Only where both requirements are met, may the court exercise personal jurisdiction. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 789 (2d Cir. 1999) (stating that section 302(a)(1)

confers jurisdiction over a defendant who has only "minimal contacts" with New York and has "entered a contract anywhere to supply goods or services in the state," provided that the plaintiff's claims arise from these in-state activities.); *Chloe*, 616 F.3d at 169-170 (same).

           1.      Whether A. Meshi Contracted to Supply Goods in New York

A. Meshi argues that it did not contract with A to Z to supply goods in New York. (Mem. L. Supp. A. Meshi Mot. Dismiss ("Def. Mot.") 3, ECF No. 47-1.)  To this point, A. Meshi contends that its agreement with A to Z was not directed at New York because the agreement provided for A. Meshi to deliver the products to A to Z in Israel on an "ex-work"[3] basis, and there was no agreement or requirement that A to Z resell the products in New York.  (*Id*.)  The Court is unpersuaded.

As the New York Appellate Division has observed, section 302(a)(1) was "enacted specifically to abrogate the 'mere shipment' rule."[4] *Alan Lupton Assocs., Inc. v. Ne. Plastics, Inc.*, 105 A.D.2d 3, 6, 482 N.Y.S.2d 647 (N.Y. App. Div. 1984).  As such, it is well established that the shipping terms used in a contract alone are insufficient to divest New York courts of jurisdiction under section 302(a)(1) where jurisdiction is established when an individual "contracts anywhere to supply goods or services in the state." *See e.g. Roberts-Gordon LLC v. Pektron PLC*, 999 F. Supp. 2d 476, 479-80 (W.D.N.Y. 2014) (collecting cases for the proposition that section 302(a) does not distinguish between goods shipped and goods supplied, and finding that the defendant had supplied goods in New York where the defendant had, among other things, purposely manufactured goods for a New York company knowing that,

---

[3] Ex-work is a term used by the International Chamber of Commerce, and indicates that "the seller delivers when it places the goods at the disposal of the buyer at the seller's premises."  Int'l Chamber of Commerce, Incoterms 2010: ICC Rules for the Use of Domestic and International Trade Items 15 (2010) (hereinafter "Incoterms"), available at https://iccwbo.org/resources-for-business/incoterms-rules/incoterms-rules-2010/ (last visited March 30, 2020).

[4] Moreover, the legislative history indicates that "Section 302(a)(1) was enacted to abrogate the 'mere shipment' rule."  *See* Report of the Law Revision Commission for 1979, 1979 Leg. Doc. No. 65, McKinney's Session Laws of N.Y. No. 2, p. A-31, A-59 (April 1979)

"irrespective of who was responsible for shipping costs or shipping liability," the goods would

end up in New York state).  Accordingly, courts in this circuit have routinely denied motions to

dismiss where defendants argued that they did not contract to sell goods within New York

because the underlying contract provided for delivery of the goods outside of New York.

*Laumann Mfg. Corp. v. Castings USA*, 913 F. Supp. 712, 717 (E.D.N.Y. 1996) (breach of

contract action where out-of-state Free on Board ("F.O.B.") term in the seller's contract did not

allow seller to escape the reach of § 302(a)(1), because it did not alter whether seller "supplied"

goods to New York); *see also Cavalier Label Co. v. Polytam, Ltd.*, 687 F. Supp. 872, 877

(S.D.N.Y. 1988) (shipment of goods "F.O.B. Israel" did not defeat jurisdiction where defendant

was "well aware that the coats it produced were destined for New York," because it had

contracted to supply coats to a New York wholesaler).

        In *Cleopatra*, the court denied a defendant's motion to dismiss on facts substantially

similar to those present here.  *See generally*, *Cleopatra Kohlique Inc. v. New High Glass, Inc.*,

652 F. Supp. 1254 (E.D.N.Y. 1987).  In that case, a seller asserted a third-party breach-of-

contract claim against an Italy-based mascara case manufacturer.  *Id*. at 1255.  The manufacturer

moved to dismiss the seller's claim for lack of personal jurisdiction on the grounds that the

parties had not contracted to sell goods in New York because the contract had been formed in

Italy and provided that the goods would be shipped F.O.B. Milan.  *Id*.  The court held that

despite the inclusion of the F.O.B. clause in the contract, the court's exercise of personal

jurisdiction over the manufacturer was proper under New York's long-arm statute because the

manufacturer's own statements indicated that it had "knowingly and intentionally shipped the

goods, or a portion thereof, to New York."  *Id*. at 1257.  The court reasoned that "[a]lthough risk

of loss may have passed in Milan, it does not alter the practical reality that [the defendant]

contracted to supply, and did in fact ship, goods into New York.  This activity places this case squarely within § 302(a)(1)." *Id*. at 1258.  The same conclusion is warranted here.

Contrary to A. Meshi's contention, it is of no consequence that the goods may have come under A to Z's control outside of New York.  A. Meshi contracted with a New York company, A to Z, to supply hair gel.  (Compl. ¶ 31.)  To fulfill this contract, A. Meshi affixed labels with A to Z's New York address to the allegedly counterfeit goods, and supplied them to A to Z.  (Compl. ¶¶ 7, 10, 31.)  These facts provide a sufficient basis for the reasonable inference that A. Meshi was aware that the goods would be sold in New York.  The Court therefore finds that A. Meshi contracted for the sale of goods in New York.

2.    Whether Plaintiffs' claims arise from A. Meshi's Contacts

To satisfy the second prong of section 302(a)(1), known as the nexus requirement, a plaintiff must demonstrate a "substantial relationship" or "articulable nexus" between the claim asserted and the defendant's actions in New York.  *Best Van Lines*, 490 F.3d at 246.  "[W]here at least one element [of a plaintiff's claim] arises from the [defendant's] New York contacts, the relationship between the business transaction and the claim asserted supports a finding of jurisdiction under section 302(a)(1)."  *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013).  In a trademark infringement case, the nexus requirement may be satisfied even where the alleged infringement did not occur in New York, so long as the claims arise from the defendant's contract to supply goods in the state.  *See RV Skincare Brands LLC v. Digby Invs. Ltd.*, 394 F. Supp. 3d 376, 381 n.2 (S.D.N.Y. 2019) (finding the nexus requirement satisfied under section 302(a)(1), because the defendant's contacts with New York—shipping allegedly infringing products to New York retailers—were the basis underlying the trademark infringement claims); *Alcon Labs, Inc. v. Allied Vision Grp., Inc.*, 2019 WL 254038, at *3

(E.D.N.Y. 2019) (finding that the court's exercise of personal jurisdiction over the defendant was proper because the plaintiff's trademark infringement claim arose from the defendant's shipment of the allegedly infringing products to New York.); *see also Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F. Supp. 433, 436 (S.D.N.Y. 1996) (finding that a non-domicilliary defendant's shipments of allegedly infringing goods were "substantially related" to plaintiffs' claim of trademark infringement, and thus satisfied the nexus requirement of section 302(a)(1)).

Here, Plaintiffs assert several claims against A. Meshi alleging that it infringed their trademark rights by distributing counterfeit hair gel labeled with a mark nearly indistinguishable from the Trademark. (Compl. ¶¶ 7, 10, 11, 23, 32, 36.) Plaintiffs allege that A. Meshi shipped such counterfeit goods to A to Z, a New York corporation, and affixed the goods with a label which included A to Z's New York address. (Compl. ¶¶ 7, 10, 31.) This is sufficient to establish that Plaintiffs' claims arise out of A. Meshi's contract to supply goods in New York.

### C.    Due Process Analysis

Prior to exercising personal jurisdiction over a defendant, the court must determine whether such exercise would comport with the principles of due process. In the Second Circuit, the due process analysis consists of two inquiries: "the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe*, 616 F.3d at 164. The minimum contacts inquiry addresses "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id*. The reasonableness inquiry, on the other hand, asks "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id*.

1.      A. Meshi Has Sufficient Contacts with New York

The Second Circuit has held that a defendant's act of sending goods into New York is purposefully directed towards the state for the purposes of establishing personal jurisdiction.  *Id.* at 171 (concluding that offering bags for sale to New York customers and shipping a counterfeit bag to New York on only one occasion constituted purposeful availment for the purposes of the minimum contacts inquiry); *see also RV Skincare Brands LLC v. Digby Invs. Ltd.*, 394 F. Supp. 3d 376, 383-4 (S.D.N.Y. 2019) (finding purposeful availment where non-domiciliary fulfillment service knowingly affixed shipping labels with New York addresses onto its packages and shipped relevant products into New York).  Here, as the Court concluded above, A. Meshi knowingly shipped numerous units of hair gel to A to Z in New York.  (*See supra*. 8-9.)  A. Meshi has therefore "purposefully availed itself of the privilege of doing business in [New York]," and thus satisfied the minimum contacts requirement of the due process analysis for personal jurisdiction.  *Licci ex rel. Licci*, 732 F.3d at 170.

2.      Personal Jurisdiction in New York is Reasonable

There are five factors relevant to the reasonableness analysis:  (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).  Notably, "the primary concern is the burden on the defendant."  *United States Bank Nat'l Ass'n v. Bank of Am. Nat'l Ass'n*, 916 F.3d 143, 151 n.5 (2d Cir. 2019).

On the facts of this case, the Court's exercise of personal jurisdiction over A. Meshi is reasonable.  *First*, the exercise of jurisdiction will not burden A. Meshi any more than the lack of such exercise would burden the other parties in the case.  That is, the first factor "cuts both ways" because although travel to New York will undoubtedly burden A. Meshi, were Plaintiffs to be forced to seek relief in Israel, a great portion of the relevant witnesses and evidence would need to be transported to Israel.  *Chloe*, 616 F.3d at 173 ("[I]nconvenience cuts both ways since all of [the plaintiff's] witnesses would have to travel to California if the case were brought there.").  *Second*, New York "has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (internal quotes omitted).  Plaintiffs are residents of New York, and thus the state's interest is relevant here.  *Third*, given that the injury occurred in New York, and the majority of the relevant evidence and witnesses are located in the state, Plaintiffs have a clear interest in obtaining relief in this jurisdiction.  The *fourth* and *fifth* factors also weigh in favor of reasonableness because Israel does not share the United States's or New York's interest in enforcing the state or federal trademark laws at issue.

*      *      *

For these reasons stated above, the Court's exercise of personal jurisdiction over A. Meshi is proper.

## II.     Subject-Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiffs bear the burden of establishing beyond a preponderance of the evidence that subject-matter jurisdiction exists.  *Id.*  "In reviewing a Rule

12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiffs.'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir.2004)).  Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings."  *Makarova*, 201 F.3d at 113.

> **A.      Plaintiffs' Lanham Act Claims**

A. Meshi argues that Plaintiffs lack standing to assert claims against it for trademark counterfeiting, and trademark infringement under the Lanham Act because Plaintiffs' trademark was not registered until December 19, 2017.  (Def. Mot. 19.)  The Court disagrees.

Section 32 of the Lanham Act provides that any person who uses a registered mark in commerce without the consent of the registrant shall be liable to the registrant for trademark infringement.  15 U.S.C. § 1114(1).  As such, to establish standing to assert a claim under section 32, a plaintiff need only allege that he or she is the registrant of the relevant trademark.  *See DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 622 (2d Cir. 1980) (finding that plaintiff lacked standing to bring trademark infringement claim under section 32, because plaintiff was not the assignee of the trademark allegedly infringed).  Notably, the definition of registrant under section 32 encompasses legal representatives, predecessors, successors, and assigns of the registrant.  15 U.S.C. § 1127 ("The term…"registrant" embrace[s] the legal representatives, predecessors, successors and assigns of such… registrant.").

Here, as A. Meshi correctly argues, Plaintiffs' predecessor did not register the Trademark until December 19, 2017.  (Defs. Mot. 8; Compl., Ex. 6.)  This fact, however, does not preclude Plaintiffs' from having standing to assert claims for any infringement that occurred on or after that date.  Indeed, Plaintiffs allege that, as of the date of their complaint, May 6, 2019, A.

Meshi's infringement of the Trademark was ongoing. (*See* Compl. ¶¶ 7, 10, 13, 17, 21.) Thus, contrary to A. Meshi's contention, as owners of the Trademark, Plaintiffs have sufficiently alleged standing to assert their section 32 claims.[5]

### B.      Plaintiffs' Claim for Trademark Dilution

A. Meshi contends that Plaintiffs lack standing to bring their state law trademark dilution claim because it is pre-empted by federal trademark law. (Def. Mot. 21.) Specifically, A. Meshi maintains that because Plaintiffs' claims relate solely to the conduct allegedly causing the infringement or dilution of the Trademark, and do not involve any allegation of substantial injury to the public, Plaintiffs' claims are pre-empted. (*Id.*) A. Meshi is mistaken. Indeed, the Second Circuit has expressly stated that "[s]tate law is not preempted [by the federal trademark statute, 15 U.S.C. § 1125(c)(2)], as it is in patent and copyright laws." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 118 (2d Cir. 2006). Accordingly, A. Meshi's motion on this ground is without merit.

### C.      Plaintiff's Breach of Contract Claim

A. Meshi contends that Plaintiffs lack standing to assert their breach of contract claim because the Agreement, which was initially between A. Meshi and Global Manufacturing, Plaintiffs' predecessor in interest, was never assigned to Plaintiffs. (Def. Mot. 24.)

An assignment is an "agreement between the assignor and assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged." *Citibank, N.A. v. Tele/Res., Inc.*, 724 F.2d 266, 269 (2d Cir. 1983). "Under common

---

[5] A. Meshi purports to challenge Plaintiffs' standing to assert their claims for contributory and vicarious trademark infringement. However, A. Meshi fails to make any arguments in support of its challenge. (*See* Def.'s Mot. 19 ("Because Plaintiffs did not hold a mark meriting protection under the Lanham Act during the relevant time period, counts 1 and 2 must be dismissed (and counts 6-7, for vicarious or contributory liability also fail).".) On this basis, to the extent A. Meshi seeks dismissal of Plaintiff's vicarious trademark liability and contributory trademark liability claims, its request is denied.

law, when an assignment is made, "[the] assignee steps into the assignor's shoes and acquires whatever rights the latter had."  *Furlong v. Shalala*, 156 F.3d 384, 392 (2d Cir. 1998). Moreover, "[u]nder New York law, contracts are freely assignable absent language which expressly prohibits assignment."  *In re Stralem*, 303 A.D.2d 120, 122 (N.Y. App. Div. 2003).

As a threshold matter, the Agreement here did not contain an anti-assignment provision. (*See* Compl., Ex. 2, 3.).  Moreover, Plaintiff Amir Rosenshine has declared that the Agreement was assigned to Plaintiffs "before the Complaint was filed."  (Plaintiff's Declaration ("Pl.'s Decl.") ¶ 12, ECF No. 48-1.)  In its reply, A. Meshi contends that even if the Agreement was assigned to Plaintiffs before the amended complaint, the assignment occurred after the original complaint was filed.  (Def. Mot. 24.)  Even if legally relevant, A. Meshi proffers no support for this factual assertion.  When reviewing a motion to dismiss for lack of subject-matter jurisdiction, a court "must accept as true all material factual allegations in the complaint," *Tiraco*, 963 F. Supp. 2d at 190, and, "may refer to evidence outside the pleadings," *Makarova*, 201 F.3d at 113.  Relying, on Plaintiff Amir Rosenshine's declaration, and in the absence of evidence to the contrary, the Court finds that at this stage, Plaintiffs have sufficiently established subject-matter jurisdiction to defeat A. Meshi's motion to dismiss.

## III.  Failure to State a Claim

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct.  *Id*.  While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss.

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

Moreover, where, as here, plaintiffs are proceeding pro se, their pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 U.S. 471, 474 (2d Cir. 2006)).  A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)).

### A.    Trademark Abandonment

A. Meshi contends that Plaintiffs' state and federal trademark claims should be dismissed because Plaintiffs abandoned the Trademark. (Def.'s Mot. 17.)  Not so.

Under the Lanham act, "[a] mark shall be deemed to be 'abandoned' if either . . . its use has been discontinued with intent not to resume such use . . . [or] when any course of conduct of the owner . . . causes the mark to become the generic name . . . ."  15 U.S.C. § 1127.  As such, the question of whether a mark has been abandoned raises issues of fact that should not typically be resolved on a motion to dismiss.   Here, Plaintiffs have alleged that the Agreement granted them exclusive rights to the Star Gel name, and that they continued to use the Star Gel name and the Trademark.  (*See* Compl. ¶¶ 4-6, 9, 19, 75, 76, 79.)  The Court finds these allegations sufficient to defeat A. Meshi's motion on the grounds of trademark abandonment. *See, e.g., George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 646 (S.D.N.Y. 2014) (rejecting

defendant's motion to dismiss trademark infringement claims for reason of abandonment, because complaint sufficiently alleged continuous use of the mark, and alleged facts inconsistent with intent to abandon).

**B.     Lack of Protectable Interest**

A. Meshi contends that Plaintiffs' claims for trade dress infringement, false designation of origin, trademark dilution, federal unfair competition, and false advertising should be dismissed because Plaintiffs lack statutory standing to assert claims under section 43 of the Lanham Act. (Def. Mot. 19-20.) To this point, A. Meshi contends that Plaintiffs failed to "demonstrate that they obtained a common law right to a trademark through actual and continuous use of the mark" as necessary to establish statutory standing.[6] (*Id.*) This argument is more properly characterized as an abandonment argument, which as addressed above, the Court declines to resolve. *George Nelson Foundation*, 12 F. Supp. 3d at 646 (finding that the plaintiff had sufficiently alleged continuous use of its trademark in commerce and that, in any event, the defendant's argument that the plaintiff had no protectable interest in the trademark was "more properly framed as a question of abandonment, rather than a failure to establish rights to the mark").

**C.     Lack of Direct Competition**

A. Meshi also argues that Plaintiffs lack standing to assert their claim for federal unfair competition and false advertising because A. Meshi is not Plaintiffs' direct competitor. (Def. Mot. 21.) As a threshold matter, A. Meshi's contention is inconsistent with the complaint. In at least two paragraphs, Plaintiffs allege that A. Meshi is their direct competitor. (Compl. ¶¶ 21,

---

[6] "[W]hat has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)).

23.)

Even absent Plaintiff's allegation that A. Meshi is their competitor, Plaintiffs could
nonetheless survive this motion to dismiss because the Lanham Act's protections are not limited
to direct competitors of alleged false advertisers.  *Lexmark Int'l, Inc. v. Static Control
Components, Inc.*, 572 U.S. 118, 138 (2014) ("[A]lthough diversion of sales to a direct
competitor may be the paradigmatic direct injury from false advertising, it is not the only type of
injury cognizable under § 1125(a).").  Indeed, to establish statutory standing under section 43, a
plaintiff need only satisfy the two-part, zone of interest and proximate cause test established in
*Lexmark*.  *Id*. at 130, 132.  *First*, the plaintiff must demonstrate that he was within the zone of
interest by alleging an injury to a commercial interest in reputation or sales.  *Id*. at 131-132.
*Second*, the plaintiff must allege an "economic or reputational injury flowing directly from the
deception wrought by the defendant's advertising."  *Id*. at 133.  In determining whether a
plaintiff had standing to assert a claim under section 43, "[t]he relevant question is not whether
the plaintiff's interest is 'reasonable,' but whether it is one the Lanham Act protects; and not
whether there is a 'reasonable basis' for the plaintiff's claim of harm, but whether the harm
alleged is proximately tied to the defendant's conduct."  *Id*. at 137.

Plaintiffs allege that A. Meshi's counterfeit goods are offered through the same channels
of distributions as Plaintiffs' products; and that A. Meshi's unauthorized use of the Trademark
causes confusion as to the source of the goods, and deceives the public resulting in injury to
Plaintiffs' and the Trademark's reputation and goodwill.  (Compl. ¶ 23, 40, 91, 96-97.)  These
facts are sufficient to bring Plaintiffs within the zone of interest and demonstrate economic and
reputational injury flowing directly from A. Meshi's conduct.

16

### D.    Plaintiff's Trade Dress and False Designation of Origin Claim

A. Meshi contends that Plaintiff's claims for trade dress and false designation of origin fail because Plaintiffs have failed to demonstrate or explain the distinctive nature of the Trademark.[7]  (Def. Mot. 20.)  To this point, A. Meshi contends that Plaintiffs reliance on the photographic evidence attached to the complaint is insufficient to plead a claim for trade dress infringement.  (*Id.*)  Instead, A. Meshi maintains that Plaintiff was required by law to set out in the complaint the distinctive elements of the Trademark.  (*Id.*)  A. Meshi is correct.

A plaintiff asserting a trade dress infringement claim must: "(1) offer a precise expression of the character and scope of the claimed trade dress; (2) allege that the claimed trade dress is non-functional; (3) allege that the claimed trade dress has secondary meaning; and (4) allege that there is a likelihood of confusion between the plaintiff's good and the defendant's [good]." *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 75 (S.D.N.Y. 2009) (quoting *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x. 389, 391 (2d Cir. 2003)).  It is well established that, even where a plaintiff attaches photographs of his or her trademark to the complaint, a plaintiff must still "articulate the elements of their product design with specificity to be afforded trade dress protection," to satisfy the first element of a trade dress infringement claim.  *Shevy Custom Wigs, Inc. v. Aggie Wigs*, 2006 WL 3335008, at *4 (EDNY Nov. 17, 2006); *see also Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 47 (2d Cir. 2018) (holding that photos of the claimed trade dress could not make up for a deficiency in the plaintiff's precise expression of its distinctive features).  Plaintiffs' complaint is devoid of any such articulation.  Accordingly, Plaintiffs' trade dress claim must fail.

---

[7] A. Meshi purports to move to dismiss "claim 3" in Plaintiffs' complaint.  Notably, however, claim 3 contains causes of action for both trade dress infringement and false designation of origin.  Because A. Meshi has raised arguments challenging only Plaintiffs' trade dress infringement claim, (Def. Mot. 20.), to the extent that A. Meshi moves to dismiss Plaintiffs' claim of false designation of origin, that motion is denied.

### E.  Vicarious Liability

A. Meshi argues that Plaintiffs' vicarious trademark infringement claim should be dismissed because Plaintiffs have not sufficiently alleged an actual or apparent partnership or agency relationship between A. Meshi and A to Z.  (Def. Mot. at 22.)  The Court agrees.

"Vicarious liability for trademark infringement requires a finding that the defendant and the infringer have an apparent or actual partnership, [or] have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Kelly-Brown v. Winfrey* ("*Kelly II*"), 717 F.3d 295, 314 (2d Cir. 2013) (internal quotations omitted).  "[T]o demonstrate the existence of a partnership, a plaintiff must prove four elements: (1) the parties' sharing of profits and losses; (2) the parties' joint control and management of the business; (3) the contribution by each party of property, financial resources, effort, skill, or knowledge to the business; and (4) the parties' intention to be partners."  *Kelly-Brown v. Winfrey*, 2012 WL 701262, at *7 (S.D.N.Y. Mar. 6, 2012) ("*Kelly I*"), *aff'd in relevant part*, 717 F.3d 295 (2d Cir. 2013).

Here, Plaintiff has failed to plead facts sufficient to satisfy any of the four elements.  *See Kelly I*, 2012 WL 701262, at *7 (dismissing the plaintiff's vicarious trademark infringement claim on the grounds that she had failed to adequately allege the existence of a partnership or agency relationship).  Indeed, the only allegation remotely related to any partnership, is that "Defendants each have the ability to control the actions of the other Defendants, fund the advertising activities of the other Defendants, and derive a direct financial benefit from the illegal acts of the other Defendants."  (Compl. ¶ 104.)  That allegation is conclusory, and far too vague to support the inference that Defendants were in a partnership necessary to support a finding of vicarious liability.  *See Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d

228, 247 (S.D.N.Y. 2010) (dismissing vicarious trademark infringement claim because "vague, puffery-like references to a 'partnership' between [defendants] [were] not enough to support vicarious liability").

    **F.**    **Contributory Liability**

    A. Meshi contends that Plaintiffs' claim of contributory trademark infringement must be dismissed because Plaintiffs have not stated pleaded facts sufficient to allege that it induced A to Z's alleged infringement.  (Def. Mem. 21-22.)  The Court disagrees.

    Plaintiffs have alleged that A. Meshi continued to supply the allegedly counterfeit products after it had reason to know that rights to the Trademark were held in New York, and that it was selling to a third party, thereby infringing on those rights.  (*See* Compl. ¶¶ 12, 13, 16, 17, 21; Compl., Ex. 2, 3.)  These allegations plausibly establish A. Meshi's knowledge and continued supply of the infringing products to the primary infringers.[8]  *See Peek & Cloppenburg KG*, 2012 WL 4470556, at *5 (S.D.N.Y. Sept. 19, 2012) (sustaining the defendant's counterclaim of contributory trademark infringement, because plaintiff admitted to "knowing [the brands] would be sold in the United States," where defendant's mark was registered, and thus established its knowledge of the third-party's infringement); *Ferring B.V. v. Fera Pharm. LLC*, 2015 WL 4623507, at *11 (E.D.N.Y. July 6, 2015) (sustaining a contributory trademark infringement claim against two pharmaceutical manufacturers, on the grounds that one defendant had "continued to provide infringing products, labels, packaging, and advertising" to the other after the plaintiff had commenced administrative and legal proceedings for trademark

---

[8] A. Meshi contends that the Trademark was not registered at the time it supplied the allegedly counterfeit hair gel. (Def. Brief 19.)  That contention, even if true, is unpersuasive at this stage of the litigation where the Court's consideration is limited to the allegations asserted in Plaintiffs' complaint.

infringement).  Plaintiffs have therefore sufficiently alleged a contributory trademark

infringement claim against A. Meshi.

      **G.**      **Plaintiffs General Business Law Claims**

     A. Meshi argues that the Court should dismiss Plaintiffs' claims asserted pursuant to New

York General Business Law §§ 349 and 350 on the grounds that Plaintiffs failed to sufficiently

allege a harm to the public interest.  (Def. Mot. at 23.)  Again, the Court agrees.

     New York General Business Law § 349 prohibits "[d]eceptive acts or practices."  N.Y.

Gen. Bus. Law § 349.  Similarly, section 350 of that statute prohibits "false advertising in the

conduct of any business, trade or commerce or in the furnishing of any service."  *Id.* § 350.  The

Second Circuit has held that for a non-consumer to state a claim under these statutes, he or she

must allege "some harm to the public at large," *i.e.*, that the public's health or safety is somehow

at risk as a result of the alleged infringement.  *See Yurman Studio, Inc. v. Castaneda*, 591 F.

Supp. 2d 471, 504 (S.D.N.Y. 2008) (dismissing claims asserted in a trademark infringement case

pursuant to §§ 349 and 350 where the plaintiff's failed to demonstrate that the public's health or

safety was at stake as a result of the alleged infringement); *Sports Traveler, Inc. v. Advance

Magazine Publishers, Inc.*, No. 96 CIV. 5150, 1997 WL 137443, at *3 (S.D.N.Y. Mar. 24, 1997)

(dismissing §§ 349 and 350 claims where the complaint was "devoid of allegations supporting an

inference that the public's health or safety is at stake as a result of the alleged infringement.") .

Relevant here, "[i]t is well settled . . . that trademark or trade dress infringement claims are not

cognizable under these statutes unless there is a specific and substantial injury to the public

interest over and above ordinary trademark infringement or dilution."  *National Distillers Prods.

Co. v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 486-87 (S.D.N.Y. 2002).  Accordingly,

courts in this circuit have routinely dismissed plaintiffs' trademark infringement claims asserted

under sections 349 and 350 where no injury to the public was conceivably pleaded. *See id*. (dismissing plaintiffs §§ 349 and 350 claims in a trademark infringement case because plaintiff's allegations of consumer confusion and deception did not constitute the type of injury to the public interest protected by these statutes); *see also Sofa Doctor, Inc. v. N.Y. Couch Doctor, Inc.*, 2016 WL 951523, at *3 & n.3 (E.D.N.Y. March 3, 2019) (collecting cases). The same result is warranted here.

The injuries asserted by Plaintiffs include economic and reputational harm resulting from A. Meshi's alleged trademark infringement and unfair competition. (Compl. ¶¶ 21, 40.) As such, the injuries alleged in the complaint relate primarily to Plaintiffs and their interests, and do not implicate the public in any material way. Although Plaintiffs allege public injury in the form of customer confusion and deception, (*see id.* ¶¶ 54, 111), this allegation cannot save Plaintiffs' claim as the gravamen of the complaint nevertheless relates to Plaintiffs' own business interests. *See Sofa Doctor, Inc.*, 2016 WL 951523, at *3 (trademark infringement action dismissing plaintiff's § 349 claim, notwithstanding additional allegations of bad business practices, because the "gravamen of [p]laintiff's [c]omplaint [was] harm to its own business interests arising from customer confusion").

### H.     Plaintiffs' Tortious Conspiracy Claim

A. Meshi maintains that Plaintiffs' claim for tortious conspiracy must be dismissed because such a claim is not cognizable as an independent cause of action in New York. (Def. Mot. 13.) A. Meshi is mistaken. Although in New York "a mere conspiracy to commit a tort is never of itself a cause of action," a plaintiff may make allegations of conspiracy "to connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander, Inc.*

21

*v. Fritzen*, 68 N.Y.2d 968, 969 (N.Y. 1986) (internal citations and quotes omitted); *accord Kirch*

*v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).

Here, Plaintiffs have adequately pleaded the actionable tort of trademark infringement.

(*See* Compl. ¶¶ 46-57.)  Moreover, Plaintiffs' allegations support a reasonable inference that

Defendants, including A. Meshi, knowingly agreed to infringe on Plaintiffs' Trademark and

intentionally acted, in furtherance of that agreement, to Plaintiffs' detriment.  (*See* Compl. ¶¶ 10,

11, 13, 17, 21.)  On these facts, Plaintiffs have stated a viable claim for tortious conspiracy.  *See*

*Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319, 329 (E.D.N.Y. 2003)

(upholding plaintiff's claim of civil conspiracy in trademark infringement action, because

plaintiff adequately pled underlying tort of unfair competition and alleged the elements of

defendants' agreement, overt, intentional actions, and resulting damages to plaintiff).

## I.       Plaintiffs' Breach of the Implied Covenant Claim

A. Meshi urges the Court to dismiss Plaintiffs' claim for breach of the implied covenants

of good faith and fair dealing on the grounds that such a claim is not cognizable where the facts

supporting that claim are identical to those supporting Plaintiffs' breach of contract claim.  (Def.

Mot. 25.)  A. Meshi is correct.  "New York law . . . does not recognize a separate cause of action

for breach of the implied covenant of good faith and fair dealing when a breach of contract

claim, based upon the same facts, is also pled."  *Doyle v. Mastercard Int'l Inc.*, 700 F. App'x 22,

24 (2d Cir. 2017) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir.

2002).  Plaintiffs' claim for breach of the implied covenants of good faith and fair dealing are

dismissed accordingly.

**CONCLUSION**

A. Meshi's motion to dismiss for lack of personal jurisdiction is DENIED.  A. Meshi's motion to dismiss for lack of subject-matter jurisdiction is DENIED.  A. Meshi's motion to dismiss for failure to state a claim is GRANTED in part, and DENIED in part.  A. Meshi's motion to dismiss for failure to state a claim is GRANTED with respect to Plaintiff's claims for trade dress infringement, vicarious trademark liability, and breach of the implied covenant of good faith and fair dealing.  A. Meshi's motion is DENIED with respect to Plaintiff's claims under federal law for trademark counterfeiting, federal trademark infringement, false designation of origin federal trademark dilution, unfair competition, false advertising, and contributory trademark infringement; and under state law for trademark infringement, tortious conspiracy, breach of contract, and violations of New York General Business Law.

SO ORDERED.

Dated: Brooklyn, New York
     March 30, 2020

/s/ LDH
LASHANN DEARCY HALL
United States District Judge