Seen by Pro Se Office
 8/15/2020 .
-LH

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Oren Rosenshine<br>　　20 Hawthorne Lane<br>　　Great Neck, NY 11023<br>Amir Rosenshine<br>　　20 Hawthorne Lane<br>　　Great Neck, NY 11023<br><br>Plaintiffs,<br><br>　**-against-**<br><br>1) A. Meshi Cosmetics Industries Ltd.<br>　　8 Shimon Habursakai Street<br>　　Industrial Park Bat Yam 59598, Israel<br>2) A to Z Import Inc.<br>　　305 E 88th Street<br>　　Brooklyn, NY 11236<br>3) Eyal Noach<br>　　2445 E 65th Street<br>　　Brooklyn, NY 11234<br>4) Yermi Mizrahi<br>　　8 Shimon Habursakai Street<br>　　Industrial Park Bat Yam 59598, Israel<br>5) Shem Tov Mizrahi<br>　　8 Shimon Habursakai Street<br>　　Industrial Park Bat Yam 59598, Israel<br>6) Nava Mizrahi<br>　　8 Shimon Habursakai Street<br>　　Industrial Park Bat Yam 59598, Israel<br><br>Defendants. | **Amended Complaint**<br><br>Case No.<br>　　　18CV3572(LDH)(LB)<br><br><br>Jury Trial Demanded |

## NATURE OF THE ACTION

1. Defendant 1 is a business that markets cosmetic products bearing its federally registered U.S. trademarks "Mon Platin", "Mon Platin Professional", and "Mon Platin DSM Dead Sea Minerals" across the United States, including New York State.  Defendant 4, Defendant 5, and Defendant 6 are the owners and managers of Defendant 1.

2. As part of its business development strategy, Defendant 1 actively solicits business in the U.S. by routinely participating as an exhibitor at various U.S. trade shows, operating a website in English targeted at U.S. customers, and engaging in extensive marketing efforts for its brand in the U.S., including the State of New York.

3. Defendant 1 actively solicits business in the State of New York, as can be clearly seen from a section of its website showing some of its affiliates representing it in the State of New York (Exhibit 1, "Website Screenshot").

4. In 2004, in an effort to expand its business operations in New York State, Defendant 1 entered into a written agreement with Global Manufacturing Import Export, Inc. (GMIE), a New York corporation, to manufacture for GMIE a hair gel bearing GMIE's Star Gel® trademark (Exhibit 2, "Original Agreement"; Exhibit 3, "Translated Agreement").

5. According to section 7 of the agreement, GMIE has an exclusive right to the Star Gel® trademark with no time limit.

6. GMIE introduced the hair gel bearing its Star Gel® trademark to the U.S. market and sold it to retail customers and distributors across the U.S., including Defendant 2 and Defendant 3, who used to deliver the Star Gel® hair gel on behalf of GMIE to GMIE's customers.

7. Defendant 2 is a New York corporation based in Brooklyn, NY, that distributes grocery items, including products bearing Defendant 3's federally registered U.S. trademarks "King Star Foods" and "JG Jasmine Gourmet", to retail stores across the U.S., including New York.  Defendant 3 is the owner and manager of Defendant 2.

8. On July 31, 2014, GMIE signed a trademark assignment agreement with International Grooming, Inc. (IG) in which GMIE assigns all rights to the Star Gel® trademark to IG (Exhibit 4, "Assignment Agreement 1").

9. IG continued to market the Star Gel® brand in the U.S. in the same manner as GMIE.

10. In November 2016, IG learned that Defendant 1 has been actively deceiving IG's numerous U.S. customers, including Defendant 2 and Defendant 3, by approaching them and selling them counterfeit versions of the Star Gel® hair gel (see Exhibit 5 for genuine Star Gel® and counterfeit Star Gel®).

11. Defendant 1 has thereby effectively masterminded and established a sprawling counterfeiting operation targeted at IG's Star Gel® trademark, boasting multiple levels of distribution and retail channels across the supply chain throughout the U.S., including the State of New York, competing directly with IG and defrauding its customers.

12. Defendant 4, Defendant 5, and Defendant 6 personally organize and direct the counterfeit Star Gel® operation, including sourcing all the raw materials in the supply chain to bring the counterfeit Star Gel® to market.

13. IG sent demand letters to Defendants on June 20, 2017, informing them of IG's valuable trademark rights and demanding that they cease all use of the Star Gel® trademark.

14. Despite IG's demand from Defendants to stop the unauthorized distribution of its Star Gel® brand, Defendants continued to do so.

15. Star Gel® is a registered trademark of IG, bearing the U.S. Trademark Registration Number 5,359,134.  A true and correct copy of this registration is attached as Exhibit 6.

16. On January 31, 2018, IG signed a trademark assignment agreement with Elazar Rosenshine in which IG assigns all rights to the Star Gel® trademark to Elazar Rosenshine, and on January 1, 2019, Elazar Rosenshine signed a trademark assignment agreement with Plaintiffs in which Elazar Rosenshine assigns all rights to the Star Gel® trademark to Plaintiffs (Exhibit 7, "Assignment Agreement 2"; Exhibit 8, "Assignment Agreement 3").

17. Defendants continue to disregard Plaintiffs' demands and warnings to stop the unauthorized distribution of items that bear Plaintiffs' Star Gel® trademark.

18. Defendants have refused to respect Plaintiffs' rights, despite repeated demands from Plaintiffs since that time.

19. Therefore, this is an action for trademark counterfeiting, trademark infringement, and trademark dilution, brought pursuant to Sections 32, 43(a), 43(c), and 43(d) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), (c), and (d); and causes of action under Sections 349, 350, and 360-l of the New York General Business Law, and for violations

of the New York State common law.  Furthermore, this is an action for tortious conspiracy against all Defendants and breach of contract against Defendant 1.

20. Plaintiffs have devoted substantial time, effort, and resources to the development and extensive promotion of the Star Gel® mark and the products offered thereunder.  As a result of Plaintiffs' efforts, the public has come to recognize and rely upon the Star Gel® mark as an indication of the high quality associated with Plaintiffs' products.

21. Plaintiffs have not consented to, sponsored, endorsed, or approved of Defendants' use of the Star Gel® trademark or any variations thereof in connection with the manufacture, marketing, or sale of any products or services.

22. As of the date of this Complaint, Defendants continue to use the Star Gel® trademark without authorization.    Defendants' failure to comply with Plaintiffs' demands demonstrates a deliberate intent to continue wrongfully competing with Plaintiffs and to willfully counterfeit Plaintiffs' rights in the Star Gel® trademark.

23. Defendants' actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with Plaintiffs' mark.

24. The products that Defendants are marketing and selling are offered through the same channels of distribution and to the same target customers as Plaintiffs' Star Gel® brand.

25. Unless enjoined, the Defendants' conduct will continue to injure both Plaintiffs and the public.

## JURISDICTION AND VENUE

26. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) for the claims arising out of the violations of Sections 32 and Section 43 of the Lanham Act; has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the claims arising out of the violation of Sections 349, 350, and 360-1 of the New York Business Law, and all other claims arising under the common law of the State of New York; and has jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 for the claims under the common law of unfair competition.

27. The amount in controversy between the parties exceeds $75,000.

28. This Court has personal jurisdiction over the Defendants because the products that are the subject of this action were, and continue to be, sold and/or offered for sale to customers, including consumers, in New York State, including in this Judicial District.

29. As detailed in paragraphs 1 to 25 of this Complaint, Defendant 1 routinely does business in New York State.  Not only did Defendant 1 engage in business and contract with GMIE (the original rights holder for the Star Gel™ trademark), which was a New York corporation, but Defendant 1 also intentionally counterfeits Plaintiffs' Star Gel® brand, a federally registered trademark, and sells it in the U.S., including in this judicial district in the State of New York.

30. Defendant 1 knowingly sells Plaintiffs' counterfeit Star Gel® trademark to customers in the U.S., some of which are based in New York, and therefore derives revenues and profits from its sales in New York.  Defendant 1 sells Plaintiffs' counterfeit Star Gel® brand in stores such as barbershops, hair salons, grocery stores, supermarkets, and pharmacies all over the U.S., including the State of New York and this judicial district. Thus, Defendant 1's contact with New York is systematic and continuous for a substantial period of time, putting it in minimum contact with New York and subjecting it to this Court's personal jurisdiction.

31. The sale of Plaintiffs' counterfeit trademark in the U.S., including in New York, is the direct result of Defendant 1's manufacturing and sales of products bearing Plaintiffs' Star Gel® counterfeit trademark.  Defendant 1 conspires with the other defendants to this action to counterfeit Plaintiffs' Star Gel® trademark and sell it in New York as well as elsewhere in the U.S.

32. Defendant 1 knowingly and willfully engages in its counterfeiting activities, as it actually removed the ™ sign from the artwork of its counterfeit product to demonstrate that it does not recognize Plaintiffs' rights to their trademark, and printed Defendant 2's contact information on the counterfeit product's artwork as its agent in New York (complete with an address in New York indicating a Brooklyn location).  This proves that Defendant 1 knowingly makes New York sales of Plaintiffs' counterfeit Star Gel® trademark and is therefore subject to this Court's jurisdiction.

33. Defendant 1's counterfeit merchandise bears labels that are written entirely in English (copied verbatim from Plaintiffs' original artwork and design), which are clearly intended for the U.S. market.

34. Defendant 2 and Defendant 3 are both based in New York and routinely conduct business in New York State and across the U.S.

35. Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims occurred in this district, causing tortious injury to Plaintiffs in this judicial district.

# FIRST CLAIM FOR RELIEF
## (Federal Trademark Counterfeiting in violation of 15 U.S.C. § 1114 against all Defendants)

36. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 to 35 of this Complaint.

37. Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the Star Gel® trademark on goods covered by registration for the Star Gel® trademark.

38. Defendants have used these spurious designations knowing they are counterfeit in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods.

39. Defendants' use of the Star Gel® trademark to advertise, promote, offer for sale, distribute and sell Defendants' goods was and is without the consent of Plaintiffs.

40. Defendants' unauthorized use of the Star Gel® trademark on and in connection with Defendants' advertisement, promotion, sale, offering for sale, and distribution of goods constitute Defendants' use of the Star Gel® trademark in commerce.

41. Defendants' unauthorized use of the Star Gel® trademark as set forth above is likely to: (a) cause confusion, mistake, and deception; (b) cause the public to believe that Defendants' goods are the same as Plaintiffs' goods or that Defendants are authorized, sponsored or approved by Plaintiffs or that Defendants are affiliated, connected or associated with or in some way related to Plaintiffs; and (c) result in Defendants unfairly benefiting from Plaintiffs' advertising and promotion and profiting from the reputation of Plaintiffs and their Star Gel® trademark all to the substantial and irreparable injury of the public, Plaintiffs and Plaintiffs' Star Gel® trademark and the substantial goodwill represented thereby.

42. Defendants' acts as aforesaid constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

43. Defendants' acts are both willful and malicious.

44. By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Plaintiffs' election, an amount representing three (3) times Plaintiffs' damage or Defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees, and pre-judgment and post-judgment interest pursuant to 15 U.S.C. § 1117(b).

# SECOND CLAIM FOR RELIEF
## (Federal Trademark Infringement in violation of 15 U.S.C. §§ 1114, 1125(a) and New York State Common Law against all Defendants)

45. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 to 44 of this Complaint.

46. Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant:

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive…

47. Plaintiffs' Star Gel® trademark is federally registered.

48. Plaintiffs' Star Gel® trademark is distinctive and associated in the mind of the public with the Plaintiffs.

49. Additionally, based on the Plaintiffs' extensive advertising, sales, and the popularity of their own products, Plaintiffs' Star Gel® trademark has acquired secondary meaning so that the public associates the Star Gel® trademark exclusively with the Plaintiffs.

50. Plaintiffs own all right, title, and interest in and to the Star Gel® trademark, as described above, including all common law rights in the Star Gel® trademark.

51. The Defendants have used counterfeit reproductions of the Star Gel® trademark, in connection with the advertising, sale, offering for sale, and/or distribution of goods for their own financial gain.

52. The products sold by Defendants incorporate imitations of Plaintiffs' common law trademark.

53. Plaintiffs have not authorized the Defendants' use of the Star Gel® trademark.

54. The Defendants' unauthorized use of Plaintiffs' Star Gel® trademark constitutes the use of Plaintiffs' registered marks in commerce.

55. The Defendants' unauthorized use of Plaintiffs' Star Gel® trademark is causing confusion, mistake, and deception to the public that believes that the Defendants' products emanate or originate from the Plaintiffs, when they do not, or that the Plaintiffs have authorized, sponsored, approved, or otherwise associated themselves with the Defendants or their counterfeiting products bearing the Plaintiffs' trademark.

56. The Defendants' unauthorized use of the Plaintiffs' Star Gel® trademark has resulted in the Defendants unfairly and illegally benefitting from the Plaintiffs' goodwill.

57. This conduct has caused substantial and irreparable injury to the public, to Plaintiffs, to Plaintiffs' trademark, and the substantial goodwill represented thereby.

58. Accordingly, the Defendants have engaged in trademark infringement in violation of 15 U.S.C. § 1114, 1125(a), and the common law of the State of New York.

59. The Defendants' acts have caused, and will continue to cause, irreparable injury to the Plaintiffs.

60. Plaintiffs have no adequate remedy at law and are thus entitled to damages in an amount yet to be determined.

61. The Defendants' egregious conduct in repeatedly selling counterfeit merchandise bearing the unauthorized Plaintiffs' Star Gel® trademark is willful and intentional, constituting an exceptional case.

62. The actions of Defendants, if not enjoined, will continue.  Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the Star Gel® trademark, and injury to Plaintiffs' business.  Plaintiffs are therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

63. Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover damages in an amount to be determined at trial, profits made by Defendants on sales of Star Gel® products, and the costs of this action.  The actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiffs to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF
## (Trade Dress Infringement and False Designation of Origin in Violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) against all Defendants)

64. Plaintiffs hereby repeat each and every allegation set forth in paragraphs 1 to 63 above as if fully set forth herein.

65. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides, in relevant part, that:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false

or misleading representation of fact, which—(1)(a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

66. By making unauthorized use, in interstate commerce, of Plaintiffs' Star Gel® trademark, the Defendants have used a "false designation of origin" that causes confusion, mistake, and deception as to the affiliation or connection of the Defendants with Plaintiffs and as to the origin, sponsorship, association or approval of the Defendants' services and goods by Plaintiffs, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67. The alleged trade dress refers to the Star Gel® product packaging, consisting of a one-liter clear transparent plastic round jar with a diameter of 4.75 inches and a height of 5.25 inches, capped with a round, glossy white plastic dome-like screw cap overhanging the circumference of the jar, and printed with the distinctive Star Gel® logo in black faux-script lettering that features a capital letter "G" that incorporates a capital letter "J" in its design, which stands for "Jojoba" (the key ingredient), and replaces the letter "a" with a hollow five-point star.  Additionally, the slogan "The Top Jojoba Hair Gel" is printed below the Star Gel® logo in the same font, terminating at the bottom of the letter "G". Below the logo and the slogan, the word "Jojoba" is printed in the center, and below it, the words "Hair Gel" are printed between two horizontal lines.  All these design elements consist of the distinctive Star Gel® trade dress, which has acquired secondary meaning in the marketplace and is instantly recognizable to customers in New York and across the U.S., serving the source-identification function for them.  By slavishly copying all these design elements, Defendants seek to appropriate Plaintiffs' trade dress and capitalize on their brand recognition in New York and across the U.S., fully intending to defraud the public at large.

68. Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent the Defendants' products as those of Plaintiffs, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69. Defendants' wrongful acts will continue unless and until enjoined by this Court.

70. Defendants' acts have caused and will continue to cause irreparable injury to the Plaintiffs.  Plaintiffs have no adequate remedy at law and are damaged in an amount yet to be determined.

71. Defendants' egregious conduct in selling infringing products is willful and intentional.

## FOURTH CLAIM FOR RELIEF
### (Federal Trademark Dilution in violation of 15 U.S.C. §1125(c) and the New York General Business Law (N.Y. Gen. Bus. Law § 360-l) against all Defendants)

72. Plaintiffs hereby repeat each and every allegation set forth in paragraphs 1 to 71 above as if fully set forth herein.

73. Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), provides, in relevant part, that:

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

74. Furthermore, New York General Business Law, Section 360-l provides that:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

75. Plaintiffs are the exclusive owners of the Star Gel® trademark.

76. The Star Gel® trademark is famous and distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and the New York General Business Law, Section 360-1.

77. The Star Gel® trademark is a distinctive mark that has been in use for many years and plays a prominent role in Plaintiffs' marketing, advertising, and the popularity of their products across many different media.

78. The Star Gel® trademark has been through prominent, long, and continuous use in commerce, becoming, and continues to become, famous and distinctive.

79. The Star Gel® trademark is famous long before the Defendants began using unauthorized reproductions, counterfeits, copies, and colorable imitations on their unauthorized merchandise.

80. Long after the Star Gel® trademark became famous, the Defendants, without authorization from Plaintiffs, used unauthorized reproductions, counterfeits, copies, and colorable imitations of the Star Gel® trademark.

81. The Star Gel® trademark has gained widespread publicity and public recognition in New York and elsewhere.

82. The Defendants' sale of goods that use the Star Gel® trademark constitutes use in commerce of Plaintiffs' Star Gel® trademark.

83. Plaintiffs have not licensed or otherwise authorized the Defendants' use of their Star Gel® trademark.

84. Defendants' unauthorized use of the Star Gel® trademark causes consumers to locate and purchase the Defendants' products in the erroneous belief that the Defendants are associated with, sponsored by or affiliated with Plaintiffs, and/or that Plaintiffs are the source of those products.

85. The Defendants' use of Plaintiffs' Star Gel® trademark dilutes and/or is likely to dilute the distinctive quality of those marks and to lessen the capacity of such marks to identify and distinguish Plaintiffs' goods.

86. The Defendants' unlawful use of the Star Gel® trademark, in connection with inferior goods, is also likely to tarnish that trademark and cause blurring in the minds of consumers between Plaintiffs and the Defendants, thereby lessening the value of Plaintiffs' Star Gel® trademark, as unique identifiers of Plaintiffs' products.

87. By the acts described above, the Defendants have diluted, and are likely to dilute the distinctiveness of the Star Gel® trademark, and caused a likelihood of harm to Plaintiffs' business reputation in violation of 15 U.S.C. §1125(c) and  Section 360–l of the New York General Business Law.

88. The Defendants' acts have caused and will continue to cause irreparable injury to Plaintiffs.  Plaintiffs have no adequate remedy at law and are thus damaged in an amount yet to be determined.

89. The actions of Defendants described above were and continue to be deliberate and willful.  Plaintiffs are therefore entitled to recover damages in an amount to be determined at trial, profits made by Defendants on sale of goods that use the Star Gel® trademark, and the costs of this action pursuant to 15 U.S.C. § 1117.

90. The actions of Defendants, if not enjoined, will continue.  Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the Star Gel® mark, and injury to Plaintiffs' business.  Plaintiffs are therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and 15 U.S.C. 1125(c).

## FIFTH CLAIM FOR RELIEF
## (Federal Unfair Competition and False Advertising in violation of 15 U.S.C. §1125(a) and the New York Common Law against all Defendants)

91. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 to 90 of this Complaint.

92. Defendants' actions described above and specifically, without limitation, Defendants' use of the Star Gel® trademark, and confusingly similar variations thereof, in commerce to advertise, market, and sell goods that use the Star Gel® trademark throughout the United States including New York; constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

93. The Defendants have palmed off their goods as Plaintiffs', improperly trading upon the Plaintiffs' goodwill and valuable rights including Star Gel® trademark.

94. The Defendants have committed the above-alleged acts willfully, and in conscious disregard of Plaintiffs' rights, and Plaintiffs are therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of the Defendants.

95. By the acts described above, the Defendants have engaged in unfair competition in violation of the common law of the State of New York.

96. Customers, including consumers, are misled and deceived by Defendants' representations regarding Plaintiffs' Star Gel® trademark.

97. Defendants knew or should have known that their statements were false or likely to mislead.

98. Defendants have been unjustly enriched by illegally using and misappropriating Plaintiffs' intellectual property for Defendants' own financial gain.

99. As an actual and proximate result of Defendants' willful and intentional actions, Plaintiffs have suffered damages in an amount to be determined at trial, and unless Defendants are enjoined, Plaintiffs will continue to suffer irreparable harm and damage to their business, reputation, and goodwill.

100.     Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants on sales of resulting from the use of the Star Gel® trademark, as well as recovery of the costs of this action.  Furthermore, Plaintiffs are informed and believe, and on that basis allege, that

Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiffs to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## SIXTH CLAIM FOR RELIEF
### (Contributory Trademark Infringement against all Defendants)

101.    Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 to 100 of this Complaint.

102.    The actions of Defendants described above and specifically, without limitation, their knowledge, participation, and inducement of the unauthorized use of the Star Gel® trademark, and confusingly similar variations thereof, in commerce to advertise, market, and sell Star Gel® products throughout the United States and New York, constitute contributory trademark infringement in violation of federal law and the common law of the State of New York.

103.    The actions of Defendants, if not enjoined, will continue.  Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the Star Gel® trademark, and injury to Plaintiffs' business.

104.    The actions of Defendants described above were and continue to be deliberate and willful.

## SEVENTH CLAIM FOR RELIEF
### (Vicarious Trademark Infringement against all Defendants)

105.    Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 to 104 of this Complaint.

106.    The actions of Defendants described above and specifically, without limitation, their knowledge, participation, and inducement of the unauthorized use of the Star Gel® trademark, and confusingly similar variations thereof, in commerce to advertise, market, and sell Star Gel® products throughout the United States and New York, constitute vicarious trademark infringement in violation of federal law and the common law of the State of New York.  Defendants each have the ability to control the actions of the other Defendants, fund the advertising activities of the other Defendants, and derive a direct financial benefit from the illegal acts of the other Defendants.

107.    The actions of Defendants, if not enjoined, will continue.  Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among

other things, diminution in the value of and goodwill associated with the Star Gel® mark, and injury to Plaintiffs' business.

108.    The actions of Defendants described above were and continue to be deliberate and willful.

# EIGHTH CLAIM FOR RELIEF
## (Deceptive Acts and Practices Unlawful in Violation of the New York General Business Law (N.Y. Gen. Bus. Law §§ 349 and 350) against all Defendants)

109.    Plaintiffs hereby repeat each and every allegation set forth in paragraphs 1 to 108 above as if fully set forth herein.

110.    New York General Business Law, Section 349 states, in relevant part, that:

"Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.".

111.    New York General Business Law, Section 350 states, in relevant part, that:

"False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.".

112.    Through their importation, advertisement, distribution, offer to sell and sale of unauthorized products bearing the Star Gel® trademark, Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

113.    The Defendants' deceptive acts or practices, as described herein, are materially misleading.  Such acts or practices have deceived or have a tendency to deceive a material segment of the public to whom the Defendants have directed their marketing activities, and Plaintiffs have been injured thereby.

114.    By the acts described above, the Defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of Section 349 and 350 of the New York General Business Law.

115.    The Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiffs.  The Plaintiffs have no adequate remedy at law and are damaged in an amount not yet determined.

## NINTH CLAIM FOR RELIEF
### (Tortious Conspiracy against all Defendants)

116.     Plaintiffs hereby repeat each and every allegation set forth in paragraphs 1 to 115 above as if fully set forth herein.

117.     The actions of Defendants as alleged above were done deliberately and intentionally.

118.     The actions of Defendants as alleged above were a real agreement or confederation with a common design to perpetrate one or more torts for an unlawful purpose or by an unlawful means.

119.     Each and every Defendant is equally and vicariously liable to Plaintiffs for their damages proximately caused thereby.

## TENTH CLAIM FOR RELIEF
### (Breach of Contract against Defendant 1)

120.     Plaintiffs hereby repeat each and every allegation set forth in paragraphs 1 to 119 above as if fully set forth herein.

121.     Plaintiffs have performed all conditions, covenants, and promises required to be performed by Plaintiffs in accordance with the terms of their written agreement with Defendant 1 (Exhibit 2, "Original Agreement"; Exhibit 3, "Translated Agreement").

122.     As detailed above, Defendant 1 has breached, and continues to breach, § 7 of its written agreement with Plaintiffs by selling merchandise bearing Plaintiffs' Star Gel® trademark to third parties, including Plaintiffs' New York customers.

123.     As a direct and proximate result of Defendant 1's breaches of its written agreement with Plaintiffs as aforesaid, Plaintiffs have suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF
### (Breach of Implied Covenant of Good Faith and Fair Dealing against Defendant 1)

124.     Plaintiffs hereby repeat each and every allegation set forth in paragraphs 1 to 123 above as if fully set forth herein.

125.     Plaintiffs have performed all conditions, covenants, and promises required to be performed by Plaintiffs in accordance with the terms of their written agreement with Defendant 1 (Exhibit 2, "Original Agreement"; Exhibit 3, "Translated Agreement").

126.     Defendant 1 has breached the covenant of good faith and fair dealing implied in its written agreement with Plaintiffs by unfairly interfering with Plaintiffs' right to receive the benefits of the agreement, by contracting with third parties, including Plaintiffs' New York customers, in a manner that capitalizes on Plaintiffs' well-known Star Gel® trademark and deprives Plaintiffs of profits from its commercial exploitation.

127.     As a direct and proximate result of Defendant 1's breaches of the implied covenant of good faith and fair dealing as aforesaid, Plaintiffs have suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray:

1. For a FINAL JUDGMENT that:

a. The Defendants have engaged in trademark counterfeiting and trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

b. The Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

c. The Defendants have violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

d. The Defendants have violated Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d);

e. The Defendants have diluted the distinctiveness of the Star Gel® trademark and caused injury to Plaintiffs' business reputation in violation of Section 360-l of the New York General Business Law;

f. The Defendants have engaged in deceptive acts and practices unlawful in violation of Sections 349 and 350 of the New York General Business Law;

g. The Defendants have engaged in trademark counterfeiting and trademark infringement in violation of the common law of the State of New York;

h. The Defendants have engaged in unfair competition in violation of the common law of the State of New York;

i. The Defendants have engaged in tortious conspiracy;

j. Defendant 1 has breached its written agreement with Plaintiffs; and

k. That the above acts were done willfully, and/or intentionally.

2. For entry of an ORDER permanently enjoining and restraining the Defendants, and their officers, agents, servants, employees and attorneys and all those in active concert or participation with any of them, from:

a. Using any reproduction, counterfeit, copy or colorable imitation of Star Gel® trademark (as defined herein) for and in connection with any goods or their packaging not authorized by Plaintiffs;

b. Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiffs' business reputation or dilute the distinctive quality of the Star Gel® trademark;

c. Using any false description or representation, including words or other symbols tending falsely to describe or represent Defendants' unauthorized goods or their packaging as being those of Plaintiffs, or sponsored by or associated with Plaintiffs, and from offering such goods into commerce;

d. Further infringing the Plaintiffs' trademarks, including the Star Gel® trademark, by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products or their packaging not authorized by Plaintiffs that bear any simulation, reproduction, counterfeit, copy or colorable imitation of the Plaintiffs' trademarks, including the Star Gel® trademark;

e. Using any simulation, reproduction, counterfeit, copy or colorable imitation of the Plaintiffs' trademarks, including the Star Gel® trademark, in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products or their packaging in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiffs, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiffs;

f. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which may or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by the Defendants are in any manner associated or connected with Plaintiffs, or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

g. Infringing the Plaintiffs' trademarks, including the Star Gel® trademark, or the Plaintiffs' rights therein, or using or exploiting Plaintiffs' trademarks, including the Star Gel® trademark, or diluting Plaintiffs' trademarks, including the Star Gel® trademark;

h. Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe or dilute Plaintiffs' trademarks, including the Star Gel® trademark; and

i. Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

3. For entry of an ORDER directing that the Defendants deliver up for destruction to Plaintiffs all unauthorized products, advertisements and packaging in their possession or under their control bearing any of Plaintiffs' trademarks, including the Star Gel® trademark, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. § 1118.

4. For entry of an ORDER requiring the Defendants to disseminate corrective advertisements in a form approved by the Court to acknowledge their violations of the law hereunder, and to ameliorate the false and deceptive impressions produced by such violations.

5. For all such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products or associated packaging manufactured, sold, or otherwise circulated or promoted by the Defendants are authorized by Plaintiffs or related in any way to Plaintiffs' products.

6. For an assessment of the ACTUAL DAMAGES suffered by Plaintiffs, trebled, and an award of all profits that Defendants have derived from using Plaintiffs' trademarks, including the Star Gel® trademark, trebled, as well as costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; and/or statutory damages, as applicable, in the maximum amount permitted by law.

7. For COSTS OF SUIT, and for such other and further relief as the Court shall deem appropriate.

8. For any and all awards to be imposed on Defendants jointly and severally.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, we certify to the best of our knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

We agree to provide the Clerk's Office with any changes to our address where case-related papers may be served.  We understand that our failure to keep a current address on file with the Clerk's Office may result in the dismissal of our case.

Date of signing:    08/14/2020

Signature of Plaintiffs   *Oren Rosenshine   Amir Rosenshine*

Printed Name of Plaintiffs   OREN ROSENSHINE   AMIR ROSENSHINE

## List of Exhibits

| Exhibit # | Description |
|:---:|:---|
| 1 | Website Screenshot |
| 2 | Original Agreement |
| 3 | Translated Agreement |
| 4 | Assignment Agreement 1 |
| 5 | Genuine and Counterfeit Star Gel® |
| 6 | Trademark Registration Certificate |
| 7 | Assignment Agreement 2 |
| 8 | Assignment Agreement 3 |

# Exhibit 1

# Website Screenshot

http://www.monplatin.com/?module=category&item_id=18&p_id=14

## Mon Platin

Become A Distributor

### United States of America (USA)

**MON PLATIN NY DISTRIBUTION**

438 dogwood avenue. franklin square ny 11010
sales@monplatinmy.com
www.monplatinmy.com
Tel: 1347242439

**USA - CALIFORNIA**

Yencij inc
2363  Teller rd #101 Newbury park ca U.S.A
818-6656511
Yourmonplatin@gmail.com

**USA - CALIFORNIA**

LAC DISTRIBUTION INC
9520  Owensmouth Ave unit # 5
Chatsworth CA.91307
U.S.A
TEL: 747-777-0368.747-777-0122
lacdistribution@gmail.com

**USA – NEW-YORK**

MON PLATIN NY DISTRIBUTION
438 dogwood avenue. franklin square ny 11010   U.S.A
sales@monplatinmy.com
www.monplatinmy.com
Tel: 1347242439

**USA – NEW-YORK**

Tao Distributors LLC
2048 Cornell Place
Merrick, New York 11566 U.S.A
Phone: +917-960-1028
Email: info@taodistributors.com

# Exhibit 2
# Original Agreement

הסכם הזמנה שנערך ונחתם ב-5.10.2004

בין א. משי תעשיות קוסמטיות, פנקס 4, ראשל"צ, ישראל, להלן היצרן

ע"י מנהלה מר ארז מזרחי

Global Manufacturing Import Export Inc., Great Neck, NY 11023, U.S.A – להלן – לבין

הקונה

ע"י מנהלה הגברת עדנה רוזנשיין

1.  הקונה מזמין בזה אצל היצרן 2,000 (אלפיים) יחידות של ג'ל חומבה לשיער בנפח 1 ליטר כל יחידה,

    במחיר של $2.45 אמריקאי ליחידה.  סה"כ סכום של $4,900 אמריקאי.

2.  מתוך 2,000 היחידות הנ"ל, 1,400 יחידות יהיו בצבע שקוף, ו-600 יחידות יהיו בצבע כחול.

3.  הרכב חומר הג'ל המוזמן יהיה כדוגמת ג'ל חומבה 'Mon Platin 'M המיוצר ע"י א. משי תעשיות בע"מ,

    והכיתוב יהיה מוצמד לאריזה על פי אישור הלקוח.

4.  נוסח הכיתוב יהיה אותו נוסח כמו של הג'ל מון פלאטין.  כמו כן, התוויות  והגרפיקה על המוצר יאושרו

    אחרי שהיצרן ימציאם לקונה.

5.  מועד אספקת הסחורה לקונה עד ליום 31.10.2004.

6.  הקונה ישלם ליצרן מקדמה ע"ס $2,000 אמריקאי כנגד קבלה, והיתרה עם האספקה.

7.  שם הג'ל יהיה Star Gel לפי הלוגו שנשלח לאחרונה ומצורף בזאת.  לקונה יש בלעדיות על שם זה ללא

    הגבלת זמן.

8.  הקונה מצהיר בזאת כי לא ידוע לו שהסימן המסחרי המבוקש משמש גוף מסחרי אחר בארה"ב.

9.  המוצר יכלול בר קוד אמריקאי בן 12 או 13 ספרות.

לראייה באנו על החתום

Global Manufacturing Import Export Inc.
Edna Rosenshine

עדנה רוזנשיין

היצרן א. משי תעשיות קוסמטיקה
ארז מזרחי

אזוב 1/5ר

כלל

# St☆r Gel
### The Top Jojoba Hair Gel

# Exhibit 3

# Translated Agreement

**Order Agreement Made and Signed on 10.5.2004**
**Between A. Meshi Cosmetic Industries, 4 Pinkas Street, Rishon LeZion, Israel, hereinafter the Manufacturer**
**By its Manager Mr. Erez Mizrahi**
**And – Global Manufacturing Import Export Inc., Great Neck, NY 11023, U.S.A hereinafter the Buyer**
**By its Manager Mrs. Edna Rosenshine**

1.  The buyer hereby orders from the manufacturer 2,000 (two thousand) units of jojoba hair gel in 1 liter volume per unit, at a price of $2.45 USD per unit.  Total amount of $4,900 USD.

2.  Out of the above 2,000 units, 1,400 units will be in clear color, and 600 units will be in blue color.

3.  The formula of the ordered gel will be as the formula of Mon Platin 'M' jojoba gel made by A. Meshi Industries Ltd., and the text will be affixed to the package per the customer's approval.

4.  The wording of the text will be the same as that of the Mon Platin gel.  In addition, the label and the graphics on the product will be approved upon submission by the manufacturer to the buyer.

5.  Delivery date of the merchandise to the buyer is until 10.31.2004.

6.  The buyer will pay the manufacturer an advance payment in the amount of $2,000 USD in exchange for a receipt, and the rest on delivery.

7.  The name of the gel will be Star Gel according to the logo that was recently sent and hereby attached.  Buyer has exclusivity on this name without time limit.

8.  The buyer hereby declares that he is unaware the requested trademark is being used by another commercial entity in the U.S.

9.  The product will include a 12 or 13-digit American barcode.


In witness whereof we have hereunto affixed our signatures


Global Manufacturing Import Export Inc.          The manufacturer A. Meshi Cosmetic Industries
Edna Rosenshine                                  Erez Mizrahi

# Exhibit 4

# Assignment Agreement 1

# Trademark Assignment Agreement

This Trademark Assignment Agreement (this "Agreement") is entered into as of the 31 day of July, 2014 (the "Effective Date") by and between Global Manufacturing Import Export Inc. (the "Assignor"), a New York Corporation located at 20 Hawthorne Lane, Great Neck, NY, 11023 and International Grooming, Inc. (the "Assignee"), a New York Corporation located at 20 Hawthorne Lane, Great Neck, New York, 11023.

1. **Mark.** The term "Mark" as used in this Agreement shall mean any registered and unregistered trademarks, service marks, logos, slogans, designs, trade names, domain names, package designs, and product designs, including but not limited to all common law trademark rights, all registrations and/or registration application rights and all rights to prepare derivative marks, together with all the goodwill of the business symbolized thereby, all income, royalties, and damages hereafter due or payable to Assignor with respect thereto, including without limitation, damages, and payments for past or future infringements and misappropriations thereof, all rights to sue for past, present and future infringement or misappropriations thereof, and all other rights in the United States and in all countries and territories worldwide and under any international convention (hereinafter collectively referred to as "Mark") identified as follows:

   Mark Name: Star Gel

   Application or Registration Number: N/A

   State of Registration: N/A

   Date of Application or Registration: N/A

   Description of Goods/Services: Hair styling gels

2. **Assignment.** Assignor hereby irrevocably assigns, grants, and transfers to Assignee all rights, title, and interest in and to the Mark in perpetuity. Assignor further authorizes the United States Patent and Trademark Office and all other agencies in jurisdictions outside the United States to record the transfer of the registration. After the Effective Date, Assignor agrees to make no further use of the Mark or any confusingly similar mark in the United States and anywhere in the world, except as may be expressly authorized by the parties in writing. Assignor further agrees to not challenge Assignee's use or ownership of the Mark.

3. **Consideration.** Assignee shall pay Assignor the sum of $1.00, payable on July 31, 2014 in consideration for assignment of the Mark.

4. **Execution and Delivery.** After Assignee pays the amount due, Assignor shall execute and deliver to Assignee any and all instruments of sale, transfer, conveyance, assignment, and confirmations as Assignee may lawfully request in order to obtain, perfect, maintain, or otherwise enable the transfer, conveyance, and assignment to Assignee and to confirm Assignee's title to the Mark and any and all related federal and state trademark registrations and/or registration application rights.

5. **Representations and Warranties.** Assignor represents and warrants to the Assignee that the Assignor is the legal and rightful owner of the Mark, has good and marketable title to and full legal right and authority to sell and transfer the same and that the Mark is free of all liens, claims, and encumbrances.

6. **Legal Fees.** If either party, any heir, personal representative, successor, or assign of either party hereto enforce this Agreement through litigation, the prevailing party shall be entitled to recover from the other party reasonable legal fees and expenses incurred by the prevailing party in connection with such litigation, including, but not limited to, any appeals.

7. **Entire Agreement.** This Agreement constitutes the entire agreement between Assignor and Assignee and supersedes all prior understandings of Assignor and Assignee, including any prior representation, statement, condition, or warranty.

8. **Modification and Waiver.** This Agreement may be amended or modified only by a written agreement signed by both of the parties. Neither party will be charged with any waiver of any provision of this Agreement, unless such waiver is evidenced by a writing signed by the party and any such waiver will be limited to the terms of such writing

9. **Severability.** If any provision of this Agreement is held to be invalid or unenforceable in whole or in part, the remaining provisions shall not be affected and shall continue to be valid and enforceable as though the invalid or unenforceable parts had not been included in this Agreement.

10. **Jurisdiction.** This Agreement will be governed by and construed in accordance with the laws of the State of New York, without regard to the principles of conflict of laws. Each party consents to the exclusive jurisdiction of the courts located in the State of New York for any legal action, suit or proceeding arising out of or in connection with this Agreement. Each party further waives any objection to the laying of venue for any such suit, action or proceeding in such courts.

11. **Successors and Assigns.** This Agreement will inure to the benefit of and be binding on the respective successors and permitted assigns of the parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

Global Manufacturing Import Export Inc.

By: _Edna Rosenshine_____
Name: Edna Rosenshine
Title: CEO

International Grooming, Inc.

By: _Oren Rosenshine  Amir Rosenshine  Dorin Rosenshine_
Name: Oren Rosenshine, Amir Rosenshine, Dorin Rosenshine
Title: Co-CEOs

# Exhibit 5

# Genuine and Counterfeit Star Gel®

**GENUINE**



**COUNTERFEIT**



## Genuine Star Gel®
## (notice the ™ sign and NY address)



## Counterfeit Star Gel®
## (notice the removal of the ™ sign, and NY address)



# Exhibit 6

# Trademark Registration Certificate

# United States of America

## United States Patent and Trademark Office

# Star Gel

**Reg. No. 5,359,134**

**Registered Dec. 19, 2017**

**Int. Cl.: 3**

**Trademark**

**Principal Register**

International Grooming, Inc. (NEW YORK CORPORATION)
20 Hawthorne Lane
Great Neck, NEW YORK 11023

CLASS 3: Hair gel; Hair gel and hair mousse; Hair gels; Hair care kits comprising non-medicated hair care preparations, namely, gel; Hair sprays and hair gels; Hair styling gel; Non-medicated gel for hair; Styling gels; Styling gels for hair

FIRST USE 00-00-2004; IN COMMERCE 00-00-2004

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "GEL"

SER. NO. 87-443,388, FILED 05-09-2017



Performing the Functions and Duties of the
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

# Exhibit 7

# Assignment Agreement 2

# Trademark Assignment Agreement

This Trademark Assignment Agreement (this "Agreement") is entered into as of the 31 day of January, 2018 (the "Effective Date") by and between International Grooming, Inc. (the "Assignor"), a New York Corporation located at 20 Hawthorne Lane, Great Neck, NY, 11023 and Elazar Rosenshine (the "Assignee"), a New York Resident located at 20 Hawthorne Lane, Great Neck, New York, 11023.

1.  **Mark.** The term "Mark" as used in this Agreement shall mean any registered and unregistered trademarks, service marks, logos, slogans, designs, trade names, domain names, package designs, and product designs, including but not limited to all common law trademark rights, all registrations and/or registration application rights and all rights to prepare derivative marks, together with all the goodwill of the business symbolized thereby, all income, royalties, and damages hereafter due or payable to Assignor with respect thereto, including without limitation, damages, and payments for past or future infringements and misappropriations thereof, all rights to sue for past, present and future infringement or misappropriations thereof, and all other rights in the United States and in all countries and territories worldwide and under any international convention (hereinafter collectively referred to as "Mark") identified as follows:

    Mark Name: Star Gel

    Description of Goods/Services: Hair styling gels

2.  **Assignment.** Assignor hereby irrevocably assigns, grants, and transfers to Assignee all rights, title, and interest in and to the Mark in perpetuity. Assignor further authorizes the United States Patent and Trademark Office and all other agencies in jurisdictions outside the United States to record the transfer of the registration. After the Effective Date, Assignor agrees to make no further use of the Mark or any confusingly similar mark in the United States and anywhere in the world, except as may be expressly authorized by the parties in writing. Assignor further agrees to not challenge Assignee's use or ownership of the Mark.

3.  **Consideration.** Assignee shall pay Assignor the sum of $1.00, payable on January 31, 2018 in consideration for assignment of the Mark.

4.  **Execution and Delivery.** After Assignee pays the amount due, Assignor shall execute and deliver to Assignee any and all instruments of sale, transfer, conveyance, assignment, and confirmations as Assignee may lawfully request in order to obtain, perfect, maintain, or otherwise enable the transfer, conveyance, and assignment to Assignee and to confirm Assignee's title to the Mark and any and all related federal and state trademark registrations and/or registration application rights.

5.  **Representations and Warranties.** Assignor represents and warrants to the Assignee that the Assignor is the legal and rightful owner of the Mark, has good and marketable title to and full legal right and authority to sell and transfer the same and that the Mark is free of all liens, claims, and encumbrances.

6. **Legal Fees.** If either party, any heir, personal representative, successor, or assign of either party hereto enforce this Agreement through litigation, the prevailing party shall be entitled to recover from the other party reasonable legal fees and expenses incurred by the prevailing party in connection with such litigation, including, but not limited to, any appeals.

7. **Entire Agreement.** This Agreement constitutes the entire agreement between Assignor and Assignee and supersedes all prior understandings of Assignor and Assignee, including any prior representation, statement, condition, or warranty.

8. **Modification and Waiver.** This Agreement may be amended or modified only by a written agreement signed by both of the parties. Neither party will be charged with any waiver of any provision of this Agreement, unless such waiver is evidenced by a writing signed by the party and any such waiver will be limited to the terms of such writing

9. **Severability.** If any provision of this Agreement is held to be invalid or unenforceable in whole or in part, the remaining provisions shall not be affected and shall continue to be valid and enforceable as though the invalid or unenforceable parts had not been included in this Agreement.

10. **Jurisdiction.** This Agreement will be governed by and construed in accordance with the laws of the State of New York, without regard to the principles of conflict of laws. Each party consents to the exclusive jurisdiction of the courts located in the State of New York for any legal action, suit or proceeding arising out of or in connection with this Agreement. Each party further waives any objection to the laying of venue for any such suit, action or proceeding in such courts.

11. **Successors and Assigns.** This Agreement will inure to the benefit of and be binding on the respective successors and permitted assigns of the parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

International Grooming, Inc.

By: _Oren Rosenshine  Amir Rosenshine  Dorin Rosenshine_
Name: Oren Rosenshine, Amir Rosenshine, Dorin Rosenshine
Title: Co-CEOs

Elazar Rosenshine

By: _____
Name: Elazar Rosenshine

# Exhibit 8

# Assignment Agreement 3

# Trademark Assignment Agreement

This Trademark Assignment Agreement (this "Agreement") is entered into as of the 1st day of January, 2019 (the "Effective Date") by and between Elazar Rosenshine (the "Assignor"), a New York Resident located at 20 Hawthorne Lane, Great Neck, NY 11023 and Oren Rosenshine and Amir Rosenshine (the "Assignees"), New York Residents located at 20 Hawthorne Lane, Great Neck, NY 11023.

1.  **Mark.** The term "Mark" as used in this Agreement shall mean any registered and unregistered trademarks, service marks, logos, slogans, designs, trade names, domain names, package designs, and product designs, including but not limited to all common law trademark rights, all registrations and/or registration application rights and all rights to prepare derivative marks, together with all the goodwill of the business symbolized thereby, all income, royalties, and damages hereafter due or payable to Assignor with respect thereto, including without limitation, damages, and payments for past or future infringements and misappropriations thereof, all rights to sue for past, present and future infringement or misappropriations thereof, and all other rights in the United States and in all countries and territories worldwide and under any international convention (hereinafter collectively referred to as "Mark") identified as follows:

    Mark Name: Star Gel

    Description of Goods/Services: Hair styling gels

2.  **Assignment.** Assignor hereby irrevocably assigns, grants, and transfers to Assignees all rights, title, and interest in and to the Mark in perpetuity. Assignor further authorizes the United States Patent and Trademark Office and all other agencies in jurisdictions outside the United States to record the transfer of the registration. After the Effective Date, Assignor agrees to make no further use of the Mark or any confusingly similar mark in the United States and anywhere in the world, except as may be expressly authorized by the parties in writing. Assignor further agrees to not challenge Assignees' use or ownership of the Mark.

3.  **Consideration.** Assignees shall pay Assignor the sum of $1.00, payable on January 1, 2019 in consideration for assignment of the Mark.

4.  **Execution and Delivery.** After Assignees pay the amount due, Assignor shall execute and deliver to Assignees any and all instruments of sale, transfer, conveyance, assignment, and confirmations as Assignees may lawfully request in order to obtain, perfect, maintain, or otherwise enable the transfer, conveyance, and assignment to Assignees and to confirm Assignees' title to the Mark and any and all related federal and state trademark registrations and/or registration application rights.

5.  **Representations and Warranties.** Assignor represents and warrants to the Assignees that the Assignor is the legal and rightful owner of the Mark, has good and marketable title to and full legal right and authority to sell and transfer the same and that the Mark is free of all liens, claims, and encumbrances.

6.  **Legal Fees.** If either party, any heir, personal representative, successor, or assign of either party hereto enforce this Agreement through litigation, the prevailing party shall be entitled to recover from the other party reasonable legal fees and expenses incurred by the prevailing party in connection with such litigation, including, but not limited to, any appeals.

7.  **Entire Agreement.** This Agreement constitutes the entire agreement between Assignor and Assignees and supersedes all prior understandings of Assignor and Assignees, including any prior representation, statement, condition, or warranty.

8.  **Modification and Waiver.** This Agreement may be amended or modified only by a written agreement signed by both of the parties. Neither party will be charged with any waiver of any provision of this Agreement, unless such waiver is evidenced by a writing signed by the party and any such waiver will be limited to the terms of such writing.

9.  **Severability.** If any provision of this Agreement is held to be invalid or unenforceable in whole or in part, the remaining provisions shall not be affected and shall continue to be valid and enforceable as though the invalid or unenforceable parts had not been included in this Agreement.

10. **Jurisdiction.** This Agreement will be governed by and construed in accordance with the laws of the State of New York, without regard to the principles of conflict of laws. Each party consents to the exclusive jurisdiction of the courts located in the State of New York for any legal action, suit or proceeding arising out of or in connection with this Agreement. Each party further waives any objection to the laying of venue for any such suit, action or proceeding in such courts.

11. **Successors and Assigns.** This Agreement will inure to the benefit of and be binding on the respective successors and permitted assigns of the parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

Elazar Rosenshine

By: _____
Name: Elazar Rosenshine

Oren Rosenshine and Amir Rosenshine

By: _Oren Rosenshine    Amir Rosenshine_
Name: Oren Rosenshine and Amir Rosenshine