UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
OREN ROSENSHINE and
AMIR ROSENSHINE,

                    Plaintiffs,            **REPORT AND RECOMMENDATION**
                                                      **18 CV 3572 (LDH)(LB)**

    -against-

A. MESHI COSMETICS INDUSTRIES
LTD., A TO Z IMPORT INC., and EYAL
NOACH,

                    Defendants.
----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiffs, Oren and Amir Rosenshine, bring this *pro se* Trademark Infringement action regarding their hair gel brand against defendants, A. Meshi Cosmetics Industries Ltd. ("A. Meshi"), A to Z Import Inc., and Eyal Noach under the Lanham Act, 15 U.S.C. §§ 114, 1125, and various provisions of New York State law. Am. Compl. ¶ 18, ECF No. 32. Plaintiffs now seek leave to file a second amended complaint ("SAC") to add three defendants and new claims for trade dress infringement as well as vicarious trademark liability. Pls.' Mot. to Amend. 1, ECF No. 65. The Honorable LaShann DeArcy Hall referred this matter to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs should be denied leave to file the SAC.

## BACKGROUND[1]

       Plaintiffs acquired the exclusive rights to the "Star Gel" trademark on January 1, 2019 for $1 consideration.[2] Am. Compl. ¶ 15, Ex. 8. The trademark was previously owned by Elazar

---

[1] All facts are taken from the Amended Complaint, ECF No. 32.
[2] This case was initially filed on June 18, 2018 by Elazar Rosenshine. ECF No. 1. An amended complaint filed on March 6, 2019 substituted plaintiffs Oren and Amir Rosenshine. ECF No. 32.

1

Rosenshine who acquired it from International Grooming, Inc. ("IG").[3] Id. ¶ 15, Ex. 7. IG previously acquired the trademark from Global Manufacturing Import Export, Inc. ("GMIE") in July 2014,[4] id. ¶ 8, Ex. 4, and registered the trademark on December 19, 2017, id. ¶ 14, Ex. 6. Defendant A. Meshi, an Israeli company[5] that markets cosmetic products in the United States, entered into an agreement with GMIE in 2004 to manufacture a hair gel bearing the Star Gel trademark. Id. ¶¶ 1, 4, Ex. 3. The agreement with A. Meshi recognized GMIE's exclusive rights to the Star Gel trademark. Id. ¶ 5, Ex. 3. GMIE sold the hair gel bearing the trademark to customers in the United States using distributors, including defendants A to Z Import Inc. and Eyal Noach. Id. ¶ 6. Eyal Noach owns A to Z Import Inc. Id. ¶ 7. IG continued to market the hair gel after it acquired the Star Gel trademark in July 2014. Id. ¶¶ 8-9.

In November 2016, IG learned that A. Meshi approached IG's U.S. customers, including A to Z Import Inc. and Eyal Noach, and sold them "counterfeit versions" of Star Gel hair gel without plaintiffs' consent. Id. ¶ 10, 20. The Star Gel marks on the "counterfeit versions" of the product closely resemble the genuine Star Gel mark but differ in that the "TM" trademark symbol has been removed and A to Z Import Inc.'s address is printed on the product's container. Id. ¶ 31, Ex. 5. Plaintiffs believe that A. Meshi has sold the counterfeit hair gel to many supply channels, including customers in New York. Id. ¶ 11. A. Meshi, A to Z Exports Inc., and Eyal Noach continue to distribute the counterfeit Star Gel hair gel, despite plaintiffs' demands for defendants to cease and desist. Id. ¶¶ 12-13, 16. Plaintiffs claim that they have devoted substantial resources

---

[3] Current plaintiffs Oren and Amir Rosenshine are listed as the Co-CEOs of International Grooming on the Trademark Assignment Agreement which assigned the Star Gel trademark to Elazar Rosenshine. Am. Compl., Ex. 7.
[4] The Trademark Assignment Agreement lists Edna Rosenshine as the CEO of GMIE and Oren, Amir, and Dorin Rosenshine as Co-CEOs of International Grooming, Inc. Am. Compl., Ex. 4.
[5] The complaint does not explicitly state that A. Meshi is an Israeli company, but the caption lists an Israeli address and prior filings in this case verify that the company is based in Israel. See e.g., Y. Mizrahi Decl., ECF No. 47-2.

2

to developing the Star Gel trademark, resulting in its public recognition and association with "high quality." Id. ¶ 19.

## PROCEDURAL HISTORY

Elazar Rosenshine commenced this *pro se* action by filing a complaint on June 18, 2018. ECF No. 1. An Amended Complaint was filed on March 6, 2019 which substituted plaintiffs Oren and Amir Rosenshine for Elazar Rosenshine. Am. Compl., ECF No. 32. Defendant A. Meshi filed a motion to dismiss the amended complaint asserting that the Court lacked personal jurisdiction, subject matter jurisdiction, and that the amended complaint failed to state a claim upon which relief could be granted. ECF No. 47. The motion to dismiss was granted in part and denied in part. ECF No. 51. The Court denied the motion to dismiss for lack of personal and subject matter jurisdiction and granted the motion to dismiss for failure to state a claim regarding trade dress infringement, vicarious trademark liability, breach of the implied covenant of good faith and fair dealing, and for violations of New York's General Business Law. Id. Plaintiffs' claims for trademark counterfeiting, trademark infringement, false designation of origin, trademark dilution, unfair competition, false advertising, and contributory trademark infringement were permitted to proceed. Id. Plaintiffs' state law claims for trademark infringement, tortious conspiracy, and breach of contract were also permitted to proceed. Id. Defendant A. Meshi answered the amended complaint on May 21, 2020. Defendants A to Z Imports Inc. and Eyal Noach have not responded to the complaint or otherwise appeared in this action.

On August 17, 2020, plaintiffs moved to file a SAC and appended a proposed SAC to their motion papers. ECF No. 61. I held a conference with the parties on September 21, 2020 and directed plaintiffs to file a corrected proposed SAC.[6] ECF No. 64. Plaintiffs now move to file a

---

[6] The second amended complaint plaintiffs proposed realleged multiple claims which the Court has already dismissed. See ECF No. 61.

corrected proposed SAC, and include a copy of the proposed amendment with their motion papers. ECF No. 65. Defendant opposes the motion to amend. A. Meshi Opp'n Br., ECF No. 66. Plaintiffs' motion was referred to me for a Report and Recommendation.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Leave to amend, should be "freely given[n]…when justice so requires. FED. R. CIV. P. 15(a)(2); see also Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). However, leave to amend should be denied if the proposed amendment would be futile. Id. Proposed amendments are considered futile if they lack merit or would not withstand a motion to dismiss. Hunter v. Deutsche Lufthansa AG, 863 F. Supp. 2d 190, 202-03 (E.D.N.Y. 2012) (first quoting Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990); then quoting Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002)). A motion to amend should be denied when the proposed amendment fails to state a claim upon which relief could be granted, see Medina v. Tremor Video, Inc., 640 Fed. Appx. 45, 47 (2d Cir. 2016) (summary order) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 50 (2d Cir. 1991), or seeks to add parties over whom the Court lacks personal jurisdiction, see Hunter, 863 F. Supp. 2d at 202 (citing Spiegel v. Schulmann, 604 F.3d 72, 78 (2d Cir. 2010)).

Whereas a motion to amend a complaint may be a non-dispositive motion when granted, see Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007); Bonilla v. City of New York, No. 20-CV-1704(RJD)(LB), 2020 WL 6637214, at * 2 (E.D.N.Y. Nov. 12, 2020) (citing Louis v. Metro Transit Auth., No. 12-CV-6333(ILG), 2014 WL 5311455, at *1 (E.D.N.Y. Oct. 16, 2014)), the motion is dispositive when denied, see Bonilla, 2020 WL 6637214, at * 2 (citing

4

Sokol Holdings Inc. v. BMB Munai, Inc., No. 05-CV-3749(KMW), 2009 WL 3467756, at *3-4 (S.D.N.Y. Oct. 28, 2009)). Therefore, this Report is made in accordance with 28 U.S.C. § 636(b).

While the Court is mindful of its obligation to liberally construe plaintiffs' *pro se* motion, Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)), the proposed amendment should be denied.

## DISCUSSION

Plaintiffs' proposed SAC seeks to add three additional defendants – Yermi Mizrahi, Shem Tov Mizrahi, and Nava Mizrahi[7] – and reassert claims for trade dress infringement and vicarious trademark infringement. ECF No. 65-1. The proposed amendment asserts that the additional defendants are A. Meshi's "owners and managers" and personally initiated the company's alleged trademark infringement. Id. ¶¶ 1-2, 11-12. Defendants posit that the amendment is futile because the court lacks personal jurisdiction over the proposed additional defendants (the "Mizrahi defendants") – who are all Israeli citizens – and the proposed SAC fails to adequately state a claim for trade dress infringement or vicarious trademark infringement. A. Meshi Opp'n Br. 1, 3.

I. Personal Jurisdiction

The burden of demonstrating personal jurisdiction over a defendant rests with plaintiffs. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (citing Metro Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) (explaining the burden in the

---

[7] The proposed second amended complaint's caption provides the same Israeli address for these proposed defendants as for A. Meshi, ECF No. 65-1, and A. Meshi's opposition papers state that the proposed individual defendants "are all Israeli citizens with no enumerated connections to New York," A. Meshi Opp'n Br. 2. The Court notes that the Rosenshine and Mizrahi families figure prominently in this litigation, although the record fails to explain the relationship between the families.

5

context of a 12(b)(2) motion to dismiss). When the Court decides the issue based upon the pleadings and affidavits, rather than through a hearing, plaintiffs need only present a prima facie case demonstrating personal jurisdiction. See Wolo Mfg. Corp. v. ABC Corp., 349 F. Supp. 2d 176, 194 (E.D.N.Y. 2018) (quoting S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010)). Plaintiffs must proffer a sufficient factual showing which, when taken as true and viewed in the light most favorable to plaintiffs, satisfies the Court that jurisdiction over the defendant is proper. See id. (quoting In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013)). The Court need not credit "conclusory statements, without supporting facts." Id. at 196 (internal quotation marks omitted) (quoting Mirman v. Feiner, 900 F. Supp. 2d 305, 309 (E.D.N.Y. 2012)).

Plaintiffs propose to add three new non-domiciliary defendants. The Court analyzes personal jurisdiction in two steps: first, the Court applies New York's long-arm statute and, second, if the statute affords personal jurisdiction over the defendant, the Court must determine whether the Constitution's Due Process Clause permits the exercise of jurisdiction. See id. at 194 (quoting Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163-64 (2d Cir. 2010)). In pertinent part, New York's long-arm statute states:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state….; or 3. commits a tortious act without the state causing injury to person or property within the state…if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce….

N.Y. C.P.L.R. § 302(a). The Due Process analysis requires the Court to decide whether the defendants have sufficient minimum contacts with the forum state, justifying the exercise of

6

personal jurisdiction, and also whether exercising jurisdiction "comports with 'traditional notions of fair play and substantial justice'" and is therefore reasonable. Chloé, 616 F.3d at 164 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

In New York, the owners of a company are "generally not subject to personal jurisdiction as a result of the company's activities unless (1) the corporate veil can be 'pierced' or (2) the corporation acted as an agent for the owner." Wolo Mfg. Corp., 349 F. Supp. 2d at 195 (quoting Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 114, 1148 (S.D.N.Y. 1995). However, a "corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable." Id. (internal quotation marks omitted) (quoting Bano v. Union Carbide Corp., 273 F.3d 120, 133 (2d Cir. 2001)). In such cases though, "conclusory and vague allegations…which generally refer to 'defendants' in the plural" and fail to describe an individual's specific role in the complained of behavior are insufficient. Id. (citing Reynolds v. Lifewatch, Inc., 136 F. Supp. 3d 503, 526 (S.D.N.Y. 2015)). In New York, a company's officer can also be subject to a court's jurisdiction if the company "transacted business in New York as the officer's agent." Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (citing Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988). In cases against a company officer, plaintiffs must show that the officer was a "primary actor" and not just an employee who played no part in the wrongdoing alleged. Id. (internal quotation marks omitted) (quoting Retail Software Servs., Inc. v Lashlee, 854 F.2d 18, 22 (2d Cir. 1988)). A complaint must contain specific facts regarding how the individually named defendants engaged in the wrongful conduct, including their specific roles. See id. at 325 ("The Complaint is completely devoid of any factual specificity indicating how each of the six defendants participated in the allegedly tortious conduct or what role they each played.").

7

In <u>Wolo Manufacturing. Corp.</u>, which also involved claims of trademark infringement, plaintiff alleged that an individual defendant was an owner, officer, and manager of the defendant business and "directed and controlled all of the" business' activities. <u>Id.</u> The Court found such allegations insufficient to confer the court's jurisdiction over the individual defendant and noted that the complaint "is devoid of factual allegations describing any specific conduct on the part of [the individual defendant]…rather plaintiff generally refers to the conduct of 'defendants' throughout the amended complaint." <u>Id.</u> (citation omitted) Likewise, in <u>Reynolds</u>, the Court examined a complaint which alleged that:

> Individual Defendants 'had personal involvement with their respective [D]efendants' corporate business activities [,] … had been involved in the decision making relating to the improper, deceptive, and/or fraudulent activity involved…, controlled the day-to day operations of the [D]efendant companies and developed aspects of business activities, such as sales and marketing plans and activities, and were aware of, or should have been aware of the improper business practices….'

136 F. Supp. 3d at 526 (citation omitted). The Court found these allegations conclusory and insufficient to allege the necessary personal involvement of each defendant. 136 F. Supp. 3d at 526 (citation omitted). <u>Id.</u>

Here, plaintiffs' proposed SAC fails to adequately allege each individual defendant's actions to sustain a finding of personal jurisdiction. The proposed amendment refers to Yermi Mizrahi, Shem Tov Mizrahi, and Nava Mizrahi, as defendants 4, 5, and 6, respectively. ECF No. 65-1. It states, "Defendant 4, Defendant 5, and Defendant 6 are the owners and managers of" A. Meshi, that A. Meshi, "through the actions of Defendants 4-6, actively solicits business in the U.S., and that "Defendants 4-6 direct all of [A. Meshi's] activities in the U.S., including New York." <u>Id.</u> ¶¶ 1-2. The proposed amendment further states that because the Mizrahi defendants "authorize, direct, and participate in … [A. Meshi's] counterfeiting activities, including its New

8

York sales of Plaintiffs' counterfeit Star Gel trademark…[they] are subject to this Court's jurisdiction." Id. ¶ 32. The core allegations against the new individual defendants are as follows:

> Defendant 4, Defendant 5, and Defendant 6 personally initiate, organize, and direct the counterfeit Star Gel operation, including, but not limited to, sourcing all the raw materials in the supply chain to bring the counterfeit Star Gel to market; reproducing replica packaging for the counterfeit Star Gel products; overseeing the manufacturing, production, storage, and distribution of the counterfeit Star Gel products, including the associated logistics activities; directing promotional and marketing efforts of the counterfeit Star Gel products across the U.S., including the State of New York; deceiving Plaintiffs' customers in the U.S., including New York, by approaching them, offering them, and selling them counterfeit Star Gel merchandise; negotiating the terms of sales transactions of counterfeit Star Gel merchandise with Plaintiffs' customers in the U.S., including New York; and collecting payments from Plaintiffs' customers in the U.S., including New York, for the illicit sales of the counterfeit Star Gel merchandise.

Id. ¶ 12. These allegations, while reciting the steps necessary to engage in the infringement alleged in this case, fail to distinguish the individual defendant's actions. Instead, plaintiffs' SAC is devoid of factual allegations describing any specific conduct on the part of the individual defendants. Plaintiffs' SAC draws no distinction between the conduct of Yermi Mizrahi, Shem Tov Mizrahi, and Nava Mizrahi.

Although plaintiffs' motion papers state that "they have recently identified [the individual defendants]…as the owners-managers of A. Meshi as part of our continuing investigation into the counterfeiting operation they have spearheaded," Pls.' Mot. to Amend 1, the complaint does not provide any information regarding the individual defendants' personal involvement in the alleged infringement. Plaintiffs appear to have concluded that the Mizrahi defendants "personally initiate, organize, and direct the counterfeit Star Gel operation" but offer no facts to support this conclusion. The Court cannot discern whether the Mizrahi defendants' actions are behind the alleged infringement or if they were named as defendants, and actions attributed to them, because they are the "owner-mangers" of A. Meshi. See Karabu Corp., 16 F. Supp. 2d at 325 ("This Court has no basis for knowing whether the six named defendants actually orchestrated

9

the alleged tortious conduct, or were named in the complaint simply because their names appear at the top of TWA's masthead."). Without a sufficient factual showing, plaintiffs' new assertions appear to be just conclusions based upon the individual defendants' positions in the company which cannot be relied upon to support personal jurisdiction. See Wolo Mfg. Corp, 349 F. Supp. 3d at 194 (quoting Terrorist Attacks, 714 F.3d at 673) (explaining that the Court will not draw "argumentative inferences" or accept legal conclusions as fact). The proposed SAC's conclusory allegations regarding defendants' conduct are insufficient to sustain this Court's jurisdiction.

  II.  Failure to State a Claim

When deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must decide whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)). This standard requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable. Id. (quoting Twombly, 550 U.S. at 556). The Court is permitted to consider the language of the complaint, any annexed exhibits, and documents incorporated by reference. Bubble Genius LLC v. Smith, 239 F. Supp. 3d 586, 592 (E.D.N.Y. 2017). All inferences must be drawn in favor of the non-moving party. Id. (citing McCarty v. Dun & Bradstreet Corp., 482 F.3d 183, 191 (2d Cir. 2007)).

  A. Trade Dress Infringement

Defendant claims that the proposed amendment is futile because it fails to sufficiently state a claim for Trade Dress Infringement. A. Meshi Opp'n Br. 3. Specifically, defendant states that the proposed complaint fails to adequately establish the non-functionality and secondary meaning of plaintiffs' product's trade dress. Id.

10

In pertinent part, the Lanham Act provides that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which … is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person … shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). This section provides trade dress protection "which encompasses the overall design and appearance that make the product identifiable to consumers." Bubble Genius LLC, 239 F. Supp. 3d at 593 (internal quotation marks omitted) (quoting Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 118 (2d Cir. 2001)). To survive a motion to dismiss under Rule 12(b)(6), a claim for trade dress infringement "must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's [product] and the defendant's." Id. (internal quotation marks omitted) (quoting Sherwood 48 Assocs. v. Sony Corp. of Am., 76 Fed. Appx. 389, 391 (2d Cir. 2003) (summary order)). A trade dress claim must also "offer a precise expression of the character and scope of the claimed trade dress." Id. (quoting Sherwood 48 Assocs, 76 Fed. Appx. at 391).

When considering the functionality of trade dress, Courts look to "the degree of usefulness of the similar features on the competing dress, the degree of similarity between the non-useful, ornamental features of the packaging, and the feasibility of alternatives to the useful features. Fun-Damental Too, Ltd. v. Gemmy Industries Corp., 111 F.3d 933, 1002 (2d Cir. 1997) (citing Stormy Clime Ltd. v. ProGroup, Inc., 809 F.2d 971, 977 (2d Cir. 1987)). The burden of proving non-functionality rests firmly on the plaintiffs. 15 U.S.C § 1125(a)(3). See also TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 29 (2001).

11

A product has a secondary meaning when "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." GeigTech East Bay LLC v. Lutron Elec. Co., Inc., 352 F. Supp. 3d 265, 282 (S.D.N.Y. 2018) (internal quotation marks omitted) (quoting Inwood Labs, Inc. v. Ives Labs, Inc., 456 U.S. 844, 851 n.11 (1982)). A secondary meaning determination requires examination of "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) unsolicited media coverage of the product; (3) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use." Id. (internal quotation marks omitted) (quoting Metrokane, Inc. v. The Wine Enthusiast, 160 F. Supp. 2d 633, 639 (S.D.N.Y. 2001)).

Here, in seeking to allege a claim for trade dress infringement the proposed SAC provides the language of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and then a detailed description of the Star Gel product's container. ECF No. 65-1, ¶¶ 65-68. The proposed SAC does not provide any information about the functionality of the trade dress or any data relevant to the product's secondary meaning. The only statement in the complaint which is remotely relevant to secondary meaning is plaintiffs' conclusory assertion that "[a]s a result of Plaintiffs' efforts, the public has come to recognize and rely upon the Star Gel mark as an indication of the high quality associated with Plaintiffs' products." Id. ¶ 20. The proposed trade dress infringement amendment is therefore insufficient and would not withstand a motion under Rule 12(b)(6).

B. Vicarious Trademark Liability

Defendant A. Meshi claims that plaintiffs' attempt to assert a claim for vicarious trademark liability against the individual defendants is futile because the court lacks personal jurisdiction over the individual defendants. A. Meshi Opp'n Br. 3-4. Defendant also argues that

12

plaintiffs' vicarious trademark liability claim is duplicative. Id. at 4. Although the Court lacks personal jurisdiction over the Mizrahi defendants, I will briefly address plaintiffs' vicarious trademark liability claim.

"Vicarious liability for trademark infringement requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." Kelly-Brown v. Winfrey, 717 F.3d 295, 314 (2d Cir. 2013) (internal quotation marks omitted) (quoting Perfect 10 Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 807 (9th Cir. 2007)). Here, in support of their vicarious liability claim, plaintiffs allege that A. Meshi and the Mizrahi defendants have an agency relationship because the Mizrahis are the owners and managers of A. Meshi and "[b]y virtue of their agency relationship,…have the ability to control the actions of each other, fund the activities of each other, and derive a direct financial benefit from the illegal acts of each other." ECF No. 65-1, ¶ 108. They further allege that A to Z Import Inc. and Eyal Noach have an agency relationship because defendant Noach owns A to Z Import Inc. and "[b]y virtue of their agency relationship….have the ability to control the actions of each other, fund the activities of each other, and derive a direct financial benefit from the illegal acts of each other." These allegations merely recite the legal standard for vicarious trademark liability and are insufficient to state a claim. See Lopez v. Bonanza.com, Inc., No. 17-Civ-8493(LAP), 2019 WL 5199431, at *13 (S.D.N.Y. Sept. 30, 2019) (citing Twombly, 550 U.S. at 555) ("These allegations are nothing more than a restatement of the legal standard and are plainly insufficient to survive a motion to dismiss.").

## CONCLUSION

Accordingly, I respectfully recommend that plaintiffs' motion for leave to file a second amended complaint should be denied. The Amended Complaint should proceed on the claims that withstood defendant's motion to dismiss. The Clerk of Court shall mail a copy of this Report and Recommendation to plaintiffs and shall note the mailing on the docket.[8]

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: January 25, 2021
Brooklyn, New York

---

[8] The Clerk of Court is also directed to send plaintiffs the attached copies of all the unreported cases cited herein.

14