**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

OREN ROSENSHINE,
AMIR ROSENSHINE

              Plaintiffs,

   vs.

A. MESHI COSMETICS INDUSTRIES LTD., A TO
Z IMPORTS, INC. and EYAL NOACH

           Defendants

18-cv-03572
(LDH-LB)

**Served on Plaintiffs on**
**December 5, 2022**

**MEMORANDUM OF LAW IN SUPPORT OF**
**A.  MESHI COSMETICS INDUSTRIES LTD.'S MOTION FOR**
**SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

STATEMENT OF FACTS ..................................................................................... 1

I.   Meshi sold Star Gel to GMIE from 2004 until 2012 ..................................... 1

II.   Meshi made a one-time sale of Star Gel to A to Z in the fall of 2016, after Plaintiffs abandoned Star Gel sales and before they applied to register the mark ................................ 2

III.   Plaintiffs' evidence is insufficient to prove any of their claims .................................. 3

　1.   There is no evidence that Plaintiffs were selling or attempting to sell Star Gel beyond October 2015 ........................................................................................ 8

　2.   There is no evidence that Meshi sold any additional Star Gel beyond the 3,600 units it sold to A to Z in the fall of 2016 ........................................................ 11

　3.   There is no evidence that the Plaintiffs suffered any harm to their business from Meshi's one-time sale of Star Gel to A to Z in November 2016 ............................. 12

LEGAL ARGUMENT ......................................................................................... 16

I.   Summary judgment standard ......................................................................... 16

II.   Plaintiffs failed to satisfy the necessary elements of all their claims .......................... 17

　1.   First claim (federal trademark counterfeiting in violation of 15 U.S.C. § 1114) ....... 17

　2.   Second claim (federal trademark infringement in violation of 15 U.S.C. § 1114, 1125(a) and New York State common law) ................................................... 18

　3.   Third claim (false designation of origin in violation of 15 U.S.C. § 1125(a)) ........... 20

　4.   Fourth claim (federal trademark dilution in violation of 15 U.S.C. § 1125(c) and N.Y. Gen. Bus. Law § 360-l) ................................................................ 20

　5.   Fifth claim (federal unfair competition and false advertising under 15 U.S.C. § 1125 (a) and New York common law) ..................................................... 22

　6.   Sixth claim (contributory trademark infringement) ................................................. 23

　7.   Ninth claim (tortious conspiracy) ......................................................................... 24

　8.   Tenth claim (breach of contract) .......................................................................... 24

CONCLUSION ................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

<u>Pages (s)</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ................................................16, 17

*Apogee Handcraft, Inc. v. Verragio, Ltd*., 155 A.D.3d 494, 495 (1st Dept. 2017) ............24, 25

*Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) ......................................................16

*Campo v. 1st Nationwide Bank*, 857 F. Supp. 264, 270 (E.D.N.Y. 1994) ...............................24

*Christopher D. Smithers Found., Inc. v. St. Luke's–Roosevelt Hosp. Ctr.*, No. 00–cv–5502
   (WHP), 2003 WL 115234, at *5 (S.D.N.Y. Jan. 13, 2003) ..................................................21

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir.
   2016)......................................................................................................................................22

*Donnelly v. Ford Motor Co.*, 80 F. Supp. 2d 45, 47 (E.D.N.Y. 1999) ....................................16

*Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013) ...............18

*Eliya, Inc. v. Steven Madden, Ltd.*, No. 15-cv-1272(DRH)(SIL), 2016 WL 1092626, at *3
   (E.D.N.Y. Mar. 21, 2016) ....................................................................................................23

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013) ..17

*Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 25 (D.D.C. 2006) .......17

*Gruner + Jahr USA Pub v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993) ................18

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F Supp 3d 137, 157 (E.D.N.Y.
   2016)......................................................................................................................................23

*Int'l Healthcare Exch. v. Global Healthcare Exch.*, 470 F. Supp. 2d 365, 371 (S.D.N.Y.
   2007)......................................................................................................................................19

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982)...........................................23

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146-51 (2d Cir. 2007) ....................................18, 19

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006)..............................................24

*Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F.Supp.2d 455, 471 (E.D.N.Y 2008)...............17

*Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)........................................................17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130-132 (2014) .........22

*Lionel v. Target Corp.*, 44 F.Supp.3d 315, 319 (E.D.N.Y. 2014) .....................................16, 17

*Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995)............................................................20

*Lopez v. BigCommerce, Inc.*, No. 16-cv-8970 (JPO), 2017 WL 3278932, at *3 (S.D.N.Y.
    Aug. 1, 2017)....................................................................................................................17

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F.Supp.2d 448, 456 (S.D.N.Y. 2005)...19

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F.Supp.3d 425, 434 (S.D.N.Y. 2016)
    .........................................................................................................................................21

*Morgans Group LLC v. John Doe Co.*, No. 10-cv-5225(KMW)(HBP), 2012 WL 1098276, at
    *4 (S.D.N.Y. Mar. 31, 2012).............................................................................................19

*Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004).....................24

*New York Stock Exch., LLC [NYSE] v. New York, New York LLC*, 293 F.3d 550, 554 (2d Cir.
    2002).................................................................................................................................20

*Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) ........17

*Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 18-cv-2442 (JPC), 2022 WL 4280403,
    at *9 (S.D.N.Y. Sept. 15, 2022) ........................................................................................18

*Patsy's Italian Rest., Inc. v. Banas*, 575 F.Supp.2d 427, 456 (E.D.N.Y. 2008) *aff'd* 658 F.3d
    254 (2d Cir. 2011) .............................................................................................................21

*PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, No. 19-cv-7577 (KMK), 2022
    WL 4368036, at *8 (S.D.N.Y. Sept. 20, 2022) ..................................................................22

*Small Bus. Bodyguard, Inc. v. House of Moxie, Inc.*, No. 14-cv-7170 (CM), 2014 WL
    5585339, at *7 (S.D.N.Y. Oct. 30, 2014)...........................................................................21

iv

*TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88, 99 (2d Cir. 2001) .....21

*Tiffany (NJ) Inc. v. eBay Inc*., 600 F.3d 93, 104 (2d Cir. 2010) ................................................23

*Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc.*, 178 F. Supp. 655, 661 (S.D.N.Y.

    1959), *aff'd* 280 F.2d 197 (2d Cir. 1960) .............................................................................25

*World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F.Supp.2d 514, 532 (S.D.N.Y. 2001) ......24

**Statutes**

15 U.S.C. § 1125(a) ....................................................................................................18, 19, 22

15 U.S.C. § 1125(c) ...........................................................................................................20, 21

15 U.S.C.A. § 1127 ...................................................................................................................17

Fed. R. Civ. P. 56(a); ...............................................................................................................16

Fed.R.Civ.P. 56(e); ..................................................................................................................16

N.Y. Gen. Bus. Law § 360-l ....................................................................................................21

Defendant A. Meshi Cosmetics Industries Ltd. (**"Meshi"**) respectfully submits this memorandum of law in support of its motion for summary judgment. Meshi relies on the following previously submitted documents for the purposes of this motion: (a) Meshi's August 30, 2022 Local Civil Rule 56.1 Statement of Material Facts not Genuinely in Dispute ("**Facts**") (ECF No. 92-1) and all exhibits attached thereto (ECF Docs. 92-2 – 92-10), (b) Plaintiffs' October 18, 2022 Responses thereto ("**Plaintiffs' Responses to Facts**") (ECF No. 94), (c) Plaintiffs' October 18, 2022 Statement of Additional Facts ("**Additional Facts**") (ECF No. 94), the attendant exhibits and the October 17, 2022 Declaration of Amir Rosenshine ("**October 17, 2022 Rosenshine Decl.**") (ECF No. 94) (collectively, all the documents in ECF No. 94 are referred to as "**the October 18, 2022 submissions**[1]"), and (d) Meshi's November 3, 2022 Responses thereto ("**Meshi's Responses to Additional Facts**") (ECF No. 95).

## STATEMENT OF FACTS

**I.      Meshi sold Star Gel to GMIE from 2004 until 2012**

In 2004, Plaintiffs' predecessor in interest, Global Manufacturing Import Export Inc. ("**GMIE**"), a now-defunct company that specialized in importing foreign cosmetics products into the United States, entered into an agreement with Meshi. Facts ¶¶ 6, 8; Khaskelis Decl.[2] Ex. 3 (ECF No. 92-5); Am. Comp. ¶ 4[3]. GMIE was operated by Plaintiffs' mother, Edna Rosenshine. Facts ¶ 6; Exs. 2, 3, 4 to Am. Compl. Meshi, a family-run business operating in Bat Yam, Israel, is a manufacturer of skin and hair care products. Facts ¶¶ 1, 2; Khaskelis Decl. Ex. 1 (ECF No. 92-3) ¶¶ 7-9. Pursuant to the terms of that agreement, Meshi agreed to manufacture 2,000 units of a jojoba hair gel for GMIE at a price of $2.45, for a total payment

---

[1] The October 18, 2022 submissions were filed late, despite the generous extension granted by this Court (ECF No. 93) with Meshi's agreement. They should be stricken on the grounds of unjustifiable tardiness alone.

[2] August 30, 2022 Declaration of Allison Khaskelis, previously filed with the Court as ECF No. 92-2.

[3] Amended Complaint, filed as ECF No. 32.

of $4,900.  Facts ¶ 9; Am. Compl. Exs. 2 & 3 ¶ 1.  GMIE sent Meshi a label to print and affix on the manufactured units.  Facts ¶ 9; Am. Compl. Exs. 2 & 3 ¶¶ 3-4, 7. GMIE called the product Star Gel and designed a logo for it.  *Id.*  Although the contract was not renewed in writing after 2004, the relationship between Meshi and GMIE continued until 2012 on the basis of verbal orders from GMIE.  Facts ¶ 10; Khaskelis Decl. Ex. 1 ¶ 30.  Between 2004 and 2012, Meshi supplied approximately $10,000 worth of Star Gel to GMIE on an annual basis to Plaintiffs' predecessors in interest.  *Id.*

Neither Plaintiffs nor their predecessors in interest ordered any Star Gel from Meshi after 2012.  Facts ¶ 11; Khaskelis Decl. Ex. 1 ¶ 31.  In fact, Plaintiffs' predecessors in interest failed to remit an outstanding payment of US $1,967.64 owed to Meshi for their Star Gel orders. Facts ¶ 12; Khaskelis Decl. Ex. 4 (ECF No. 92-6).  It is undisputed that neither Plaintiffs nor their predecessors in interest sourced any Star Gel from any other supplier after 2012.  *See, e.g.*, Plaintiffs' Responses to Facts ¶¶ 17, 22, 26, 32.

## II.     Meshi made a one-time sale of Star Gel to A to Z in the fall of 2016, after Plaintiffs abandoned Star Gel sales and before they applied to register the mark

Meshi did not sell any Star Gel to anyone from 2012 and until it was approached by Eyal Noach of A to Z Imports Inc. ("**A to Z**") in the fall of 2016.  Facts ¶ 27; Khaskelis Decl. Ex. 1 ¶¶ 33, 35.  It was Mr. Noach who initiated the contact with Meshi's CEO, Yermi Mizrahi, after searching for the manufacturer of Star Gel to place an order. Facts ¶¶ 28-29; Khaskelis Decl. Ex. 1 ¶ 35; Additional Facts ¶ 20; October 17, 2022 Rosenshine Decl. ¶ 13.  Prior to the call from Mr. Noach, Meshi had no distributorship arrangement or any relationship whatsoever with A to Z.  Facts ¶ 30; Khaskelis Decl. Ex. 1 ¶ 34.  At that point, Meshi had no commercial dealings with GMIE/ its successors in interest for nearly four years.  Facts ¶ 31; Khaskelis Decl. Ex. 1 ¶ 31.

2

A to Z, GMIE's former customer, supplied the artwork for the product's label, which listed A to Z's name and contact information.  Facts ¶¶ 33,35; Khaskelis Decl. Ex. 1 ¶ 43; Khaskelis Decl. Ex. 7; Am. Compl. Ex. 5.  Meshi, as a manufacturer, was not involved in the creation or choice of that label and simply transmitted the artwork supplied by A to Z to a third-party printing company it utilized for label-making. Facts ¶ 35; Khaskelis Decl. Ex. 1 ¶ 43.

Meshi made a one-time sale of 3,600 units of Star Gel to A to Z in November 2016 for a price of $3/unit.  Facts ¶ 34; Khaskelis Decl. Ex. 1 ¶ 36; Khaskelis Decl. Ex. 9 (ECF No. 92-11).  The total revenue of that sale for Meshi was $10,800.  Id.  Meshi has only ever sold Star Gel to GMIE – between 2004 and 2012 – and to A to Z, during the one-time sale in the fall of 2016.  Facts ¶¶ 11, 36; Khaskelis Decl. Ex. 1 ¶¶ 21, 31.  Meshi has not sold any Star Gel to A to Z or to anyone following the one-time sale to A to Z in November 2016.  Facts ¶ 37; Khaskelis Decl. Ex. 1 ¶¶ 21, 22, 50.  Meshi has taken no steps to advertise, promote or attempt to sell any Star Gel anywhere in the United States following the one-time sale to A to Z in November 2016.  Facts ¶ 38; Khaskelis Decl. Ex. 1 ¶¶ 23-24.  Meshi has not engaged in any conduct outlined in the Amended Complaint since November 2016.  Facts ¶ 41; Khaskelis Decl. Ex. 5 ¶ 17 of the numbered document requests (ECF No. 92-7); Khaskelis Decl. Ex. 7.

Significantly, it was only some six months after Meshi made its one-time sale of Star Gel to A to Z that Plaintiffs' predecessors in interest took any steps to register a mark for Star Gel with the United States Patent and Trademark Office for the first time.  Facts ¶ 39; Am. Compl. Ex. 6.  Prior to May 9, 2017, the Star Gel mark was unregistered.  Id.  Plaintiffs supplied no evidence that they utilized the Star Gel mark after registering it.  Khaskelis Decl. Ex. 5 ¶ 1 of the numbered document requests; Khaskelis Decl. Ex. 7.

## III.    Plaintiffs' evidence is insufficient to prove any of their claims

Although Plaintiffs have failed to materially progress their claims in the nearly four years since commencing them, on March 8, 2022, Plaintiffs and Meshi participated in a mediation with the assistance of David Berger, Esq., whom the parties jointly selected through this Court's Alternative Dispute Resolution Office.  The mediation session did not succeed in resolving the dispute, but the parties agreed to continue settlement conversations with Mr. Berger's assistance via email.  Mr. Mizrahi remained eager to continue settlement discussions to clear the company's good name and to rid it of these proceedings, which have been hanging over it for nearly four years.  Drawing upon all available information in the matter, Meshi's leadership remained convinced that Meshi had acted ethically and in full compliance with the law in making its one-time sale of Star Gel in November 2016.  They could not fathom what harm could have possibly befallen Plaintiffs when Plaintiffs/their predecessors in interest had long-since stopped sourcing, selling or attempting to sell any Star Gel by November 2016.  Nevertheless, as Mr. Mizrahi reiterated before, during and after the mediation, if Plaintiffs could supply Meshi with evidence that demonstrated the direct harm that Meshi caused to their business, Meshi would be eager to return to the negotiations table to right any wrong it caused.

Although Plaintiffs agreed during the mediation to promptly serve this evidence to facilitate continuing discussions, by March 23, 2022, Plaintiffs changed their position and insisted on proceeding to formal discovery.  Khaskelis Decl. Ex. 5 at p. 3.  Though Meshi was disappointed by this reversal (*id.*), on March 24, 2022 it served its First Request for the Production of Documents Pursuant to Rule 34 of the Federal Rules of Civil Procedure ("**Document Requests**").  Khaskelis Decl. Ex. 5.  While the Document Requests speak for themselves, they sought to establish the record for all sales of Star Gel that Plaintiffs/their predecessors in interest undertook or attempted to undertake since 2012 as well as the losses that Plaintiffs suffered as a result of Meshi's alleged infringement.  Facts ¶ 13; Khaskelis Decl. Ex. 5.  The Document Requests provided a deadline to respond within 32 days, in compliance

with the Federal Rules.  Khaskelis Decl. Ex. 5 at p. 6.  The undersigned repeatedly chased Plaintiffs for responses to their Document Requests after the deadline.  Facts ¶ 14; Khaskelis Decl. Ex. 6 (ECF No. 92-8), pp. 3, 4, 6, 11.

On May 31, 2022, and presumably in light of Meshi's motion to compel (ECF No. 82), Plaintiffs finally produced a set of over 100 invoices (without Bates numbers) demonstrating sales of Star Gel to grocery stores and other distributors from January 2013 until October 19, 2015.  Facts ¶ 15; Khaskelis Decl. Ex. 7.  Plaintiffs provided no paragraph by paragraph responses to the Document Requests.  *Id.*  Their covering email accompanying the production stated that "[i]n response to your document requests, we do not have any documents to produce at this time except for the attached Star Gel® invoices that we were able to locate so far." *Id.*[4]

Pursuant to the invoices produced, Plaintiffs and/or their predecessors in interest sold a total of 2,131 units of Star Gel between January 1, 2013 and October 19, 2015.  Facts ¶ 18; Khaskelis Decl. Ex. 7.  While many of the invoices demonstrate sales in New York, a number of the invoices demonstrate sales outside of this jurisdiction, including in Florida, California, Pennsylvania, Maryland and New Jersey.  Facts ¶ 16; Khaskelis Decl. Ex. 7.  The produced invoices reveal that, at least in New York, Plaintiffs' predecessors in interest primarily sold Star Gel to specialized grocery stores and distributors serving a largely Jewish and/or Israeli clientele.  *Id.*  Per these invoices, the maximum sale price that Plaintiffs and/or their predecessors in interest received for a single unit of Star Gel was $10.  Facts ¶ 18; Khaskelis Decl. Ex. 7.  A tabulation of these invoices demonstrates that between January 1, 2013 and October 19, 2015, Plaintiffs' predecessors in interest earned a total revenue of $19,812 for distributing Star Gel.  *Id.*

---

[4] The entirety of Plaintiff's discovery produced in this matter is appended as Exhibits 7 and 10 to Khaskelis Decl. submitted in support of the Facts (ECF No. 92-9 and 92-12 respectively).

Assuming that Plaintiffs' predecessors in interest purchased Star Gel from Meshi for $2.45 per unit (as per Exhibits 2 and 3 to Am. Compl.), it follows that, as a best-case scenario, and without taking into account any other expenses, such as shipping and advertising costs, the Plaintiffs' predecessors in interest earned a profit of $14,591.05 in the nearly three years of selling Star Gel in and outside of New York between January 2013 and October 2015.  Facts ¶ 19; Khaskelis Decl. Ex. 7.

On June 8, 2022, Magistrate Judge Bloom held a hearing on the motions to compel in this matter.  During the hearing, Plaintiffs consistently represented to Judge Bloom that they did not have any additional documents responsive to the Document Requests.

> THE COURT: So you don't have to answer the instructions which go on for ten pages, but they tell you what you're supposed to give them. And then they start asking you the actual questions. And the documents to be produced are 1 through 20. Do you see those requests?
>
> MR. O. ROSENSHINE: Yes.
>
> THE COURT: Have you produced all of those documents?
>
> MR. O. ROSENSHINE: Yes. We went through everything. We didn't skip anything. We read through the entire…

Khaskelis Decl. Ex. 8 (ECF No. 92-10) at p.18, lines 5-15.

> THE COURT: Mr. Rosenshine, have you turned over any email regarding your interest in Star Gel or in [sic] communications between you and your predecessors or any third parties? Have you turned over any email, sir?
>
> MR. A. ROSENSHINE: We recited we do not have any. So as we said, we do not have any other documents whatever they requested.

*Id.* at p. 26, lines 8-14.

> THE COURT: You've stated on the record that you've given them everything you have. You have nothing else. Which means that you will not be able to produce something and surprise them. Do you understand that, Mr. Oren Rosenshine?
>
> MR. O. ROSENSHINE: Yes. I just want to clarify --
>
> THE COURT: Do you understand that, Mr. --excuse me. Do you understand that, Mr. Amir Rosenshine?
>
> MR. A. ROSENSHINE: Yes.

6

*Id.* at p. 31, lines 9-18.

Plaintiffs also confirmed to the Court that their predecessors in interest sold no Star Gel

after 2015:

> THE COURT: So for instance, starting with number one, it says all documents including but not limited to any internal communications, communications with third parties, invoices and receipts that demonstrates all sales of Star Gel by you and/or your predecessors in interest between January 1, 2012 and today's date, and specify the dates, quantities, and amounts of such sales. So you gave them the invoices. Were the invoices for January 2012 through today?
>
> MR. O. ROSENSHINE: We gave them from January '13 through 2015 because after 2015 there is no Star Gel.  So you can say from 2013 to today.  Before then, we still couldn't find it.  But that's why we wanted additional time because it's, you know, it's from before this, and it's two entities ago basically. So this entity that sells in 2012 Star Gel is no longer -- it's over basically. And it's like more than ten years ago. So that's why we requested --
>
> THE COURT: Mr. Rosenshine, you've had four years to collect documents. Why would any more time be fruitful here?

*Id.* at p. 18, line 16-p. 19, line 11.

Judge Bloom expressed frustration with Plaintiffs' approach toward their discovery

obligations.  In precluding Plaintiffs from delaying matters further, Judge Bloom ordered as

follows:

> THE COURT: I understand your [Meshi's] position, so I'm not going to allow them [Plaintiffs] to give you any additional information.  You're going to give them the information regarding the corporate structure of A. Meshi by 6/21. Mr. Rosenshine and Mr. Rosenshine, you're done.  No more. I'm not going to hear about what you could have or should have found when this case has been pending since June of 2018.  You're the one that's coming to the Court asking for your rights to be enforced. And yet you didn't have the time because the Court sent you to annexed mediation when there was five months at the beginning and five months before this conference. So again, Mr. Rosenshine and Mr. Rosenshine, you're done with paper discovery.

*Id.* at p. 33, line 19 - p. 34, line 6.

Plaintiffs did not challenge the Court's order (ECF No. 89) closing all discovery on

August 1, 2022.   Consequently, Plaintiffs are restricted to the factual record that they

established by that date.  Accordingly, on August 30, 2022, Meshi submitted its pre-motion

letter seeking leave to file its summary judgment motion, along with the necessary supporting documents (ECF No. 92 – 92-13).  Plaintiffs filed the October 18, 2022 submissions in response thereto (ECF No. 94).

The statements in the October 18, 2022 submissions are wholly devoid of factual support and corroboration.  To the contrary, of the 123 paragraphs that comprised the Additional Facts, at least 78 paragraphs simply repeated the allegations in the Amended Complaint without more.  Similarly, 78 of the 110 paragraphs that comprised the October 17, 2022 Rosenshine Decl. are replicas of paragraphs contained in the Amended Complaint.  Local Rule 56.2, Notice to the Pro Se Litigant of the current Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, specifically warns against this practice, stating "[i]n short, Rule 56 provides that you may NOT oppose summary judgment simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant ..."  (Emphasis in the original).  These paragraphs should be stricken on this basis alone.

To the extent that the October 18, 2022 submissions contain any allegations not simply copied from the Amended Complaint, they can be summarized as follows: (1) Plaintiffs/their predecessors in interest were selling and/or attempting to sell Star Gel after October 2015; (2) Plaintiffs strongly believe that Meshi sold additional Star Gel following its one-time sale to A to Z in November 2016; and (3) Plaintiffs lost sales of other products as a result of their inability to compete with "counterfeit" Star Gel.  These allegations, which are devoid of any support, can only be described as a desperate attempt to gloss over the fatal flaws in Plaintiffs' case.

1. **There is no evidence that Plaintiffs were selling or attempting to sell Star Gel beyond October 2015**

Per Plaintiffs' own previously cited admissions to the Court and Meshi, they have no evidence to show that they sold or in any way attempted to sell Star Gel after October 2015.

In fact, they declared to the Court that there was no Star Gel after 2015.  Now reversing course and contradicting themselves in an effort to keep this matter alive, Plaintiffs are now claiming that they did have additional units of Star Gel to sell after October 2015 and that they, in fact, sold and attempted to sell some of those units after October 2015.  It is curious that, after producing more than 100 invoices for the period between January 2013 and October 2015 (Khaskelis Decl. Ex. 7) and claiming they have produced all requested documents, Plaintiffs could not locate a single invoice or other document corroborating the sales that they insist took place after October 19, 2015.  *See, e.g.*, Plaintiffs' Responses to Facts ¶¶ 21, 24, 26, 32, 48, 49; Additional Facts ¶ 28; October 17, 2022 Rosenshine Decl. ¶ 21.  Plaintiffs similarly failed to identify a single post-October-2015 customer/potential customer, the quantities purportedly sold, and the dates of any such sales/attempted sales.  Despite their allegations of uninterrupted efforts to market and sell Star Gel after October 2015, Plaintiffs failed to produce a single example of their marketing campaigns or to specify the form and content of their advertisements, when such ads began and ended, and to whom they were directed.  Rather, in an effort to defeat this motion, Plaintiffs are simply urging the Court to take them at their word and accept that sales and attempts, whatever form they took, did occur.

Setting aside this obvious inconsistency, it is entirely unclear what Star Gel product was even available for Plaintiffs to sell after October 2015 as they had not restocked their inventory since 2012.  Plaintiffs confirmed that did not source any Star Gel after 2012, and, contrary to their statement to the Court that there was no Star Gel after 2015, they suddenly claimed that they had an inventory of 1,008 remaining units in October 2015.  *See, e.g.*, Plaintiffs' Responses to Facts ¶¶ 11, 17, 22, 26, 32, 48, 49; Additional Facts ¶ 24; October 17, 2022 Rosenshine Decl. ¶ 17.  Firstly, this new position clearly contradicts the assertion that Star Gel was, in fact, the highly-demanded product that Plaintiffs claim it to be.  If this product was, indeed, so desirable, why would Plaintiffs/their predecessors in interest struggle to get rid of

9

their inventory in the four intervening years when, by their own admission, they had no competition in selling it? The record is clear that no other distributor sold Star Gel in the United States until November 2016, when A to Z acquired 3,600 units of Star Gel from Meshi. Facts ¶¶ 36-37; Khaskelis Decl. Ex. 1 ¶¶ 21, 22, 50.

Secondly, Plaintiffs have not demonstrated that the Star Gel inventory they allegedly had available in and after October 2015 (a claim which is denied on the basis of available evidence) remained valid for sale. Though the Food and Drug Administration does not impose shelf lives and expiration dates on cosmetics products, even a cursory glance at material available online reveals that unopened hair gel loses its effectiveness, at least in part, 36 months after manufacture and should be discarded.[5] As such, even if Plaintiffs had an inventory of 1,008 units left to sell after October 2015, as they claim, it is doubtful that any of those units were valid for sale, or that any of their customers or potential customers were interested in purchasing a product that was at least three years old, provided, of course, that Plaintiffs honestly disclosed the age of their inventory. In any event, it was the Plaintiffs' burden to prove that this remaining inventory could have been sold and that the harm they allegedly suffered was directly due to Meshi's conduct and not because their inventory had to be discarded by the close of 2015. Surely had Plaintiffs made or attempted to make such sales after October 19, 2015, they should have been able to produce at least one email or exchange with a customer/potential customer or a single witness statement from an identified customer/potential customer to corroborate their assertion. Plaintiffs utterly failed to meet this burden.

---

[5] *See, e.g.*, https://www.curlcentric.com/do-hair-products-expire/; https://themestizamuse.com/do-hair-products-expire-how-to-tell-and-what-to-do/#:~:text=In%20general%2C%20hair%20gel%20has,time%20to%20let%20it%20go; https://www.allure.com/story/expired-hair-products; https://www.hairromance.com/hair-products-expire/

**2. There is no evidence that Meshi sold any additional Star Gel beyond the 3,600 units it sold to A to Z in the fall of 2016**

Plaintiffs devote substantial efforts throughout their October 18, 2022 submissions to asserting that they believe that Meshi must have sold many more units of Star Gel than the 3,600 units sold to A to Z in the fall of 2016 because of the alleged rampant counterfeiting that persists in the marketplace. *See, e.g.*, Additional Facts ¶ 26, 31; October 17, 2022 Rosenshine Decl. ¶ 19, 24; Plaintiffs' Responses to Facts ¶¶ 30, 34, 36, 37, 38, 41, 42, 48, 49, 50. Putting aside the obvious problem of attempting to pass beliefs off as facts, Plaintiffs have not corroborated these assertions in any way. They have supplied no concrete examples of market saturation or the prevalence of "counterfeit" merchandise. Indeed, market saturation and rampant/widespread counterfeiting – terms that Plaintiffs use freely throughout their filings– are concepts that require support and must be accompanied by expert analysis of supply and demand in the relevant marketplace in addition to consumer behavior. Plaintiffs have neither defined the relevant marketplace nor explained what market saturation or widespread counterfeiting means in this context.

To the contrary, the only "evidence" that Plaintiffs rely on for the proposition of ongoing saturation are three screenshots from Amazon, Walmart and eBay advertising "counterfeit" Star Gel. Khaskelis Decl. Ex. 10 (ECF No. 92-12), pp. 23-32. These screenshots are undated, and Plaintiffs do not specify when they last accessed them (though the eBay screenshot indicates that the listing was last updated on November 3, 2018, *id.* at p. 25).[6] Although these listings are probative of absolutely nothing, it is useful to note that as of March 1, 2022, the undersigned could not locate any Star Gel product with A to Z's label available for sale at either

---

[6] Pursuant to the produced Amazon screenshot, a total of 99 units were available for purchase from that vendor. *Id.* at p. 29. The produced eBay screenshot describes a package of 3 units for sale in Arizona. *Id.* at pp. 24-25.

Walmart[7] or Amazon.[8]   The only eBay listing for Star Gel with A to Z's label that the undersigned found (last accessed on November 24, 2022) demonstrated 9 available units in Florida (last updated on August 22, 2021).[9]   The undersigned could not independently locate any other examples of Star Gel with A to Z's label sold online, much less any evidence that would corroborate an allegation of current widespread counterfeiting and/or market saturation. These findings are wholly consistent with the record of this case: because Meshi supplied neither A to Z nor any other distributor with Star Gel since the one-time sale in the fall of 2016, the product bearing A to Z's label has since exited the primary market.

### 3.   There is no evidence that the Plaintiffs suffered any harm to their business from Meshi's one-time sale of Star Gel to A to Z in November 2016

On December 14, 2020, Plaintiffs served on Meshi's attorneys what they termed to be their "disclosures."   Facts ¶ 43; Khaskelis Decl. Ex. 10, p. 3.   Upon information and belief, Plaintiffs supplied this information in compliance with what they thought to be an active discovery deadline of December 18, 2020 (ECF No. 60), prior to learning that that deadline would be stayed subject to the resolution of their motion for leave to amend their Amended Complaint.   In these disclosures, Plaintiffs provided the Declarations of Oren and Amir Rosenshine dated December 10, 2020.   Facts ¶ 44; Khaskelis Decl. Ex. 10, pp. 7-16.   Both declarations are materially identical to one another and contain statements confirming that their

---

[7] *See* the following links listing the product as out of stock: https://www.walmart.com/ip/Star-Gel-The-Top-Jojoba-Hair-Gel-Extra-Strong-KFP-White-3-38-Oz-Pk-Of-3/881686150;
https://www.walmart.com/ip/Star-Gel-Jojoba-Hair-Gel-Extra-Strong-KFP-Blue-3-38-Oz-Pack-Of-6/294237645?wmlspartner=wlpa&selectedSellerId=17562;
https://www.walmart.com/ip/Star-Gel-The-Top-Jojoba-Hair-Gel-Extra-Strong-32-oz-Blue/105047344
[8] No listings found
[9] https://www.ebay.com/itm/233922123669?hash=item3676d85795:g:5ckAAOSwvClgRKlT&amdata=enc%3A AQAHAAAAoO0B3Vtt3uvfryzHCEWa8Jrd8KT01RdcBXSSunsOA7%2B230sm89bnzZ9ga1DTUE0GYcLTje jRDcgScvOGee7G%2FQ6QIBQrAUjl3ohSYl3gTsU%2FpiPOwbJ5hvr0oALt4gdRrYyV%2BMfAocTjuXBTW %2Br0WbEfd%2FUMFjdFWaE20wJQyJ%2BgeyFQOIpR8NZrMq%2FYUehxIOUZmlkyjRqIwo91a32rliU%3 D%7Ctkp%3ABk9SR-ynzIWXYQ

contents are true and correct to the best of each Plaintiff's knowledge, information and belief under the penalty of perjury.  Facts ¶ 44; Khaskelis Decl. Ex. 10, pp. 11, 16.

Each declaration asserts the following estimates for damages as of December 2020[10]:

(a)      Lost profits resulting from said counterfeiting, including compensatory damages for lost profits on sales of Star Gel, consequential damages for lost profits on sales of complementary products, and damages to goodwill and reputation. Approximately $8,567,848.  Treble amount of damages: Approximately $25,703,544.

(b)      Incidental damages including compensation for time and effort spent by Oren and Amir, their predecessors in interest and their family members on corrective advertising: Approximately $500,000…

(c)      Compensation for emotional distress and mental anguish resulting from the counts pleaded in the Complaint, including for their predecessors and family members: Approximately $2,000,000.

(d)      Investigative costs and costs of suit: Approximately $100,000…

Khaskelis Decl. Ex. 10, pp. 10, 15.

The basis for the $8,567,848 figure set forth in (a) above was a one-page table, entitled "Computation of Lost Profits and Damages to Goodwill and Reputation."  *Id.* at p. 17. This table, which was attached as an exhibit to the declarations, purported to calculate these figures from 2015 until 2020 and beyond through a variety of compounding assumptions.  Plaintiffs have provided no support for the numbers inserted into the table or proof for the validity of their compounding assumptions.  Facts ¶ 46; Khaskelis Decl. Ex. 10, p. 17.

In response to an inquiry by Judge Bloom on June 8, 2022, Plaintiffs confirmed that the damage figures that they supplied in the above-referenced table and the resulting calculations were not limited to losses of Star Gel sales, but also included the loss of sales for other products, allegedly somehow connected to the Star Gel sales.

MR. A. ROSENSHINE: We did not show from 2015. We showed them from 2013 to 2015 just to start this. But these gross profits represent the entire gross profits of the company not just from the Star Gel because we are claiming that the Star Gel allows our company to sell to

---

[10] The below does not list Plaintiffs' other claims to damages, such as reasonable attorneys' fees to be based on the Defendants' fees (even though the Plaintiffs are *pro se*) and punitive damages.

THE COURT: But Mr. Rosenshine, this case is just about Star Gel, correct?

MR. A. ROSENSHINE: Yes. The damages that Star Gel counterfeiting caused us. So it includes also complementary --

THE COURT: So you're saying that this chart, even though the chart would not prove anything, is not just related to Star Gel?

MR. A. ROSENSHINE: It is because what we are claiming is that all the complementary products that we sell to our customers by Star Gel has been also lost to A. Meshi…

THE COURT: Again sir, I only deal with the case that was filed in court. I don't deal with other concerns or issues that you have that are not part of this case.

MR. A. ROSENSHINE: Yes. So our calculation of damages in the complaint also explains that we are not only claiming damages for losses of Star Gel but also complementary products that --

THE COURT: Again, Mr. Rosenshine, your case here is about Star Gel.

Khaskelis Decl. Ex. 8, p. 15, line 20-p.16, line 22.

As Judge Bloom pointed out, Plaintiffs do not "get to prove [their] wishes" by putting some numbers into a table.  *Id.* at. p. 13, line 19-p.14, line 22.  It remains clear from the Plaintiffs' Additional Facts, however, that, despite Judge Bloom's admonition, they remain committed to these baseless figures and compounding assumptions, though they have provided no evidence to support them. Additional Facts ¶¶ 21, 29, 30; October 17, 2022 Rosenshine Decl. ¶¶ 14, 22, 23.

Plaintiffs have also entirely failed to establish any connection between Meshi's one-time sale of 3,600 units of Star Gel to A to Z in November 2016 and any customer confusion or loss of goodwill.  As a preliminary point, Plaintiffs' own evidence demonstrates that the labels utilized by the Plaintiffs/their predecessors in interest and by A to Z were distinct.  Specifically, per Exhibit 5 to the Amended Complaint, A to Z's label did not include the [TM] mark and listed A to Z's name and contact information.  By contrast, GMIE's label contained the [TM] mark, listed GMIE's name and address and indicated that the product was "another fine product from the Top Star [TM] label".  Assuming that the Plaintiffs/their predecessors in interest were even selling or attempting to sell Star Gel after October 2015, as they claim– a baseless allegation

14

that is vehemently denied–it is significant to note that A to Z's label in no suggests any connection with GMIE or their successors in interest.  As such, it remains the Plaintiffs' burden to demonstrate that any confusion arose, or was even likely.  Once again, customer confusion could be easily demonstrated through communications or witness statements, but Plaintiffs have not produced a single such document.  Nor did Plaintiffs identify a single confused, potentially confused or misled actual or prospective customer.  In circumstances where the Plaintiffs proclaimed their "intense efforts to educate the public" about the alleged counterfeiting (*see, e.g.*, Additional Facts ¶ 23; October 17, 2022 Rosenshine Decl. ¶16) and are claiming entitlement to $500,000 for their corrective advertisement efforts, it is suspicious that the Plaintiffs were unable to produce even a single document to give credence to this assertion and figure (*see, e.g.*, Khaskelis Decl. Ex. 5 ¶¶ 4, 8, 19 of the numbered document requests, which demonstrate Meshi's requests for such information).

Furthermore, while Plaintiffs allege that their inability to sell Star Gel affected their ability to sell other products that were dependent upon Star Gel, Plaintiffs have provided no evidence to establish such links.  Additional Facts ¶¶ 15-19, 23; October 17, 2022 Rosenshine Decl. ¶¶ 8-12, 16.  Plaintiffs wholly fail to ascertain which additional product sales were tied to their Star Gel sales, and how.  Setting aside the fact that Plaintiffs' predecessors in interest stopped selling Star Gel before the allegedly competing A to Z product entered the market, it is impossible to trace a connection between, for example, wet wipe and mop sales and Star Gel sales without evidentiary support or expert explanations.  Had this assertion been true and not merely Plaintiffs' say-so, it would not be difficult to support.  Plaintiffs could have supplied any type of communication with customers/potential customers showing an unwillingness to purchase Star Gel or other products from t Plaintiffs/their predecessors in interest due to purchases of Star Gel and additional products from an alternative source.  Plaintiffs could have obtained witness statements from customers/potential customers describing changes to their

orders – including of specified complementary products –and reasons for the same.  Plaintiffs then could have engaged an impartial economic expert to review the Plaintiffs' books and extrapolate plausible losses from such documented changes in purchasing patterns.  Yet Plaintiffs have failed to identify even a single actual or potential customer who stopped ordering anything from them /their predecessors in interest because of the decision to purchase Star Gel and connected products, whatever those may be, elsewhere.

## LEGAL ARGUMENT

### I.      Summary judgment standard

Summary judgment is appropriate when "the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Donnelly v. Ford Motor Co.,* 80 F. Supp. 2d 45, 47 (E.D.N.Y. 1999); *see also* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is "material" when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

A moving party can demonstrate the absence of a material factual dispute by pointing to the lack of evidence in support of an essential element of the plaintiff's claim.  *Celotex Corp.,* 477 U.S. at 324-326; *see also Lionel v. Target Corp.*, 44 F.Supp.3d 315, 319 (E.D.N.Y. 2014) ( "in cases where the non-movant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim" (internal citations omitted)).

If the moving party meets its burden, the burden subsequently shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To defeat

16

a properly supported motion, the non-moving party must present "significantly probative evidence" that a factual dispute exists and cannot rely on "conclusory statements, conjecture,… speculation" or on "mere allegations" to overcome its burden. *Anderson,* 477 U.S. at 248-50; *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996). "The 'mere existence of a scintilla of evidence' supporting the non-movant's case is…insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). Actual evidence upon which a jury could reasonably find for the plaintiff must exist in the record. *Lionel*, 44 F Supp. 3d at 318.

## II. Plaintiffs failed to satisfy the necessary elements of all their claims [11]

### 1. First claim (federal trademark counterfeiting in violation of 15 U.S.C. § 1114)

The case law unequivocally establishes that relief under Section 32 of the Lanham Act is only available to those who have registered their marks at the time of the infringement. *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F.Supp.2d 455, 471 (E.D.N.Y 2008) ("only the federal 'registrant' or legal assignee has standing to sue under Section 32(1) of the Lanham Act") (internal citations omitted)). The Lanham Act expressly defines a "registrant" to be the "legal representatives, predecessors, successors and assigns of such applicant or registrant." 15 U.S.C.A. § 1127. Where no registrant exists, there is no statutory standing to bring an action under Section 32(1). *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013); *see also Lopez v. BigCommerce, Inc.*, 16-CV-8970 (JPO), 2017 WL 3278932, at *3 (S.D.N.Y. Aug. 1, 2017) (quoting *Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 25 (D.D.C. 2006). Accordingly, Section 32(1) of the Lanham Act "protects only registered trademarks." *SPI Spirits,* 726 F.3d at 72.

---

[11] This Court dismissed Plaintiffs' third (trade dress infringement only), seventh, eight and eleventh claims for relief on March 30, 2020 (ECF No. 51).

Meshi's only sale of 3,600 Star Gel units to A to Z took place in November 2016, before Plaintiffs took their first step to register the Star Gel mark in May 2017. Facts ¶¶ 34-41; Khaskelis Decl. Ex. 1 ¶¶ 21-24, 50; Am. Compl. Ex. 6.  At the time of Meshi's sale, the mark was unregistered.  In declining to dispose of this claim on Meshi's motion to dismiss, this Court agreed with Meshi's application of the relevant law but indicated that the claim may survive on the basis of Plaintiffs' assertion in the Amended Complaint that Meshi's actions continued after the mark was registered.  With discovery now closed, the evidence conclusively demonstrates that Meshi neither sold nor attempted to market or sell any Star Gel to anyone after November 2016.  *Id.*  As such, this claim must now be dismissed.

## 2. Second claim (federal trademark infringement in violation of 15 U.S.C. § 1114, 1125(a) and New York State common law)

While 15 U.S.C. § 1125(a) does offer protection to unregistered trademarks, a party will only "prevail on the merits of its unregistered trademark infringement claim if it can show that it has a valid trademark entitled to protection and that the defendant's use of it is likely to cause confusion." *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 18-cv-2442 (JPC), 2022 WL 4280403, at *9 (S.D.N.Y. Sept. 15, 2022); *see also Gruner + Jahr USA Pub v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993).

Regarding the first step, a plaintiff must make a preliminary showing of its "ownership over an unregistered trademark." *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013); *ITC Ltd. v. Punchgini, Inc.,* 482 F.3d 135, 146-51 (2d Cir. 2007). To establish ownership, a plaintiff must "have made the first use of the mark to identify his goods or service and continue[] to use the mark commercially." *Dual Groupe,* 932 F. Supp. 2d at 573.  In fact, "one of the fundamental premises underlying the registration provisions in the Lanham Act is that trademark rights flow from priority and that priority is acquired through use." *ITC*, 482 F.3d at 146. An owner is considered to have abandoned a mark if he/she

"ceases to use a mark without any intent to resume use in the foreseeable future." *Id.* at 147; *see also Int'l Healthcare Exch. v. Global Healthcare Exch.*, 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007) (granting summary judgment of a 15 U.S.C. § 1125(a) claim due to plaintiff's failure to provide sufficient evidence of continuous use of the mark beyond general marketing). Significantly, the second step need not be considered if the first step is not satisfied. *Morgans Group LLC v. John Doe Co.*, No.10-cv-5225(KMW)(HBP), 2012 WL 1098276, at *4 (S.D.N.Y. Mar. 31, 2012) ("where a plaintiff cannot establish that its mark is entitled to protection, a court need not consider whether a defendant's use of a similar mark is likely to cause confusion.").

By November 2016, Plaintiffs/their predecessors in interest have taken no action to source, market, sell or attempt to sell any Star Gel for more than a year. Facts ¶¶ 20, 24-26; Khaskelis Decl. Ex. 5 ¶¶ 1, 2, 3, 4, 5,18 of the numbered document requests; Khaskelis Decl. Ex. 7; Plaintiffs' Responses to Facts ¶¶ 11. Plaintiffs admitted to this Court that "after 2015 there is no Star Gel." Facts ¶ 20; Khaskelis Decl. Ex. 8, p. 19, lines 1-2. Despite Plaintiffs' unsubstantiated contradictory statements throughout the October 18, 2022 submissions, Plaintiffs abandoned the mark and offered no evidentiary support of an intent to utilize the mark between October 2015 and November 2016. Nor have Plaintiffs provided any proof of potential or actual customer confusion in 2016 or thereafter. Facts ¶¶ 51-54; Khaskelis Decl. Ex. 5 ¶¶ 4, 8, 11, 14, 19 of the numbered document requests; Khaskelis Decl. Ex. 7. No such confusion can be possible when Plaintiffs /their predecessors in interest were no longer active in the Star Gel market during the relevant time.

With regard to New York common law, it is "well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.,* 378 F.Supp.2d 448, 456 (S.D.N.Y. 2005) (internal citation omitted).

19

The common law claim is, therefore, doomed for the same reasons as set forth above.

### 3.   Third claim (false designation of origin in violation of 15 U.S.C. § 1125(a))

To prevail on a claim for the false designation of origin under the Lanham Act, the plaintiff must demonstrate, among other things, that the false designation of origin was likely to cause consumer confusion.  *Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995). To establish the first prong, the plaintiff must show "a probability, not just a possibility, of confusion." *New York Stock Exch., LLC [NYSE] v. New York, New York LLC*, 293 F.3d 550, 554 (2d Cir. 2002).  This burden requires the plaintiff to demonstrate "a likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Id.*  (internal citation omitted).  Similarly, confusion may arise where "consumers are likely to believe that the challenged use of a trademark is somehow sponsored, endorsed, or authorized by its owner." *Id.*  In addition to demonstrating a likelihood of confusion, the plaintiff also bears the burden of showing harm caused directly by the defendant's false designation of origin.  *Lipton*, 71 F. 3d at 473.

Plaintiffs have not provided any evidence to demonstrate the likelihood of consumer confusion resulting from Meshi's sale of 3,600 units of Star Gel to A to Z in November 2016, particularly in circumstances where A to Z's label clearly bore its own name and address and made no reference to Plaintiffs/their predecessors in interest.  Am. Compl. Ex. 5; Khaskelis Decl. Ex. 7.  The record in this matter is similarly devoid of any proof of the alleged harm that Plaintiffs suffered as a direct result of Meshi's actions.  Facts ¶¶ 51-55; Khaskelis Decl. Ex. 5 ¶¶ 4, 8, 11, 14, 19 of the numbered document requests; Khaskelis Decl. Ex. 7.

### 4.   Fourth claim (federal trademark dilution in violation of 15 U.S.C. § 1125(c) and N.Y. Gen. Bus. Law § 360-l)

The key inquiry in evaluating a dilution claim under 15 U.S.C. § 1125(c) is "whether an association, arising from the similarity between the subject marks, impairs the

distinctiveness of the famous mark." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F.Supp.3d 425, 434 (S.D.N.Y. 2016). 15 U.S.C. § 1125(c) makes clear that that this section only applies to famous marks and specifies in (c)(2)(A) that "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." The Second Circuit has determined that to be considered "famous," a mark must carry "a substantial degree of fame" as it "seems most unlikely that Congress intended to confer [this classification] on marks that have enjoyed only brief fame in a small part of the country, or among a small segment of the population." *TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88, 99 (2d Cir. 2001). Thus, the "degree of fame required for protection under [15 U.S.C. § 1125(c)] must exist in the general marketplace, not in a niche market" and where fame is "limited to a particular channel of trade, segment of industry or service, or geographic region," this will not be sufficient. *Christopher D. Smithers Found., Inc. v. St. Luke's–Roosevelt Hosp. Ctr.*, No. 00-cv-5502 (WHP), 2003 WL 115234, at *5 (S.D.N.Y. Jan. 13, 2003). Because of this rigorous standard, few trademarks qualify as famous. *Small Bus. Bodyguard, Inc. v. House of Moxie, Inc.*, No. 14-cv-7170 CM, 2014 WL 5585339, at *7 (S.D.N.Y. Oct. 30, 2014).

As stated above, Plaintiffs/their predecessors in interest supplied evidence showing total sales of 2,131 units of Star Gel in and outside of New York between January 2013 and October 19, 2015. A review of the invoices produced reveals that the New York sales were limited to niche markets serving primarily Jewish and/or Israeli clientele. Facts ¶¶ 16, 18; Khaskelis Decl. Ex. 7. The Plaintiffs have not proved – nor can they – that the Star Gel mark meets the stringent fame requirement to prevail on this claim.

A successful dilution claim under N.Y. Gen. Bus. Law § 360-l only grants injunctive relief. *Patsy's Italian Rest., Inc. v. Banas*, 575 F.Supp.2d 427, 456 (E.D.N.Y. 2008) *aff'd*, 658 F.3d 254 (2d Cir. 2011). As Meshi has taken no steps to market or sell Star Gel to anyone

since 2016, there is nothing to enjoin, and this claim is entirely moot.  Facts ¶¶ 34, 36-38, 41;

Khaskelis Decl. Ex. 1 ¶¶ 21-24, 50.

### 5.  Fifth claim (federal unfair competition and false advertising under 15 U.S.C. § 1125 (a) and New York common law)

To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the

problematic messaging is (1) either literally or impliedly false, (2) material, (3) placed in

interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church &*

*Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016).

Moreover, as this Court established in its March 30, 2020 decision (ECF No. 51, p. 16),

an actionable claim under 15 U.S.C § 1125(a) requires a plaintiff to satisfy the two-part, zone

of interest and proximate cause, test established in *Lexmark Int'l, Inc. v. Static Control*

*Components, Inc.*, 572 U.S. 118, 130-132 (2014).  First, the plaintiff must establish being

"within the zone of interest" by alleging an injury to a commercial interest in reputation or

sales.  *Id.* at 131-132. Second, the plaintiff must demonstrate an actual "economic or

reputational injury flowing directly from the deception wrought by the defendant's

advertising."  *Id.* at 133.  Courts consider such an injury as occurring when the defendant's

deception causes consumers to "withhold trade from the plaintiff."  *Id.*  Where a plaintiff is

not a market participant, this "fatally undermines any claim of injury" as "proximately caused

by [the defendant's] conduct."  *PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*,

No. 19-cv-7577 (KMK), 2022 WL 4368036, at *8 (S.D.N.Y. Sept. 20, 2022).

As previously discussed, this claim must be dismissed because Plaintiffs failed to

identify the portions of A to Z's label, which listed only its own name and contact information,

that were actually or impliedly false.  Am. Compl. Ex. 5.  Furthermore, Plaintiffs have

demonstrated no injury to either their sales or reputation caused by Meshi's one-time sale,

despite repeated requests for such evidence.  Facts ¶¶ 51-55; Khaskelis Decl. Ex. 5 ¶¶ 4, 8,

11, 14, 19 of the numbered document requests; Khaskelis Decl. Ex. 7.

The New York common law claim for unfair competition is even more demanding than a claim under the Lanham Act. "To establish a claim for common law unfair competition [under New York law], 'the plaintiff must state a Lanham Act claim coupled with a showing of bad faith or intent.'" *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F Supp 3d 137, 157 (E.D.N.Y. 2016). Not only did Plaintiffs fail to satisfy the elements required for a Lanham Act claim, they have similarly failed to demonstrate any bad faith on the part of Meshi, whose only sale to A to Z took place long after Plaintiffs' predecessors in interest stopped sourcing Star Gel from Meshi or selling/attempting to sell it. Facts ¶¶ 20, 24-26; Khaskelis Decl. Ex. 5 ¶¶ 1, 2, 3, 4, 5, 18 of the numbered document requests; Khaskelis Decl. Ex. 7; Plaintiffs' Responses to Facts ¶¶ 11; Khaskelis Decl. Ex. 8, p. 19, lines 1-2.

### 6.   Sixth claim (contributory trademark infringement)

Meshi can only be liable for contributory trademark infringement if Plaintiffs can show that Meshi "intentionally induce[d] another to infringe a trademark, or if it continue[d] to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982); *see also Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 104 (2d Cir. 2010). In either case, "[k]nowledge of the direct infringement is 'an essential element of contributory infringement.'" *Eliya, Inc. v. Steven Madden, Ltd.*, No. 15-cv-1272(DRH)(SIL), 2016 WL 1092626, at *3 (E.D.N.Y. Mar. 21, 2016) (internal citations omitted).

Plaintiffs failed to establish either ground. Firstly, it is denied that there was a viable trademark to infringe upon in November 2016. Secondly, Meshi never induced A to Z to sell any Star Gel – indeed, it is undisputed that it was Mr. Noach of A to Z that located Meshi and placed the order. Facts ¶¶ 27-30, 35; Khaskelis Decl. Ex. 1 ¶¶ 33-35, 43; Additional Facts ¶ 20; October 17, 2022 Rosenshine Decl. ¶ 13. Lastly, the record belies any

argument that Meshi continued to supply any Star Gel to anyone in the United States after the one-time sale in the fall of 2016.  Facts ¶¶ 34, 36-38, 41; Khaskelis Decl. Ex. 1 ¶¶ 21-24, 50.

### 7.  <u>Ninth claim (tortious conspiracy)</u>

It is well-established that New York does not recognize an independent tort of conspiracy.  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).  To succeed on a claim of civil conspiracy, therefore, the plaintiff must first demonstrate the existence of the primary tort and then prove the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in furtherance of a plan or purpose; and (4) resulting damage or injury.  *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F.Supp.2d 514, 532 (S.D.N.Y. 2001).

As demonstrated above, Plaintiffs have not and cannot make out a claim for any primary tort.  Their claim for conspiracy must fail on this basis alone.  *Kirch*, 449 F.3d at 401.  Plaintiffs' failure to demonstrate any harm suffered as a result of Meshi's one-time sale in November 2016 further invalidates this claim.  Facts ¶¶ 51-55; Khaskelis Decl. Ex. 5 ¶¶ 4, 8, 11, 14, 19 of the numbered document requests; Khaskelis Decl. Ex. 7.

### 8.  <u>Tenth claim (breach of contract)</u>

To succeed on a breach of contract claim under New York law, a plaintiff must establish (1) the existence of a contract; (2) due performance by plaintiff; (3) breach of the contract by defendant; and (4) damage as a result of the breach.  *Campo v. 1st Nationwide Bank*, 857 F. Supp. 264, 270 (E.D.N.Y. 1994).  It is essential that a plaintiff "prove that a defendant's breach directly and proximately caused his or her damages." *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004).  Where damages are remote or the "result of other intervening causes" then the plaintiff failed to meet its burden.  *Id*.  Moreover, plaintiff must establish that the alleged breach did or will cause actual economic damages.  *See Apogee*

24

*Handcraft, Inc. v. Verragio, Ltd.*, 155 A.D.3d 494, 495 (1ˢᵗ Dept. 2017) (dismissing a breach of contract claim with only speculative damages).

Plaintiffs cannot establish that any valid contractual relationship between the Plaintiffs/their predecessors in interest and Meshi existed in the fall of 2016, when Meshi made a one-time sale to A to Z. There had been no commercial dealings between Meshi and Plaintiffs' predecessors in interest since 2012. Facts ¶ 11; Khaskelis Decl. Ex. 1 ¶ 31. To the extent that Plaintiffs rely upon paragraph 7 of their 2004 contract with Meshi–which states that the "Buyer has exclusivity on this [Star Gel] name without time limit," (Am. Compl. Exs. 2 & 3)–to suggest that Meshi's contractual obligations to the Plaintiffs/their predecessors in interest continued in 2016 and beyond, that argument finds no support in law. Paragraph 7 of the 2004 contract is merely a statement and not a conferral of any obligation on Meshi. It is a long-held principle of New York law that agreements in perpetuity are disfavored and are terminable at will absent an express and unequivocal intent by the parties to be perpetually bound. *See, e.g.*, *Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc.*, 178 F. Supp. 655, 661 (S.D.N.Y. 1959), *aff'd* 280 F.2d 197 (2d Cir. 1960). There is no evidence that Meshi intended to be so perpetually bound.

In the event that Plaintiffs somehow overcome this hurdle, Plaintiffs cannot establish elements 2 and 4 of the above elements. Plaintiffs and/or their predecessors in interest breached their own contractual obligations by failing to pay Meshi the outstanding $1,967.64 due for the Star Gel purchased in or before 2012. Facts ¶ 12; Khaskelis Decl. Ex. 4. Furthermore, Plaintiffs seek to rely on generalized claims of harm but make no showing of any specified damages, such as actual lost sales, as required. Plaintiffs failed to demonstrate any concrete damages suffered due to Meshi's one-time sale in 2016. Facts ¶¶ 51-55; Khaskelis Decl. Ex. 5 ¶¶ 4, 8, 11, 14, 19 of the numbered document requests; Khaskelis Decl. Ex. 7.

25

**CONCLUSION**

For the foregoing reasons, Meshi respectfully requests that the Court grant its motion to for summary judgment in its entirety and award Meshi such other or further relief as this Court may deem just and proper, including costs and attorneys' fees.

Dated:   December 5, 2022
         New York, New York                      Respectfully submitted,

                                                 By:  */s/ Allison Khaskelis*

                                                 Yisrael Hiller
                                                 Allison Khaskelis
                                                 yisrael.hiller@asserson.co.uk
                                                 allison.khaskelis@asserson.co.uk
                                                 Asserson Hiller PC
                                                 11 Broadway, Suite 615
                                                 New York, New York 10004
                                                 Telephone: (212) 939-7585
                                                 Facsimile:  (212) 939-6406

                                                 *Attorneys for Defendant A. Meshi*
                                                 *Cosmetics Industries Ltd.*