UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

OREN ROSENSHINE
AMIR ROSENSHINE

      Plaintiffs,

vs.

A. MESHI COSMETICS INDUSTRIES LTD., A TO Z IMPORTS, INC. and EYAL NOACH

      Defendants

18-cv-03572
(LDH-LB)

**LOCAL CIVIL RULE 56.1 STATEMENT OF MATERIAL FACTS NOT GENUINELY IN DISPUTE SUBMITTED BY DEFENDANT
A.MESHI COSMETICS INDUSTRIES LTD.**

Pursuant to Local Civil Rule 56.1 and this Court's Individual Practice III.A.6(b), Defendant A. Meshi Cosmetics Industries Ltd.[1] ("Meshi") respectfully submits the following statement of material facts as to which there is no genuine dispute in support of its letter requesting a pre-motion conference to submit a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure:

**I.    Meshi's background**

1.    Meshi is an Israeli company (registration number 511947020) with its headquarters and principal place of business in Bat Yam, Israel. *See* the June 3, 2019 Declaration of Yermi Mizrahi submitted in support of Meshi's Motion to Dismiss, (ECF No. 47-2) ("Mizrahi Decl."), ¶¶ 7-8, attached as Exhibit ("Ex.") 1 to the August 30, 2022 Declaration of

---

[1] We note that the undersigned have alternatively referred to A. Meshi Cosmetics Industries Ltd. as A-Meshi Cosmetics Industries Ltd. in filings and have submitted documents similarly referring to A-Meshi rather than to A. Meshi. For the avoidance of all doubt, it is the same entity. The slight discrepancy arises from the imprecise translation of the company's name from Hebrew.

1

        Allison Khaskelis ("Khaskelis Decl.").

2.    Its primary business is the manufacturing of skin and hair care products under the "Mon Platin" label. *Id.* at ¶ 9.

3.    Meshi is solely a manufacturer. Meshi maintains no offices, employees, or any operations whatsoever in the United States. All of its products are sold on an "ex-work" basis, which means that Meshi manufactures all products in its factory in Israel and notifies purchasers when the order is complete. The purchasers arrange to pick up their orders from the Israeli factory and have complete control over onward shipping and resale of the products from that point forward. *Id.* at ¶¶ 10, 14, 19-20.

4.    Meshi has relationships with various independent distributors around the world, who manage all aspects of onward sales of Meshi's products. Meshi works with numerous distributors for its various products, each of whom is wholly independent from Meshi. *Id.* at ¶¶ 11, 20.

5.    Meshi was founded by the Mizrahi family in 1994 and remains a family business to this day, with Yermi Mizrahi ("Mr. Mizrahi") having taken over as president and CEO in 2014 upon the death of his brother Erez. *Id.* at ¶ 6; Khaskelis Decl. Ex. 2.

## II.    Plaintiffs' background

6.    Global Manufacturing Import Export Inc. ("GMIE") was a company specializing in importing foreign, including Israeli, cosmetics products into the United States for sales to distributors and retail consumers. Amended Complaint ("Am. Compl.") (ECF No. 32) ¶ 6. It has been inactive since January 2015. Khaskelis Decl. Ex. 3. It has been previously run by the Plaintiffs' mother, Edna Rosenshine ("Edna"). *See* Exs. 2, 3 and 4 to Am. Compl.

7. Pursuant to an assignment agreement dated July 31, 2014, Edna, on behalf of GMIE, transferred the rights to the Star Gel mark to International Grooming, Inc. ("International Grooming"). Am. Compl. Ex. 4. The Plaintiffs, along with their sister Dorin Rosenshine, acted as the co-CEOs of International Grooming. *Id.* On January 31, 2018, International Grooming assigned the rights to the Star Gel mark to the Plaintiffs' father, Elazar Rosenshine ("Elazar"). Am. Compl. Ex. 7. On January 1, 2019, Elazar assigned the rights to the Star Gel mark to the Plaintiffs. Am. Compl. Ex. 8.

### III. Relationship between Meshi and GMIE/Plaintiffs

8. The present dispute arises from the 2004 agreement between GMIE and Meshi. Am. Compl. ¶ 4.

9. Pursuant to the terms of that agreement, Meshi agreed to manufacture 2,000 units of a jojoba hair gel for GMIE at the price of $2.45 per unit, for a total payment of $4,900. Am. Compl. Exs. 2 & 3, ¶ 1. GMIE sent a label to Meshi to print and affix on the manufactured units. *Id.* at ¶¶ 3-4, 7. GMIE called the product "Star Gel" and designed a logo for it. *Id.* Meshi agreed to make the product available on an ex-work basis by October 31, 2004. *Id.* at ¶ 5; Khaskelis Decl. Ex. 1 ¶ 26.

10. While the contract was not renewed in writing after 2004, the relationship between Meshi and GMIE continued until 2012 on the basis of verbal orders. Khaskelis Decl. Ex. 1 ¶ 30. Between 2004 and 2012, Meshi supplied approximately $10,000 worth of Star Gel to GMIE on an annual basis. *Id.*

11. Neither the Plaintiffs nor its predecessors in interest ordered any Star Gel from Meshi after 2012. *Id.* at ¶ 31.

12. The Plaintiffs and/or their predecessors in interest failed to remit a final payment owed

3

to Meshi in the amount of US $1,967.64 for their 2012 Star Gel orders. Khaskelis Decl. Ex. 4.

### IV. Plaintiffs neither sold nor attempted to sell any Star Gel after October 2015

13. On March 24, 2022, Meshi served the Plaintiffs with formal requests for the production of documents ("Document Requests") (ECF No. 82-1). Khaskelis Decl. Ex. 5. While the requests speak for themselves, they sought to establish the record of all sales of Star Gel that the Plaintiffs or their predecessors in interest undertook or attempted to undertake between 2012 and the date of the requests, as well as the losses that the Plaintiffs suffered as a result of Meshi's alleged infractions. *Id.*

14. Meshi's attorneys repeatedly chased the Plaintiffs for responses to their Document Requests after the deadline for the same has passed. *See, e.g.*, Khaskelis Decl. Ex. 6 (ECF No. 82-2), pp. 3, 5, 10.

15. On May 31, 2022, the Plaintiffs finally produced a set of invoices (without Bates numbers) demonstrating sales of Star Gel to grocery stores and other distributors from January 2013 until October 19, 2015. Khaskelis Decl. Ex. 7. The Plaintiffs provided no paragraph by paragraph responses to the Document Requests. The Plaintiffs' covering email producing the above-referenced invoices stated that "[i]n response to your document requests, we do not have any documents to produce at this time except for the attached Star Gel® invoices that we were able to locate so far." *Id.*

16. While many of the invoices demonstrate sales in New York, a number of the invoices demonstrate sales outside of this jurisdiction, including in Florida, California, Pennsylvania, Maryland and New Jersey. *Id.* All sales were to grocery stores and distributors serving a primarily Jewish and/or Israeli clientele. *Id.*

4

17. GMIE and/or its successors in interest sold its remaining inventory of the Star Gel that it purchased from Meshi in or before 2012 by October 19, 2015. *Id.*

18. The Plaintiffs and/or their predecessors in interest sold a total of 2,131 units of Star Gel in and outside of New York between January 1, 2013 and October 19, 2015. *Id.* Pursuant to these invoices, the maximum sale price that the Plaintiffs and/or their predecessors in interest received for a single unit of Star Gel was $10. *Id.* Between January 1, 2013 and October 19, 2015, Plaintiffs earned a total revenue of $19,812 for distributing Star Gel. *Id.*

19. Assuming that the Plaintiffs and/or their predecessors in interest purchased Star Gel from Meshi for $2.45 per unit (*see* Exhibits 2 and 3 to Am. Compl.), it follows that, as a best-case scenario, the Plaintiffs and/or their predecessors in interest earned a profit of $14,591.05 in the nearly 3 years of selling leftover Star Gel between January 2013 and October 2015. *Id.* This figure does not deduct the amounts of Star Gel sold outside of New York, does not factor in the costs of importing the Star Gel shipments from Israel to the United States and does not take into account any discounts offered to any of the customers, though some invoices indicate certain discounts. *Id.*

20. The Plaintiffs had no Star Gel to sell after 2015. Khaskelis Decl. Ex. 8, p. 19, lines 1-2 ("after 2015 there is no Star Gel. So you can say from 2013 to today.")

21. The Plaintiffs have no additional documents responsive to the Document Requests. *See* the following exchanges:

> THE COURT: So you don't have to answer the instructions which go on for ten pages, but they tell you what you're supposed to give them. And then they start asking you the actual questions. And the documents to be produced are 1 through 20. Do you see those requests?
> MR. O. ROSENSHINE: Yes.
> THE COURT: Have you produced all of those documents?

5

>MR. O. ROSENSHINE: Yes. We went through everything. We didn't skip anything. We read through the entire…

*Id.* at p.18, lines 5-15.

>THE COURT: Mr. Rosenshine, have you turned over any email regarding your interest in Star Gel or in [sic] communications between you and your predecessors or any third parties? Have you turned over any email, sir?
>MR. A. ROSENSHINE: We recited we do not have any. So as we said, we do not have any other documents whatever they requested.

*Id.* at p. 26, lines 8-14.

>THE COURT: You've stated on the record that you've given them everything you have. You have nothing else. Which means that you will not be able to produce something and surprise them. Do you understand that, Mr. Oren Rosenshine?
>MR. O. ROSENSHINE: Yes. I just want to clarify --
>THE COURT: Do you understand that, Mr. --excuse me. Do you understand that, Mr. Amir Rosenshine?
>MR. A. ROSENSHINE: Yes.

*Id.* at p. 31, lines 9-18.

22. The Plaintiffs took no steps to obtain any additional supplies of Star Gel hair gel after 2012. *See, e.g.,* Khaskelis Decl. Ex. 5 ¶¶ 3, 5, 6, 7, 18[2]; Khaskelis Decl. Ex. 7.

23. The Plaintiffs did not pay off their outstanding arrears to Meshi in the amount of $1,967.64 for Star Gel purchased in 2012.  Khaskelis Decl. Ex. 5 ¶ 16; Khaskelis Decl. Ex. 7.

24. The Plaintiffs did not market, attempt to sell or sell Star Gel from October 2015 until March 2022.  Khaskelis Decl. Ex. 5 ¶¶ 1, 2, 3, 4, 5, 18; Khaskelis Decl. Ex. 7.

25. The Plaintiffs did not utilize the Star Gel mark in any manner between October 2015 and May 2017.  Khaskelis Decl. Ex. 5 ¶ 18; Khaskelis Decl. Ex. 7.

26. Neither the Plaintiffs nor their predecessors in interest sourced or attempted to market or

---

[2] All references are to the specific document requests, which begin on p. 10.

6

sell any Star Gel since October 19, 2015.  *See* ¶¶ 17, 20-25, above.

**V.     Meshi made a one-time sale of Star Gel to A to Z in the fall of 2016, after the Plaintiffs abandoned Star Gel sales and before they applied to register the Star Gel mark**

27.   Meshi did not sell any Star Gel following 2012 and until it was approached by Eyal Noach ("Mr. Noach") of A to Z Imports Inc. ("A to Z") in the fall of 2016.  Khaskelis Decl. Ex. 1 ¶¶ 33, 35.

28.   Mr. Noach was looking for the manufacturer of Star Gel and seeking to place an order. *Id.* at ¶ 35.

29.   It was Mr. Noach who initiated the contact with Meshi's Mr. Mizrahi.  *Id.*

30.   Before that call, Meshi had no distributorship arrangement or any relationship whatsoever with A to Z.  *Id.* at ¶ 34.  Meshi has had no relationship with A to Z since that one-time sale.  *Id.*

31.   At that point, Meshi has had no commercial dealings with GMIE or its successors in interest for approximately four years.  *Id.* at ¶ 31.

32.   At that point, approximately a year passed since GMIE or its successors in interest took any steps to source, advertise or sell Star Gel.  Khaskelis Decl. Ex. 7.

33.   A to Z was a client of GMIE and/or its successors in interest.  A to Z purchased 240 units of Star Gel of the 2,131 total units sold by the Plaintiffs' predecessors in interest between January 2013 and October 2015, which amounted to 11% of its total sales.  *Id.* (calculated from invoices supplied).

34.   Meshi made a one-time sale of Star Gel to A to Z in November 2016 in the amount of 3,600 units, for a price of $3/unit.  The total value of that sale was $10,800.  Khaskelis

7

Decl. Ex. 1 ¶ 36; Khaskelis Decl. Ex. 9.

35. A to Z supplied the artwork for the label for the product, which listed A to Z's address. Khaskelis Decl. Ex. 1 ¶ 43 & Exhibit 5 to Am. Compl. Meshi was not involved in the creation or choice of the label. Khaskelis Decl. Ex. 1 ¶ 43.

36. Meshi has only ever sold any Star Gel to GMIE and A to Z. *Id.* at ¶ 21.

37. Meshi has not sold any Star Gel to anyone in the United States following the one-time sale to A to Z in November 2016. *Id.* at ¶¶ 21, 22, 50.

38. Meshi has taken no steps to advertise, promote or otherwise attempt to sell any Star Gel anywhere in the United States following the one-time sale to A to Z in November 2016. *Id.* at ¶¶ 23-24.

39. On May 9, 2017, the Plaintiffs' predecessors in interests applied to the United States Patent and Trademark Office to register the Star Gel mark for the first time. The United States Patent and Trademark Office registered the Star Gel trademark on December 19, 2017. Am. Compl. Ex. 6.

40. The Plaintiffs allege that they sent a cease and desist letter to Meshi on June 20, 2017. Am. Compl. ¶ 12. The Plaintiffs and/or their predecessors in interest sent no other correspondence to Meshi with regard to the A to Z sale prior to that date. Khaskelis Decl. Ex. 5 ¶ 15; Khaskelis Decl. Ex. 7.

41. Meshi has not engaged in any conduct outlined in the Amended Complaint since November 2016. Khaskelis Decl. Ex. 5 ¶ 17; Khaskelis Decl. Ex. 7.

42. Since applying to register the Star Gel mark with the United States Patent and Trademark Office, the Plaintiffs have neither sourced, marketed, attempted to sell or sold any Star

Gel. Khaskelis Decl. Ex. 5 ¶¶ 1, 2, 3, 4, 5, 6, 7, 18; Khaskelis Decl. Ex. 7.

VI. **Plaintiffs failed to demonstrate that they suffered any harm as a result of Meshi's actions**

43. On December 14, 2020, the Plaintiffs served on Meshi's attorneys what they termed to be their disclosures. Khaskelis Decl. Ex. 10 (ECF No. 82-3), p. 2.

44. In these disclosures, the Plaintiffs provided the Declarations of Oren and Amir Rosenshine. *Id.* at pp. 6-15. Both declarations are dated December 10, 2020, are materially identical to one another and contain statements confirming that their contents are true and correct to the best of each Plaintiff's knowledge, information and belief under the penalty of perjury. *Id.* at pp.10, 15.

45. Each of these declarations asserts the Plaintiffs' entitlement for lost profits in the amount of $8,567,848, which, once trebled, entitle the Plaintiffs to the recovery of $25,703,544 in damages. *Id.* at pp. 9, 14.

46. Alongside these declarations, on December 14, 2020 the Plaintiffs supplied a one-page table, entitled "Computation of Lost Profits and Damages to Goodwill and Reputation" purporting to calculate these figures from 2015 until 2020 and beyond through a variety of compounding assumptions. *Id.* at p. 16. The Plaintiffs provided no basis for the calculations provided or the reasoning for their compounding assumptions.

47. The damages figures that the Plaintiffs provided in the above-referenced are not limited to losses from the alleged Star Gel counterfeiting:

> MR. A. ROSENSHINE: We did not show from 2015. We showed them from 2013 to 2015 just to start this. But these gross profits represent the entire gross profits of the company not just from the Star Gel because we are claiming that the Star Gel allows our company to sell to
> THE COURT: But Mr. Rosenshine, this case is just about Star Gel, correct?
> MR. A. ROSENSHINE: Yes. The damages that Star Gel counterfeiting caused us.

9

> So it includes also complementary --
>
> THE COURT: So you're saying that this chart, even though the chart would not prove anything, is not just related to Star Gel?
>
> MR. A. ROSENSHINE: It is because what we are claiming is that all the complementary products that we sell to our customers by Star Gel has been also lost to A. Meshi because we couldn't --
>
> THE COURT: Again sir, I only deal with the case that was filed in court. I don't deal with other concerns or issues that you have that are not part of this case.
>
> MR. A. ROSENSHINE: Yes. So our calculation of damages in the complaint also explains that we are not only claiming damages for losses of Star Gel but also complementary products that --
>
> THE COURT: Again, Mr. Rosenshine, your case here is about Star Gel.

Khaskelis Decl. Ex. 8, p. 15, line 20-p.16, line 22.

48. As demonstrated above, the Plaintiffs have neither sourced, sold, or attempted to sell any Star Gel since October 2015. They were not marketing or attempting to sell any Star Gel to anyone in the fall of 2016, when Meshi made a one-time sale of 3,600 units of Star Gel to A to Z. Khaskelis Decl. Ex. 5 ¶¶ 1, 2, 3, 4, 5, 6, 7, 18; Khaskelis Decl. Ex. 7.

49. As such, Meshi's one-time sale could not have caused any harm to the Plaintiffs' Star Gel sales, which were already non-existent. *Id.*

50. Consequently, the Plaintiffs' damages claims arise out of the harm that Meshi's one-time sale of Star Gel to A to Z allegedly caused to the sales of other, unspecified products in the Plaintiffs' sales catalogue. *Id.*

51. Besides the above-referenced one-page table, the Plaintiffs have produced no evidence of any harm they suffered as a result of Meshi's one-time sale of 3,600 units of Star Gel to A to Z in November 2016. Khaskelis Decl. Ex. 5 ¶¶ 4, 8, 11, 14, 19; Khaskelis Decl. Ex. 7.

52. The Plaintiffs failed to establish any connection between Meshi's one-time sale of 3,600 units of Star Gel to A to Z in November 2016 and losses to any other product sales,

10

reputational damage, harm to goodwill, consumer confusion or general harm to the Plaintiffs' profits. *Id.*

53. The Plaintiffs failed to show any reputational damage, consumer confusion, harm to goodwill or loss of Star Gel sales from October 2015 until March 2022. *Id.*

54. The Plaintiffs failed to show any harm to the sales of any other of their products. *Id.*

55. The Plaintiffs failed to show that Star Gel was a famous or widely-recognized product. *Id.*

56. The Plaintiffs produced no expert testimony in the matter. Khaskelis Decl. Ex. 7.

**VII. Current procedural posture of the case**

57. Pursuant to Judge Bloom's June 9, 2022 Order (ECF No. 89), all discovery in the matter is now closed.

58. On June 21, 2022, Meshi made an Offer of Judgment to the Plaintiffs in the amount of $5,000 pursuant to Rule 68 of the Federal Rules of Civil Procedure. Khaskelis Decl. Ex. 11. Meshi received no response to this offer within the timeframe specified therein. As such, this offer is deemed rejected.

Dated:  August 30, 2022	Respectfully submitted,
       New York, New York

<u>*/s/ Allison Khaskelis*</u>
Yisrael Hiller, Esq.
Allison Khaskelis, Esq.
ASSERSON HILLER P.C.
11 Broadway, Suite 615
New York, New York 10004
Telephone: (212) 939-7585
Facsimile: (212) 939-6406


*Attorneys for Defendant*
*A. Meshi Cosmetics Industries Ltd.*

12