# EXHIBIT 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
ROSENSHINE,                   : 18-cv-03572(LDH)(LB)
                             :
            Plaintiff,        :
                             :
    - versus -               : U.S. Courthouse
                             : Brooklyn, New York
A. MESHI COSMETIC            :
INDUSTRIES LTD., ET AL.,     :
                             : June 8, 2022
            Defendants       : 10 a.m.
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE
STATUS CONFERENCE
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

**A  P  P  E  A  R  A  N  C  E  S:**
**(VIA VIDEO/AUDIO)**


<u>**For the Plaintiff**</u>:          **Oren Rosenshine, Pro Se**
                              **Amir Rosenshine, Pro Se**
                              20 Hawthorne Lane
                              Great Neck, NY 11023


<u>**For the Defendant**</u>:         **Allison S. Khaskelis, Esq.**
                              Asserson Hiller PC
                              11 Broadway, Suite 615
                              New York, NY 10004


<u>**Transcription Service**</u>:     **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1        THE CLERK:  Civil Cause for Telephone Status

2   Conference, docket number 18-cv (inaudible), *Rosenshine*

3   *v. A. Meshi Cosmetics Industries*.

4        Will the parties please state your name for the

5   record?

6        MR. O. Rosenshine:  Oren Rosenshine.

7        MR. A. ROSENSHINE:  Amir Rosenshine.

8        MS. KHASKELIS:  Allison Khaskelis for A. Meshi

9   Cosmetics Industries Limited.

10        THE CLERK:  The Honorable Lois Bloom presiding.

11        THE COURT:  Good morning, Mr. Rosenshine, Mr.

12   Rosenshine, and Ms. Khaskelis.

13        Ms. Khaskelis, it was a little bit difficult to

14   understand you when you noted your appearance, so if

15   you're using a handset or if you were using a

16   speakerphone, maybe you need to use a handset.

17        This is a telephone conference in plaintiff's

18   trademark action.  I last spoke to the parties in this

19   matter on November 9, 2021 at which time I ordered that

20   the parties should complete all discovery by May 10th and

21   write to the Court before May 10th if expert discovery

22   was required.

23        On December 10th, the parties requested that

24   the case be referred to the court annexed mediation

25   program.  That was ECF 79.  I granted the parties'

3

Proceedings

1  request, referred the matter to mediation, ordered the

2  parties to complete the mediation by February 4th, and

3  file a status letter regarding the outcome of the

4  mediation by February 11, 2022.

5        The parties never provided the status letter

6  regarding their mediation.  And on May 10, 2022,

7  defendants moved to compel plaintiffs to produce

8  documents and other discovery.  That's ECF 82.  I ordered

9  plaintiffs to respond by May 27th and I scheduled today's

10 conference.  That's at ECF 83.

11        Then the plaintiff moved to compel defendants

12 to produce discovery and for an extension of the

13 discovery deadline.  Those documents are at ECF 84 and

14 85.  I ordered defendants to respond by May 27th.  And I

15 stated that I would address all of this at today's

16 conference.  Defendants filed the response on May 26th.

17 That's at ECF 87.  And plaintiffs replied on May 25,

18 2022.  That's ECF number 88.

19        Let me note that this case has been pending for

20 four years.  And although there were motions at the

21 beginning of the case that did slow the case at the

22 beginning, again I believe that these are orders of the

23 Court that have not been abided by by both sides.  I

24 looked over the motions to compel.  I'll be glad to hear

25 from the parties.  But basically, defendants claim that

4

Proceedings

1  plaintiff has failed to respond to the request for

2  document production and plaintiffs claim that defendants

3  have not provided requested discovery.  Defendants state

4  that they fully responded to plaintiff's request and they

5  have no documents or information.  And so that's where we

6  are.

7           Let me just say that in between the initial

8  filing of the case, first it was filed by relatives of

9  Oren and Amir Rosenshine.  Then there was a motion to

10  amend for a second time.  That was denied by report and

11  recommendation on January 25, 2021.  That's at ECF 69.

12  And that report and recommendation was adopted by Judge

13  DeArcy Hall on September 30, 2021.

14           I then set the discovery deadline that the

15  parties are now saying nobody lived up to back in

16  November of 2021 and although the parties, and I think it

17  was plaintiff who requested the mediation, that's at ECF

18  80, on December 10, 2021, that doesn't excuse the parties

19  from conducting discovery.

20           Let me also say that originally the deadline

21  that was set to complete discovery was December 18, 2020.

22  That was set back in July of 2020.  That's at ECF 60.  So

23  for plaintiffs to say that they've never asked for an

24  extension, that's not true.  The original deadline to

25  complete discovery was December of 2020.

Proceedings

5

1       Now defendant requested a stay and that

2   deadline was stayed.  And then there were the motions to

3   amend which took some time for the Court to work through.

4   But then when that was concluded and the new deadlines

5   were set, it looks like nothing was done.  And I again

6   looked over what has been produced.

7       Mr. Rosenshine and Mr. Rosenshine, part of the

8   problem is that when Ms. Khaskelis is writing to you and

9   asking for a firm commitment for the date by which you

10  intend to respond to discovery, I've gotten all the

11  emails back and forth, you're required to work with the

12  other side.  This is your case and the Court is not going

13  to give you unlimited chances to do discovery.  And it is

14  your burden of proof in this case.  So I don't really

15  understand where you think this is going.  I'm not going

16  to indefinitely keep changing these deadlines with having

17  no effect on the case.  It's a four-year-old case and

18  there is no constitutional rights to conduct discovery.

19  This is an order set by the Court.  You live by the

20  Court's rules or else we just go forward and you have

21  what you have.  And I don't know that anything that you

22  have will be able to prove your claim.

23      So let me first hear from the Rosenshines.

24  Please state your name before you speak.  Thank you.

25      MR. A. ROSENSHINE:  Yes, your Honor.  This is

6

Proceedings

1   Amir Rosenshine.

2          So basically not everything that we produced

3   has been submitted to the Court by the defendants because

4   we did submit additional material on May 27th.  And this

5   is like 106 pages worth of material.  So whatever they

6   said in their last writing to the Court we haven't

7   produced, so there has been additional materials since

8   this last time they wrote to the Court.

9          THE COURT:  Thank you.

10          MR. A. ROSENSHINE:  Yes.  Other than that, yes.

11          THE COURT:  Let me ask Ms. Khaskelis, they say

12   they produced additional materials May 27th.

13          MS. KHASKELIS:  Your Honor, that's not entirely

14   correct.  It is true that they produced additional

15   materials.  It is not true that that happened on the 27th

16   of May.  In fact, the email of the 31st of May I received

17   the following.  "Allison, it appears the email from 5/27

18   failed to go through --"

19          THE COURT:  I'm sorry, Ms. Khaskelis, first of

20   all, you're talking very fast.  Please slow down.  And

21   second of all, your transmission, your voice is not

22   coming through entirely clearly.  And if we needed to get

23   a transcript, I want to make sure that I can understand

24   what you're saying.  Okay?

25          So you said that it's not entirely true.  Start

7

Proceedings

1   again with what else you wanted to tell me.

2           MS. KHASKELIS:  Sure.  My apologies if I'm not

3   coming through, your Honor.  Am I coming through more

4   clearly now?  I have changed my headset so I'm hopeful

5   that that alleviates the problem.

6           THE COURT:  It's a little bit better.

7           MS. KHASKELIS:  (Indiscernible) --

8           THE COURT:  It's a little bit better.  I just

9   want to make sure that if we needed to transcribe the

10  record that somebody would be able to understand what you

11  are saying.  So I can hear you a little bit better now.

12  Thank you.

13          MS. KHASKELIS:  Understood.  In fact, the

14  discovery that Mr. Rosenshine refers to came through to

15  us on the 31st of May, not the 27th.  So this was after

16  all of the motions were fully briefed.

17          THE COURT:  Okay.  But he said that he gave you

18  what you requested.  I don't care all that much whether

19  it was the 27th or the 31st.  But again, does that make

20  your motion to compel moot?

21          MS. KHASKELIS:  Well, your Honor, I submitted

22  formal discovery requests pursuant to the federal rules.

23  They are numbered and they request what they request.  I

24  received an email and 100 pages of documents which are

25  all basically responsive to one of those requests.  The

8

Proceedings

1   Rosenshines never provided paragraph by paragraph

2   responses to my actual request.  So I don't know whether

3   or not this is the entire universe of discovery on that.

4           In any case, I would want the Rosenshines to go

5   through and respond to my formal discovery requests

6   because I need to be able to know whether this is the

7   universe of documents.  I don't want -- in fact, in their

8   email they say that should they find something at an

9   additional point, they will provide it.

10          As you have noted, your Honor, this case has

11  been lingering for four years.  My client does not want

12  to be in this holding pattern.  We don't want to wonder

13  whether Mr. Rosenshine and Mr. Rosenshine will one day

14  find something else or will --

15          THE COURT:  I understand what you're saying and

16  I do understand that dealing with two pro se plaintiffs

17  is difficult.  That being said, Mr. Oren Rosenshine, I am

18  looking at your declaration and your and your brother's

19  declaration are very similar.  They are numbered

20  paragraphs.  You do know how to number paragraphs.  And

21  you, for instance, are both claiming that your damages

22  and lost profits, because of defendant's actions are

23  8,000,567 -- $8,567,848.  Now that's a very specific

24  amount and I have no idea how you think you're going to

25  prove that.  And my guess is that you're coming up with

9

Proceedings

 1   that number from something.  You come up with a chart but

 2   you don't give any of the background of how you're going

 3   to prove that that's your amount of damages.  So those

 4   things like responding in numbering paragraphs to the

 5   request is required by the federal rules.  And Mr.

 6   Rosenshine and Mr. Rosenshine, you have brought this case

 7   to this Court and you certainly have the ability to

 8   number paragraphs and to respond to requests.  So if you

 9   don't want to hire an attorney, which you have not

10   throughout this case, you must follow the rules.

11              MS. KHASKELIS:  Your Honor, if I may?

12              THE COURT:  Yes.

13              MS. KHASKELIS:  Allison Khaskelis again.  As

14   mentioned, the Rosenshines did produce about 100 or so

15   roughly pages of invoices last week.  I would like to

16   know that taking those invoices, which span approximately

17   three-year period, the amount of damages even taking

18   everything said in those invoices to be true, which we do

19   not concede, the total amount of damages amounts to

20   $13,000 as a best case scenario.  So --

21              THE COURT:  Let me just stop you there

22   because --

23              MS. KHASKELIS:  -- it's really --

24              THE COURT:  Let me stop you.  This conference

25   was scheduled to talk about motions to compel.  I have no

Proceedings

1   idea what happened during the mediation.  I do understand

2   that during the mediation somebody, I assume the

3   mediator, told somebody that they should produce

4   something, documents, I'm not exactly sure.  I'm not here

5   to inquire into the mediation.  That is a separate

6   proceeding and it is entitled to remain confidential.

7          However, Mr. Rosenshine, I cannot allow a case

8   to continue on in discovery like this.  It is impossible

9   for me to allow you to have the extension of time you've

10  asked for.  And in looking at Ms. Khaskelis's responses

11  to what your requests were, again your requests were not

12  put into formal requests, but I believe she did do her

13  best in responding to those requests.  Perhaps not 100

14  percent.  For instance, even though the other family

15  members were not allowed to be added to the lawsuit, I

16  don't really know, Ms. Khaskelis, that that means you

17  wouldn't produce the responses to their requests about

18  the A. Meshi corporation and who is part of the

19  corporation or what their chain of command or staffing

20  is.  And that was something that I thought, you know,

21  again, even if they didn't ask for it in the most artful

22  terms, they've asked many times for the ownership

23  structure of A. Meshi including shareholders, their

24  stakes in the company, directors, executive managers, the

25  roles of Yermi Mizrahi, Shemtov Mizrahi, Nava Mizrahi in

11

Proceedings

1   the company including positions, titles,

2   responsibilities.

3          So again, I think on both sides we should be

4   able to cut through some of this.  Ms. Khaskelis, I

5   understand if they just produced documents to you on May

6   31st and those documents were the invoices for the three-

7   year period for the product they believe your client has

8   violated their right, and that only adds up to 13,000,

9   whereas they're giving us a computation of lost profits

10  and damages in the millions, I understand why that is of

11  concern to you.  But really what I want to do is get this

12  through depositions and get a summary judgment motion

13  filed.

14          MS. KHASKELIS:  Your Honor, that is our wish as

15  well.  I want to be clear, my clients, with the exception

16  of the A. Meshi corporate structure which frankly we

17  don't think is relevant to the issue at hand, but setting

18  that aside for the time being, we have produced

19  everything relevant to this matter.  My client has

20  nothing else to produce.  I understand that no deposition

21  of my client has taken place, but in terms of documents,

22  there is nothing else left.

23          And I think with regards to the corporate

24  structure that is certainly not something that will move

25  this case along in any manner.

12

Proceedings

1       THE COURT:  Again, you don't get to choose what
2  you answer and what you don't answer.  And even if the
3  questions regarding the structure of A. Meshi Cosmetics
4  Limited doesn't in any way resolve their underlying claim
5  that plaintiff's trademark was violated, they are
6  entitled to that information.  So they may not be
7  entitled to know what the family members actually do, but
8  I do believe that they are entitled to information about
9  the defendant's corporate structure because this is a
10  lawsuit and if they were to prevail, they would want to
11  have information about the corporate structure.
12       That being said, again, they've asked for all
13  of Meshi's sale invoices for Star Gel products with
14  export documentation and the bills of lading and all of
15  that.  So Mr. and Mr. Rosenshine, it's completely beyond
16  me how you are waiting for the Court to order you to do
17  more.  The date that I had set was May 10th.  You then
18  produce things May 31st which are invoices covering a
19  three-year period.  You don't answer the defendant's
20  request which you clearly have the wherewithal to do
21  because I've read what your declarations read like.  And
22  you don't get to bring a case in federal court and ignore
23  the Court orders.  Mr. Rosenshine, Mr. Rosenshine?
24       MR. A. ROSENSHINE:  Yes.  This is Amir
25  Rosenshine speaking.

13

Proceedings

1   So first of all, we did specify in our response

2   to defendants that we do not have any other documents at

3   this time at all except for what we sent in, these 106

4   pages.

5   THE COURT:  So let me ask you then, sir.

6   You're asking for $8.5 million and yet she's named the

7   three years of invoices total to 13,000 outlets.  Don't

8   you see there is an issue there?

9   MR. A. ROSENSHINE:  So those three years that

10   we sent the invoices for are meant primarily to

11   demonstrate there was no abandonment because this is one

12   of the defendant's main defenses here.  So --

13   THE COURT:  How are you going --

14   MR. A. ROSENSHINE:  -- (indiscernible) --

15   THE COURT:  Sir, how are you going to prove the

16   $8.5 million in damages?

17   MR. A. ROSENSHINE:  So this derives then from

18   our chart that we submitted on --

19   THE COURT:  No, no, no, no, no, no.  You don't

20   derive numbers from a chart.  The chart does not prove

21   anything.  You need to have things to back up the numbers

22   you put in the chart.  And your chart, which is listed at

23   82-3, it's page 16, this was filed as an exhibit so with

24   82-3, page 16.  Your computation chart lists gross

25   profits for each of the years and you list $138,000 for

14

Proceedings

1    2015; 113,000 for 2016; 74,000 for 2017; 64,000 for 2018;

2    and $498 for 2019, and then nothing for 2020 and beyond.

3    Then you have another line in your chart that says gross

4    profits without counterfeiting and it has a footnote, and

5    it says assuming 20 percent compound annual growth rate,

6    and then you list another list of numbers.  This is not

7    proof of anything, Mr. Rosenshine.  You can't come up

8    with a chart and think that that is proof.  You have to

9    demonstrate how did you come up with a $138,000 number of

10   gross profit in 2018?  How did you come up with the

11   $113,940 number in 2016?  And you're not giving the Court

12   ordered defendants anything when you say assuming 20

13   percent compound annual growth rate.  I know you wish

14   that would be true, but you don't get to prove your

15   wishes.  And then you're also giving a compounded daily

16   25 percent annual rate for 2020 and beyond.  I mean all

17   of this, I don't know where you're coming up with this,

18   Mr. Rosenshine and Mr. Rosenshine, but this is not

19   evidence that proves your trademark violation damages.

20   This is a chart with numbers and you have to show your

21   math.  You have to show where you've gotten each of these

22   figures and what documents you have to back that up.

23          MR. A. ROSENSHINE:  Yes.  So this is Amir

24   speaking.  So the gross profit line, this is the actual

25   figures now from the financial statements of the

15

Proceedings

1   corporation.  So --

2         THE COURT:  But the financial statements are

3   prepared by somebody, not you.  Is that correct?

4         MR. A. ROSENSHINE:  No, actually we prepared

5   them each time ourselves.  We did not have an accountant

6   so we do our own.

7         THE COURT:  Okay.  So you prepared your own

8   financial statements.  From what evidence did you take

9   those numbers?

10        MR. A. ROSENSHINE:  This is actual reported,

11  you know, corporate for the company.

12        THE COURT:  Again, sir, from what information

13  did you derive those numbers?

14        MR. A. ROSENSHINE:  Sales and expenses of the

15  company.  It's the same as we prepare tax returns.  It's

16  the same information.

17        THE COURT:  Sir, what I'm saying to you is you

18  produced invoices to Ms. Khaskelis.  Do you have invoices

19  showing that you had $138,000 in gross profit in 2015?

20        MR. A. ROSENSHINE:  We did not show from 2015.

21  We showed them from 2013 to 2015 just to start this.  But

22  these gross profits represent the entire gross profits of

23  the company not just from the Star Gel because we are

24  claiming that the Star Gel allows our company to sell to

25  these customers additional products.  So that's why --

16

Proceedings

1      THE COURT:  But Mr. Rosenshine, this case is

2  just about Star Gel, correct?

3      MR. A. ROSENSHINE:  Yes.  The damages that Star

4  Gel counterfeiting caused us.  So it includes

5  also complementary --

6      THE COURT:  So you're saying that this chart,

7  even though the chart would not prove anything, is not

8  just related to Star Gel?

9      MR. A. ROSENSHINE:  It is because what we are

10  claiming is that all the complementary products that we

11  sell to our customers by Star Gel has been also lost to

12  A. Meshi because we couldn't --

13      THE COURT:  Again sir, I only deal with the

14  case that was filed in court.  I don't deal with other

15  concerns or issues that you have that are not part of

16  this case.

17      MR. A. ROSENSHINE:  Yes.  So our calculation of

18  damages in the complaint also explains that we are not

19  only claiming damages for losses of Star Gel but also

20  complementary products that --

21      THE COURT:  Again, Mr. Rosenshine, your case

22  here is about Star Gel.

23      MR. O. ROSENSHINE:  So this is Oren speaking,

24  Oren Rosenshine.  So basically yes, this is about Star

25  Gel but the damages -- Star Gel is the product that

17

Proceedings

1  allows us to sell more product and we lose those sales

2  because we don't sell them to Star Gel because of the

3  counterfeiting.  So we're entitled to those damages as

4  well as far as we understand the loss because --

5        THE COURT:  Well I really wish that you

6  would've gone and gotten an attorney because again, I am

7  now in a difficult position.  Both of you are smart men.

8  You're preparing your own financial statements for your

9  corporation.  And yet you're not responding as required

10  to the discovery requests that were propounded.  So when

11  she's asking you discovery requests and they are numbered

12  requests and your producing documents that are responsive

13  to those requests, she's entitled to know that these

14  documents respond to document request number 12 or these

15  documents respond to document request number 8, and you

16  didn't do that.  You just turned over pages of invoices.

17        MR. O. ROSENSHINE:  Yes, because they asked for

18  the invoices, so we give them the invoices.  It's not

19  specifically numbered but the invoices, they ask for

20  invoices, so --

21        THE COURT:  But Mr. Rosenshine, Oren and Amir,

22  you both knew how to file a declaration that comes with

23  numbered paragraphs.  And so their request to you

24  likewise came with numbered paragraphs, correct?

25        MR. O. ROSENSHINE:  Yes.

Proceedings

18

1      THE COURT:  And you understand that your

2  obligation is to respond to each of those requests.  I'm

3  looking at those requests now.  They are attached to the

4  motion to compel.  It is at 82-1.  The definitions go on

5  for ten pages.  So you don't have to answer the

6  instructions which go on for ten pages, but they tell you

7  what you're supposed to give them.  And then they start

8  asking you the actual questions.  And the documents to be

9  produced are 1 through 20.  Do you see those requests?

10      MR. O. ROSENSHINE:  Yes.

11      THE COURT:  Have you produced all of those

12  documents?

13      MR. O. ROSENSHINE:  Yes.  We went through

14  everything.  We didn't skip anything.  We read through

15  the entire --

16      THE COURT:  So for instance, starting with

17  number one, it says all documents including but not

18  limited to any internal communications, communications

19  with third parties, invoices and receipts that

20  demonstrates all sales of Star Gel by you and/or your

21  predecessors in interest between January 1, 2012 and

22  today's date, and specify the dates, quantities, and

23  amounts of such sales.  So you gave them the invoices.

24  Were the invoices for January 2012 through today?

25      MR. O. ROSENSHINE:  We gave them from January

19

Proceedings

1    '13 through 2015 because after 2015 there is no Star Gel.

2    So you can say from 2013 to today.  Before then, we still

3    couldn't find it.  But that's why we wanted additional

4    time because it's, you know, it's from before this, and

5    it's two entities ago basically.  So this entity that

6    sells in 2012 Star Gel is no longer -- it's over

7    basically.  And it's like more than ten years ago.  So

8    that's why we requested --

9            THE COURT:  Mr. Rosenshine, you've had four

10   years to collect documents.  Why would any more time be

11   fruitful here?

12           MR. O. ROSENSHINE:  So the request came in just

13   in March.  So before then, we've been, you know, dealing

14   with the motions.  We still think that if we had

15   additional time, we may be able to provide additional,

16   going back even more.  So --

17           THE COURT:  I'm not inclined to give you any

18   more time.  I'm inclined to give you both time to conduct

19   the depositions that need to be conducted and that's it.

20   And I imagine that's both of you, Amir and Oren

21   Rosenshine, and I imagine that's a 30(b)(6) witness for

22   Meshi.  And that's all I'm inclined to do.  I'm not

23   inclined to do any more discovery.  But you are entitled

24   to take a seven hour question and answer session under

25   oath under Rule 30.  That's a deposition.  You have to

20

Proceedings

1  get a court reporter.  The court reporter will swear in

2  the witness.  The witness has to, to the best of their

3  ability, answer the questions under oath.  And if you

4  answer you don't know, you don't remember, you're still

5  looking, well I don't know how you're going to prove your

6  case that this was trademark infringement.

7       MR. A. ROSENSHINE:  So once again Amir

8  speaking.  So we had the mediation overlapping with the

9  entire discovery period, just the discovery --

10      THE COURT:  Again, sir, I gave you back in --

11  the deadline was set back in July of 2020.  It was stayed

12  in December of 2020.  So the parties have had multiple

13  periods of time to get discovery done.  And whatever has

14  been done, okay.  It doesn't look like it's been

15  extremely successful.  But I don't think that giving more

16  time is the way to go here.  I believe that I should give

17  you one month.

18      Mr. Oren and Mr. Amir Rosenshine, you will have

19  to be deposed.  And somebody on behalf of the company, A.

20  Meshi Cosmetics, somebody with knowledge of this matter,

21  will have to be deposed.  And that will be that.  You'll

22  get the transcripts.  And then you'll have to make any

23  request to Judge DeArcy Hall if you believe there is a

24  motion to be made.

25      It can't go on indefinitely.  The case has been

Proceedings

1  pending for four years.  I am not going to allow you to

2  continue to kick this down the road.  Both sides need to

3  move.

4           So as far as the motions to compel, I don't

5  really know that there is anything to do with these

6  motions to compel because telling them to go back to

7  answer question by question, which is what you're

8  required to do under the federal rules, Mr. Rosenshine

9  and Mr. Rosenshine, but you're saying you've already

10 looked, you can't find anything else, you gave them what

11 you have.  I mean again, you're saying that you got $40

12 for each unit of Star Gel.  Where are the documents that

13 demonstrate that?

14           MR. A. ROSENSHINE:  So we have it on the

15 screenshots.  This is Amir speaking.  Screenshots of

16 online leasing, so the counterfeit products.  And we're

17 saying that the MSRP is $40, not necessarily what we

18 received for it.  But there are screenshots that we

19 provided --

20           THE COURT:  I'm not asking for the screenshots

21 of the counterfeit product.  I'm asking what documents do

22 you have that show what you were paid for each unit of

23 Star Gel.

24           MR. A. ROSENSHINE:  So what we show is the

25 invoices from 2013 and '14 and '15, those invoices at

22

Proceedings

1  that time, it's a long time ago.  It's not at today's

2  prices.  But back then we did show, it shows in the

3  invoice whatever we got from it.  It was $10 a unit,

4  something like that.

5       THE COURT:  $10 is not $40.

6       MR. A. ROSENSHINE:  $40 is the MSRP.  We did

7  not claim that we received for each unit.  On average,

8  $40 is the MSRP to the customer.

9       MS. KHASKELIS:  But (indiscernible) that you

10  used in your calculation (indiscernible) --

11       THE COURT:  Ms. Khaskelis, I'm having

12  difficulty hearing you and please state your name before

13  you speak.

14       MS. KHASKELIS:  I apologize, your Honor.  Are

15  you able to hear me better now?  This is Allison

16  Khaskelis.

17       THE COURT:  Yes.

18       MS. KHASKELIS:  I just wanted to point out for

19  the record that the $40 MSRP figure is of course what the

20  plaintiffs used in their 8 million in damages

21  calculation.  So --

22       MR. A. ROSENSHINE:  No, no.  This is Amir.  No,

23  this is not what is used.  What is used is actual profits

24  of the company.  This is what the company actually

25  received.  It's not $40 per unit.

23

Proceedings

1      THE COURT:  Ms. Khaskelis, Mr. Rosenshine, you

2  both understand that I do not want to continue this.  I

3  don't want to talk about your theories of the case.  I

4  want you to depose each other's witnesses under oath so

5  that there is a transcript of the proceeding.  You cannot

6  just say things on the record and think that they are

7  evidence of what you're trying to prove.  You're going to

8  have to back up your claims.  Do you understand that, Mr.

9  Rosenshine?

10     MR. A. ROSENSHINE:  Yes, your Honor.  But we

11  still think that, you know, just because this round of

12  mediation did not succeed, we shouldn't be penalized for

13  having now a very short time to finish and not be able

14  to --

15     THE COURT:  You are not being penalized.  Let

16  me again state for the record you have had four years.

17  This case was filed June 18, 2018.  That in July of 2020

18  it is ECF 60, the Court set the deadline of 12/18/20 for

19  you to complete discovery.  So you had from July 16, 2020

20  to December of 2020 when there was a request for a stay.

21  So the Court stayed that deadline at that time.  And then

22  there was the motion practice on the motion to amend.

23  That was not anybody except your efforts to try to amend

24  the complaint that stalled the case because that second

25  amended complaint was denied in January of 2021 and it

Transcriptions Plus II, Inc.

24

Proceedings

1  was adopted by Judge DeArcy Hall in September of 2021.

2  And after that was adopted, I set a conference.  I had

3  the parties on the phone and I gave you until May of 2022

4  to complete discovery.  So you've had two long periods

5  between July 2020 and December 2020 to do discovery.

6  Then you also had between November of 2021 and May of

7  2022.  Again, I wish that the case would have resolved

8  through mediation, but it didn't.  And again, nobody

9  provided the status of the mediation until there was the

10 motion to compel.

11          I am not continuing on this course.  I set the

12 deadlines.  You have to live with the deadlines.  It is

13 not constitutional to conduct discovery.  It's set by the

14 rules.  The rules have not been followed by either side

15 in this case quite frankly.  And Ms. Khaskelis, I

16 understand your frustration because they are able to

17 number paragraphs when they choose to, but they're not

18 following the rules in responding to your discovery

19 request.

20          Be that as it may, I'm denying both motions to

21 compel and I'm giving the parties one more opportunity to

22 depose the other side.  And I want you to understand, Mr.

23 Oren Rosenshine and Mr. Amir Rosenshine, they get to take

24 each of your depositions and it is a seven-hour question

25 and answer session under oath.  And they can use that

Proceedings

1   testimony later in this litigation.  And if you give the

2   same sort of answers that you're giving me that you gave

3   them all the documents, that's what you have, you don't

4   have any other bank statements, you don't have any other

5   receipts, you don't have anything else, you've given them

6   everything, then I can tell you predictably that you're

7   not going to be able to convince the Court that you can

8   prove your claim.  That's what you have to do.  You have

9   to prove your claim.

10          MR. A. ROSENSHINE:  So I understand, your

11  Honor.  This is Amir speaking.  I want to just remind

12  also the Court that we still have the outstanding request

13  that you mentioned that we are entitled to receive from

14  the defendant, the corporate structure, and whatever we

15  requested here, so --

16          THE COURT:  Again, sir, just like they're

17  entitled to receive what they didn't get from you, I hear

18  you, but I'm saying I'm done.  You're done.  Both sides

19  have stonewalled each other.  You going to go to

20  depositions and that's going to be that.  Because quite

21  frankly, Mr. Rosenshine, you want me to force them to

22  live up to their obligations without you and your brother

23  living up to yours.  So I don't do that.  Both sides are

24  going to have to live with this record.  You haven't

25  lived up to your obligations, Mr. Rosenshine, and now you

26

Proceedings

1  want me to enforce on them, even though you didn't make

2  the request in a formal way under any of the federal

3  rules, you just gave them email, you want me to force

4  them to live up to their obligations but you don't want

5  me to force you to live up to your obligations.

6         Did you turn over any --

7         MR. A. ROSENSHINE:  So we have to --

8         THE COURT:  Mr. Rosenshine, have you turned

9  over any email regarding your interest in Star Gel or in

10  communications between you and your predecessors or any

11  third parties?  Have you turned over any email, sir?

12         MR. A. ROSENSHINE:  We recited we do not have

13  any.  So as we said, we do not have any other documents,

14  whatever they requested.

15         THE COURT:  So only the invoices you've turned

16  over?  That's your full amount of what you have in this

17  case?  You have no communications whether it's by email

18  or any other way with any third party, with any

19  representative of the prior predecessors in interest?

20  You have nothing else?

21         MR. A. ROSENSHINE:  Regarding email?  No, no

22  communication.  There's not even something that we would

23  be able to produce if we have additional time.  This is

24  not why we are requesting additional time.

25  This we do not have at all.  So we can --

27

Proceedings

1          THE COURT:  So you have no communications

2   regarding Start Gel between you and your predecessors in

3   interest or A&Z Imports or Eyal Noach, or A. Meshi?  No

4   communications?

5          MR. A. ROSENSHINE:  Nothing documented.

6   Nothing in email or in writing or nothing documented.

7          THE COURT:  So that means how did you

8   communicate?

9          MR. A. ROSENSHINE:  So we communicate by

10  talking, you know, over the phone or face to face or --

11  yeah.  Nothing -- we don't have anything to show

12  concrete, your Honor.  Internal, there is no internal

13  communication in writing or in emails or any other form.

14         THE COURT:  I didn't just say internal.  I said

15  anything that demonstrates that you had communications

16  regarding your sales.

17         MR. A. ROSENSHINE:  No.  We have actual

18  invoices, yeah.  And the --

19         THE COURT:  Well you've given them their

20  invoices.  Ms. Khaskelis, I don't think that there's

21  anything else to do except push you to the next -- I mean

22  they've given you two years of invoices that you say

23  amount to $13,000.  Do your deposition and make your

24  motion.

25         MS. KHASKELIS:  Okay.  I am very happy with

28

Proceedings

1  that record, your Honor.  I am perfectly content with

2  that.  And for the record, I have no problem producing

3  the corporate structure of A. Meshi to the plaintiffs.  I

4  will also --

5          THE COURT:  Wonderful.  Can you do that by next

6  Friday, please?

7          MS. KHASKELIS:  I should be able to.  I see no

8  problem being able to do that, your Honor.

9          THE COURT:  Okay.  Very good.  So now --

10          MS. KHASKELIS:  But I will advise the plaintiff

11  if I need -- apologies, your Honor.  Should I need an

12  additional several days beyond next Friday, I will advise

13  the plaintiffs, but I don't anticipate anything more than

14  ten days to respond.

15          MR. A. ROSENSHINE:  Okay.  Your Honor --

16          THE COURT:  So look, look, they're going to

17  give you the corporate structure.  Just so she doesn't

18  need to talk to you again about it, today is the 8th.

19  You're saying you need ten days.  That's to the 17th.

20  But if you're saying to me that you need an additional

21  small amount of time, I'll give you until the 21st, Ms.

22  Khaskelis.

23          MS. KHASKELIS:  Great, your Honor.  Thank you,

24  your Honor.  That's much appreciated and

25  (indiscernible) --

Proceedings

1      THE COURT:  Okay.  So from June 21st --

2      MS. KHASKELIS:  -- (indiscernible) --

3      THE COURT:  -- from June 21st, Mr. Rosenshine

4   and Mr. Rosenshine, you're going to need to agree with

5   Ms. Khaskelis, and if you're going to do a deposition of

6   somebody from A. Meshi, again, you need to look at Rule

7   30(b)(6) and give them the topics that you intend to ask

8   about.  And it needs to be related to Start Gel.  It

9   can't be related to anything in the world.  It must be

10  related to your complaint.  If you're going to question

11  somebody and you would like the A. Meshi Cosmetics

12  Industries, Ltd to produce somebody with notice of those

13  topics, that's what is called a 30(b)(6) deposition.  And

14  so you need to tell Ms. Khaskelis what those topics are.

15  If you don't want to conduct a 30(b)(6) deposition of

16  somebody with knowledge from the A. Meshi Cosmetics

17  Industries, Ltd and instead you know who you want to

18  depose and that person happens to be A. Meshi, I'm just

19  giving you an example, then you have to tell her that's

20  who you intend to depose and you're going to have to hire

21  a court reporter and you're going to conduct a deposition

22  virtually, meaning by Zoom.  Mr. Meshi and the

23  corporation is located in Israel?  Is that correct, Ms.

24  Khaskelis?

25      MS. KHASKELIS:  That's correct, your Honor.

30

Proceedings

1   Just to clarify, there is no Mr. Meshi.  A. Meshi is the

2   name of the company.  It is a family owned company and

3   the relevant members of the family all have the surname

4   of Mizrahi.

5             THE COURT:  Okay.  So Mr. Rosenshine and Mr.

6   Rosenshine, you get to decide who you want to depose or

7   whether or not you want to do a 30(b)(6) deposition.  I

8   imagine, Ms. Khaskelis, that you want to depose both Mr.

9   Oren and Mr. Amir Rosenshine?

10            MS. KHASKELIS:  I would imagine that I would,

11   yes.

12            THE COURT:  And do you want them to both be on

13   the same day or two different days?

14            MS. KHASKELIS:  I'll have to think that

15   through, your Honor.

16            THE COURT:  Okay.

17            MS. KHASKELIS:  I would want to speak with --

18            THE COURT:  What I'm trying to avoid here is

19   another back and forth with letters that you can't work

20   this out between you.  I was going to try to get

21   everybody to set aside dates and tell you to go hire

22   court reporters.  But you think you could work this out,

23   Mr. Oren Rosenshine, Mr. Amir Rosenshine and Ms.

24   Khaskelis by yourselves?

25            MR. A. ROSENSHINE:  Yeah.  Amir speaking.

31

Proceedings

1   Yeah, I think so because I think the only problem here
2   was that the May 10 deadline was set before the mediation
3   and we assumed then that we're going to have anyway the
4   time to complete, six months basically to complete the
5   discovery aside from the --
6           THE COURT:  Well again, I am denying both
7   sides' motions to compel with the exception that Ms.
8   Khaskelis will give you the corporate structure of A.
9   Meshi and she'll provide that by 6/21.  You've stated on
10  the record that you've given them everything you have.
11  You have nothing else.  Which means that you will not be
12  able to produce something and surprise them.  Do you
13  understand that, Mr. Oren Rosenshine?
14          MR. O. ROSENSHINE:  Yes.  I just want to
15  clarify --
16          THE COURT:  Do you understand that, Mr. --
17  excuse me.  Do you understand that, Mr. Amir Rosenshine?
18          MR. A. ROSENSHINE:  Yes.
19          THE COURT:  Okay.  So you are tied to what
20  you've produced then.  You're not going to be able to
21  come up with new things that you've never given them that
22  should have been provided.  Do you understand that, Mr.
23  Oren Rosenshine?
24          MR. O. ROSENSHINE:  Yes, your Honor.  Just I
25  want to clarify.  Until they produce the corporate

Transcriptions Plus II, Inc.

32

Proceedings

1  structure, if we find something on our end, are we

2  allowed to produce it?

3         THE COURT:  What is it that you think you're

4  going to find, Mr. Oren Rosenshine?

5         MR. O. ROSENSHINE:  Let's say from 2012

6  invoices or -- yeah, I cannot think.  There is no

7  communication anyway, so just invoices or calculations

8  maybe.  I don't know if we want to establish those

9  figures, the gross profits, the actual gross profits of

10 the company.  If we can just -- as you know, the

11 directors of the company we could just state in a

12 declaration or show --

13        THE COURT:  That's not how discovery works.

14 You don't come up with a declaration to prove what your

15 company made.  You have to show them what you're deriving

16 that declaration from a declaration will not help here.

17        MR. O. ROSENSHINE:  Yes.  So financial reports

18 I guess.  Yes.

19        THE COURT:  You should have produced them

20 already, Mr. Rosenshine.  Why didn't you produce them if

21 they help support your claim?

22        MR. O. ROSENSHINE:  So yeah, we were under the

23 impression as the executives of the company if we declare

24 that these were our gross profits for those years, so

25 that will be -- if they want us to produce them, prepare

33

Proceedings

1    these accounting records, that this would be enough if we

2    do a declaration of these figures.  So --

3              THE COURT:  Again, I wish you would have hired

4    a lawyer.  That would have made your life and everybody's

5    life -- Ms. Khaskelis, do you want to give them until

6    6/21/22 to turn over any reports that they may have?

7              MS. KHASKELIS:  Your Honor, again, I struggle

8    with the utility of these reports.  They are talking

9    about gross profits of the company.  Again, I'm not

10   interested in the gross profits of the company.  This is

11   a case limited to Star Gel.  I need to have the

12   information relevant to Star Gel.  I think it's frankly

13   irrelevant.  I understand from the invoices that the

14   plaintiffs were selling all kinds of products.  So you

15   know, I don't want to be in a position to have to burden

16   my client with the expenses of wading through financial

17   reports that have nothing to do with Star Gel.  And I'm

18   not --

19             THE COURT:  I understand your position, so I'm

20   not going to allow them to give you any additional

21   information.  You're going to give them the information

22   regarding the corporate structure of A. Meshi by 6/21.

23   Mr. Rosenshine and Mr. Rosenshine, you're done.  No more.

24   I'm not going to hear about what you could have or should

25   have found when this case has been pending since June of

Proceedings

1  2018.  You're the one that's coming to the Court asking

2  for your rights to be enforced.  And yet you didn't have

3  the time because the Court sent you to annexed mediation

4  when there was five months at the beginning and five

5  months before this conference.  So again, Mr. Rosenshine

6  and Mr. Rosenshine, you're done with paper discovery.

7          I'm going to set a deadline for you to do

8  depositions.  And if you do the depositions, great.  And

9  if you don't do depositions, that's that.  I'm not going

10  to extend the discovery any further.  This period of time

11  is being given to you to decide whether you want to

12  depose somebody from defendants.  And Mr. Rosenshine and

13  Mr. Rosenshine, you must make yourself available for a

14  seven-hour deposition under oath which will be conducted

15  by Zoom.  Okay?  Do you understand, Mr. Oren Rosenshine?

16          MR. O. ROSENSHINE:  Yes.

17          THE COURT:  Mr. Amir Rosenshine?

18          MR. A. ROSENSHINE:  Yes.

19          THE COURT:  And Ms. Khaskelis, you will

20  cooperate with them in setting up the dates?

21          MS. KHASKELIS:  Yes, your Honor.

22          THE COURT:  Okay.  And I've explained to you

23  that you need to look at 30, Rule 30, Mr. Rosenshine and

24  Mr. Rosenshine.  And if you're going to ask for somebody

25  who is knowledgeable about topics, that's under 30(b)(6)

Proceedings

1  and you have to give those topics in advance to Ms.

2  Khaskelis.  Ms. Khaskelis, I'm not going to require them

3  to do a formal notice of deposition.  I want you to make

4  arrangements to have the deposition on a date certain.

5  And again, I want there to be confirmation emails between

6  the two sides.  And if you fail to appear, Mr.

7  Rosenshine, for a confirmed deposition date without

8  notice, that could be a basis for the Court to dismiss

9  the case.  This is under Rule 37.

10         So again, Mr. Rosenshine and Mr. Rosenshine,

11  you're going to be required to set a date with Ms.

12  Khaskelis.  She's going to take your depositions.  You

13  are going to be entitled to take somebody from A. Meshi

14  Cosmetics deposition, and that's it.  That's all that I'm

15  giving you time for.  Do both sides understand that?

16         MR. A. ROSENSHINE:  Yes.

17         MS. KHASKELIS:  Yes.

18         MR. O. ROSENSHINE:  Yes.

19         MS. KHASKELIS:  Yes, your Honor.

20         THE COURT:  Okay.  So I'm going to give you

21  until the beginning of August.  That gives you the whole

22  month of July to conduct these depositions.  And so I'm

23  giving you until August 1st to complete the depositions.

24  And there is no other discovery in this period, just the

25  depositions.  And you're supposed to give notice under

36

Proceedings

1    Rule 30 of the date and time, the method, and if it's a

2    30(b)(6) deposition, I'm repeating myself Mr. Amir and

3    Mr. Oren Rosenshine, you must give notice of the topic.

4    And they will be able to question you for seven hours and

5    you have to answer those questions under oath truthfully

6    to the best of your ability.  Do you understand that, Mr.

7    Oren Rosenshine?

8              MR. O. ROSENSHINE:  Yes.

9              THE COURT:  Mr. Amir Rosenshine?

10             MR. A. ROSENSHINE:  Yes.

11             THE COURT:  And I'm again warning you that if

12   you fail to cooperate in your deposition that that could

13   be a basis for the case being dismissed.  And again, Ms.

14   Khaskelis, I'm counting on you and the Rosenshines to be

15   able to schedule this and it must be completed meaning no

16   further anything.  August 1st is the deadline.  That

17   doesn't mean that you're scheduling anything on August

18   1st.  That means everything's completed by August 1st.

19   And you are required, Mr. Rosenshine and Mr. Rosenshine,

20   to find your own court reporter.  That court reporter has

21   to be authorized.  So there are certified court

22   reporters.  You can look it up in the phone book or

23   online.  And those court reporters will swear the

24   witnesses to the truth of their testimony and take down

25   all the questions and answers.  And if there are

37

                    Proceedings

1  documents that are going to be referred to during the

2  deposition, they'll have a way to show those on the

3  screen to question the witness.

4          Is there anything else today before we adjourn,

5  Mr. Oren Rosenshine?

6          MR. O. ROSENSHINE:  No.

7          THE COURT:  Anything further, Mr. Amir

8  Rosenshine?

9          MR. A. ROSENSHINE:  No.

10         THE COURT:  Anything further, Ms. Khaskelis?

11         MS. KHASKELIS:  No.  Thank you, your Honor.

12         THE COURT:  So again, both sides' motions to

13  compel, which are at 82 and 84 on the docket, are denied.

14  I am not going to extend paper discovery.  I did direct

15  defendants to turn over their corporate structure by June

16  21, 2022.  And all depositions shall be completed, and

17  any expert discovery shall be completed, by August 1st.

18  With that, we are adjourned.  Thank you very much.

19         MS. KHASKELIS:  Thank you, your Honor.

20

21

22

23

24

25

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **11th** day of **July**, 2022.

*Mary Greco*

Transcriptions Plus II, Inc.