# EXHIBIT 10

Exhibit 3

**Allison Khaskelis**

| | |
|---|---|
| **From:** | Amir Rosenshine <amir.rosenshine@gmail.com> |
| **Sent:** | Monday, 14 December 2020 10:42 |
| **To:** | Oren Rosenshine; Allison Khaskelis; Yisrael Hiller |
| **Subject:** | Rosenshine v A. Meshi Cosmetics Industries, Ltd., et al. No. 18-cv-3572 |
| **Attachments:** | Disclosures.pdf; Declaration (Oren).pdf; Declaration (Amir).pdf; Computation of Lost Profits.pdf; Counterfeit Star Gel®.pdf; Counterfeit Online Listings.pdf; Screenshot of Trade Show Exhibit.pdf |

Dear Ms. Khaskelis,

Attached are our disclosures.

Please send us all documents and records relating to any and all sales of counterfeit Star Gel® ever made by your client, including but not limited to, invoices, agreements, recordings, written correspondence such as emails, etc.  We are requesting all materials in your client's possession relating to all sales of Star Gel® ever made by your client to any other party besides us or our predecessors (namely, GMIE and IG).

Please also provide the ownership structure of A. Meshi, including all shareholders and their stakes in the company, directors, and executive managers.  In addition, please explain the roles of Mr. Yermi Mizrahi, Mr. Shem Tov Mizrahi, and Ms. Nava Mizrahi in the company, including positions, titles, and responsibilities.  Finally, please identify all individuals at A. Meshi, all individuals outside A. Meshi, and all organizations who have been involved in the production and sales of Star Gel® to any other party besides us or our predecessors, and explain their roles in the Star Gel® counterfeiting supply chain.

Sincerely,

Oren Rosenshine, Amir Rosenshine

## PLAINTIFFS' DISCLOSURES

I.      Individuals Likely to Have Discoverable Information Related to Plaintiffs' Claims

A.      Individuals Associated With Plaintiffs

Oren Rosenshine
20 Hawthorne Lane
Great Neck, NY 11023

Plaintiff. Full knowledge of dispute.

Amir Rosenshine
20 Hawthorne Lane
Great Neck, NY 11023

Plaintiff. Full knowledge of dispute.

B.      Individuals Associated With Defendants

A. Meshi Cosmetics Industries Ltd.
8 Shimon Habursakai Street
Industrial Park Bat Yam 59598, Israel

Defendant. Full knowledge of dispute.

A to Z Import Inc.
305 E 88th Street
Brooklyn, NY 11236

Defendant. Full knowledge of dispute.

Eyal Noach
2445 E 65th Street
Brooklyn, NY 11234

Defendant. Full knowledge of dispute.

Yermi Mizrahi
8 Shimon Habursakai Street
Industrial Park Bat Yam 59598, Israel

Defendant. Full knowledge of dispute.

Shem Tov Mizrahi
8 Shimon Habursakai Street
Industrial Park Bat Yam 59598, Israel

Defendant. Full knowledge of dispute.

Nava Mizrahi
8 Shimon Habursakai Street
Industrial Park Bat Yam 59598, Israel

Defendant. Full knowledge of dispute.

II.     Documents in Possession or Control of Plaintiffs And Related to Plaintiffs' Claims

Genuine and counterfeit Star Gel®.

Contract with A. Meshi.

All Exhibits to the Complaint.

All pleadings and other tangible documents produced, served, exchanged or filed in the course of this litigation.

Declaration of Oren Rosenshine dated December 10, 2020.

Declaration of Amir Rosenshine dated December 10, 2020.

Screenshots of counterfeit Star Gel® online listings.

Screenshot of A. Meshi's exhibitor listing in a major U.S. trade show.

Computation of lost profits and damages to goodwill and reputation.

At this time, Plaintiffs are unaware of any additional documents. However, if additional documents are discovered between the date of this Disclosure Statement and the time of trial, Plaintiffs will supplement their Disclosure Statement in a timely manner.

III.    Computation of Damages Claimed by Plaintiffs

A.      Nominal damages as a result of Defendants' trademark counterfeiting activities.

B.      Defendants' profits resulting from said counterfeiting.

C.     Lost profits resulting from said counterfeiting, including compensatory damages for lost profits on sales of Star Gel®, consequential damages for lost profits on sales of complementary products, and damages to goodwill and reputation: Approximately $8,567,848.
Treble amount of damages: Approximately $25,703,544.

D.     Incidental damages including compensation for time and effort spent by Plaintiffs, their predecessors, and their family members on corrective advertising: Approximately $500,000 as of December 10, 2020.

E.     Compensation for Plaintiffs' emotional distress and mental anguish resulting from all nine counts pleaded in the Complaint, including for Plaintiffs' predecessors and family members: Approximately $2,000,000.

F.     Reasonable attorneys' fees: In accordance with Defendants' attorneys' fees.

G.     Plaintiffs' investigative costs and costs of suit: Approximately $100,000 as of December 10, 2020.

H.     Punitive damages to the maximum extent permitted by law for willful trademark counterfeiting. Treble amount of damages from parts B, C, D, E, F, and G.

I.     Pre-judgment and post-judgment interest.

IV.     Insurance Agreements Which May Satisfy Part of Judgment: None aware of by Plaintiffs.


*Oren Rosenshine Amir Rosenshine*
_____
Oren Rosenshine, Amir Rosenshine
Plaintiffs

December 10, 2020
Date

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Oren Rosenshine | Case No. |
| Amir Rosenshine | 18cv3572(LDH)(LB) |
| Plaintiffs, | |
| -against- | |
| 1) A. Meshi Cosmetics Industries Ltd. | |
| 2) A to Z Import Inc. | |
| 3) Eyal Noach | |
| 4) Yermi Mizrahi | |
| 5) Shem Tov Mizrahi | |
| 6) Nava Mizrahi | |
| Defendants. | |

**DECLARATION OF OREN ROSENSHINE**

I, Oren Rosenshine, hereby declare as follows:

1. I am over the age of 18 and I am otherwise competent to make this declaration. I am providing this declaration voluntarily.

2. All the statements herein are within my personal knowledge and are true and correct to the best of my knowledge.

3. The following statements are true during the entire period at issue in the Complaint and currently.

1

4. In 2004, A. Meshi Cosmetics Industries Ltd. ("Meshi") entered into a written agreement with Global Manufacturing Import Export, Inc. (GMIE), a New York corporation, to sell hair gel products to GMIE bearing GMIE's Star Gel® trademark.

5. In accordance with section 7 of the agreement, Meshi received from GMIE its Star Gel® logo along with GMIE's copyrighted text to proceed with fulfilling the agreement and printing the labels on the products.

6. Since then Meshi has been selling the Star Gel® products to GMIE on a continuous basis.

7. On July 31, 2014, GMIE assigned all rights to the Star Gel® trademark to International Grooming, Inc. ("IG").

8. In November 2016, IG learned that Meshi has been deceiving its U.S. customers by using, without its knowledge, the Star Gel® logo, along with the copyrighted text Meshi received from GMIE to manufacture the Star Gel® products, to print labels and sell counterfeit versions of the Star Gel® products to IG's New York customers, including Defendant 2 ("AZ") and Defendant 3 ("Noach").

9. On January 31, 2018, IG assigned all rights to the Star Gel® trademark to Elazar Rosenshine, and on January 1, 2019, Elazar Rosenshine assigned all rights to the Star Gel® trademark to Amir Rosenshine and me.

10. Amir Rosenshine and I, and our predecessors, have been selling the Star Gel® products continuously since 2004.

11. The MSRP of Star Gel® is $40/unit and has remained the same since its introduction to the U.S. market in 2004.

12. Amir Rosenshine and I were assigned the contract between GMIE and Meshi before the Complaint was filed.

13. Meshi never received permission to use the Star Gel® logo or the copyrighted text it received from GMIE in any way other than fulfilling Star Gel® orders for GMIE or its assignees.

2

14. The Star Gel® brand is well known by customers in New York and across the U.S., thanks to many years of devoted, extensive marketing efforts by Amir Rosenshine and myself, and our predecessors.

15. All sales of the Star Gel® products by Meshi have been denominated in U.S. dollars.

16. All invoices produced by Meshi for its sales of the Star Gel® products have been in English.

17. The word "Export" is printed on all of Meshi's sales invoices for the Star Gel® products.

18. New York customer addresses are indicated on all of Meshi's sales invoices for the Star Gel® products.

19. All of Meshi's sales invoices for the Star Gel® products are accompanied by export documentation, which includes Meshi's exporter number; lists Meshi's customs broker, who files the export documents on Meshi's behalf; includes the bill of lading for the shipment; includes the vessel name and container number that transports the shipment by ocean to New York; and lists the port of New York as the final unloading port for the shipment.

20. As exports, Meshi's Star Gel® sales are exempt from Israeli Value Added Tax (VAT), which would have been collected by Meshi had the Star Gel® products been sold in Israel. Accordingly, Meshi's invoices for the Star Gel® products indicate "VAT EXEMPT" on Star Gel® sales, in accordance with Israeli tax law for export sales.

21. Amir, I, our predecessors, and our family members have suffered enormous damages as a result of Defendants' counterfeiting of the Star Gel® products.

22. Amir, I, our predecessors, and our family members have lost sales of the Star Gel® products, have lost sales of complementary products, and have suffered lasting goodwill and reputational damages.

23. Since 2016, when Amir, I, our predecessors, and our family members learned of Defendants' counterfeiting activities, we have all been spending countless hours educating customers on how to distinguish between genuine and counterfeit Star Gel® products.

3

24. Despite our best efforts, rampant confusion persists among customers of the Star Gel® products as a consequence of Defendants' counterfeiting activities.

25. Our integrity in the market as the exclusive owners of the Star Gel® trademark has been severely compromised and permanently impaired as a consequence of Defendants' counterfeiting activities.

26. Amir, I, our predecessors, and our family members have suffered severe emotional distress and mental anguish as a result of Defendants' counterfeiting activities.

27. According to my best estimate, the damages caused by Defendants' trademark counterfeiting activities are as follows:

    a. Nominal damages as a result of Defendants' trademark counterfeiting activities.

    b. Defendants' profits resulting from said counterfeiting.

    c. Lost profits resulting from said counterfeiting, including compensatory damages for lost profits on sales of Star Gel®, consequential damages for lost profits on sales of complementary products, and damages to goodwill and reputation: Approximately $8,567,848. Treble amount of damages: Approximately $25,703,544.

    d. Incidental damages including compensation for time and effort spent by Amir, myself, our predecessors, and our family members on corrective advertising: Approximately $500,000 as of December 10, 2020.

    e. Compensation for Amir's and my emotional distress and mental anguish resulting from all nine counts pleaded in the Complaint, including for our predecessors and family members: Approximately $2,000,000.

    f. Reasonable attorneys' fees: In accordance with Defendants' attorneys' fees.

    g. Amir's and my investigative costs and costs of suit: Approximately $100,000 as of December 10, 2020.

    h. Punitive damages to the maximum extent permitted by law for willful trademark counterfeiting. Treble amount of damages from parts b, c, d, e, f, and g.

      i.   Pre-judgment and post-judgment interest.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: December 10, 2020

      Great Neck, New York

_Oren Rosenshine_

Oren Rosenshine

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Oren Rosenshine<br><br>Amir Rosenshine<br><br>Plaintiffs,<br><br>  **-against-**<br><br><br>1) A. Meshi Cosmetics Industries Ltd.<br>2) A to Z Import Inc.<br>3) Eyal Noach<br>4) Yermi Mizrahi<br>5) Shem Tov Mizrahi<br>6) Nava Mizrahi<br><br>Defendants. | Case No.<br>     18cv3572(LDH)(LB) |

**DECLARATION OF AMIR ROSENSHINE**

I, Amir Rosenshine, hereby declare as follows:

1.  I am over the age of 18 and I am otherwise competent to make this declaration. I am providing this declaration voluntarily.

2.  All the statements herein are within my personal knowledge and are true and correct to the best of my knowledge.

3.  The following statements are true during the entire period at issue in the Complaint and currently.

1

4. In 2004, A. Meshi Cosmetics Industries Ltd. ("Meshi") entered into a written agreement with Global Manufacturing Import Export, Inc. (GMIE), a New York corporation, to sell hair gel products to GMIE bearing GMIE's Star Gel® trademark.

5. In accordance with section 7 of the agreement, Meshi received from GMIE its Star Gel® logo along with GMIE's copyrighted text to proceed with fulfilling the agreement and printing the labels on the products.

6. Since then Meshi has been selling the Star Gel® products to GMIE on a continuous basis.

7. On July 31, 2014, GMIE assigned all rights to the Star Gel® trademark to International Grooming, Inc. ("IG").

8. In November 2016, IG learned that Meshi has been deceiving its U.S. customers by using, without its knowledge, the Star Gel® logo, along with the copyrighted text Meshi received from GMIE to manufacture the Star Gel® products, to print labels and sell counterfeit versions of the Star Gel® products to IG's New York customers, including Defendant 2 ("AZ") and Defendant 3 ("Noach").

9. On January 31, 2018, IG assigned all rights to the Star Gel® trademark to Elazar Rosenshine, and on January 1, 2019, Elazar Rosenshine assigned all rights to the Star Gel® trademark to Oren Rosenshine and me.

10. Oren Rosenshine and I, and our predecessors, have been selling the Star Gel® products continuously since 2004.

11. The MSRP of Star Gel® is $40/unit and has remained the same since its introduction to the U.S. market in 2004.

12. Oren Rosenshine and I were assigned the contract between GMIE and Meshi before the Complaint was filed.

13. Meshi never received permission to use the Star Gel® logo or the copyrighted text it received from GMIE in any way other than fulfilling Star Gel® orders for GMIE or its assignees.

14. The Star Gel® brand is well known by customers in New York and across the U.S., thanks to many years of devoted, extensive marketing efforts by Oren Rosenshine and myself, and our predecessors.

15. All sales of the Star Gel® products by Meshi have been denominated in U.S. dollars.

16. All invoices produced by Meshi for its sales of the Star Gel® products have been in English.

17. The word "Export" is printed on all of Meshi's sales invoices for the Star Gel® products.

18. New York customer addresses are indicated on all of Meshi's sales invoices for the Star Gel® products.

19. All of Meshi's sales invoices for the Star Gel® products are accompanied by export documentation, which includes Meshi's exporter number; lists Meshi's customs broker, who files the export documents on Meshi's behalf; includes the bill of lading for the shipment; includes the vessel name and container number that transports the shipment by ocean to New York; and lists the port of New York as the final unloading port for the shipment.

20. As exports, Meshi's Star Gel® sales are exempt from Israeli Value Added Tax (VAT), which would have been collected by Meshi had the Star Gel® products been sold in Israel. Accordingly, Meshi's invoices for the Star Gel® products indicate "VAT EXEMPT" on Star Gel® sales, in accordance with Israeli tax law for export sales.

21. Oren, I, our predecessors, and our family members have suffered enormous damages as a result of Defendants' counterfeiting of the Star Gel® products.

22. Oren, I, our predecessors, and our family members have lost sales of the Star Gel® products, have lost sales of complementary products, and have suffered lasting goodwill and reputational damages.

23. Since 2016, when Oren, I, our predecessors, and our family members learned of Defendants' counterfeiting activities, we have all been spending countless hours educating customers on how to distinguish between genuine and counterfeit Star Gel® products.

24. Despite our best efforts, rampant confusion persists among customers of the Star Gel® products as a consequence of Defendants' counterfeiting activities.

25. Our integrity in the market as the exclusive owners of the Star Gel® trademark has been severely compromised and permanently impaired as a consequence of Defendants' counterfeiting activities.

26. Oren, I, our predecessors, and our family members have suffered severe emotional distress and mental anguish as a result of Defendants' counterfeiting activities.

27. According to my best estimate, the damages caused by Defendants' trademark counterfeiting activities are as follows:

   a. Nominal damages as a result of Defendants' trademark counterfeiting activities.

   b. Defendants' profits resulting from said counterfeiting.

   c. Lost profits resulting from said counterfeiting, including compensatory damages for lost profits on sales of Star Gel®, consequential damages for lost profits on sales of complementary products, and damages to goodwill and reputation: Approximately $8,567,848. Treble amount of damages: Approximately $25,703,544.

   d. Incidental damages including compensation for time and effort spent by Oren, myself, our predecessors, and our family members on corrective advertising: Approximately $500,000 as of December 10, 2020.

   e. Compensation for Oren's and my emotional distress and mental anguish resulting from all nine counts pleaded in the Complaint, including for our predecessors and family members: Approximately $2,000,000.

   f. Reasonable attorneys' fees: In accordance with Defendants' attorneys' fees.

   g. Oren's and my investigative costs and costs of suit: Approximately $100,000 as of December 10, 2020.

   h. Punitive damages to the maximum extent permitted by law for willful trademark counterfeiting. Treble amount of damages from parts b, c, d, e, f, and g.

4

    i.    Pre-judgment and post-judgment interest.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: December 10, 2020

    Great Neck, New York

_Amir Rosenshine_

Amir Rosenshine

**Computation of Lost Profits and Damages to Goodwill and Reputation**

|  | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 and Beyond |  |
|---|---|---|---|---|---|---|---|
| **Gross Profit[1]** | $  138,168 | $  113,940 | $  74,073 | $  64,132 | $  498 | $  - |  |
| **Gross Profit Without Counterfeiting[2]** | $  138,168 | $  165,802 | $  198,962 | $  238,754 | $  286,505 | $  343,806 |  |
| **Damages[3]** | $  - | $  51,862 | $  124,889 | $  174,622 | $  286,007 | $  343,806 | Total: |
| **Value of Damages as of 12/31/2019[4]** | $  - | $  356,261 | $  557,733 | $  452,927 | $  324,807 | $ 6,876,120 | **$ 8,567,848** |

[1] IG's actual figures

[2] Assuming 20% compound annual growth rate

[3] Difference between preceding two rows

[4] For 2015-2019, compounded daily at 25% annual rate; for 2020 & beyond, present value of future lost profits at 20% growth rate and 25% discount rate

# Counterfeit
# Star Gel®









# Screenshots of Counterfeit Star Gel® Online Listings

# Counterfeit eBay Listing (Top Half)



# Counterfeit eBay Listing (Bottom Half)



# Counterfeit Amazon Listing (Top Third)



# Counterfeit Amazon Listing (Middle Third)



# Counterfeit Amazon Listing (Bottom Third)



# Counterfeit Amazon Listing (99 Units Available for Checkout)



6



# Counterfeit Walmart Listing (Middle Third)



# Counterfeit Walmart Listing (Bottom Third)



## Screenshot of A. Meshi's Exhibitor Listing in a Major U.S. Trade Show

