**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

OREN ROSENSHINE,
AMIR ROSENSHINE

               Plaintiffs,

  vs.

A. MESHI COSMETICS INDUSTRIES LTD., A to Z
IMPORTS, INC. and EYAL NOACH

          Defendants

18-cv-03572
(LDH-LB)

**Served on Plaintiffs on**
**<u>January 26, 2023</u>**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**A.  MESHI COSMETICS INDUSTRIES LTD.'S MOTION FOR**
**<u>SUMMARY JUDGMENT</u>**

**Table of Contents**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

   1.   There is no legal or factual basis to the argument that the "exclusivity clause" in the 2004 agreement between Meshi and GMIE somehow bound Meshi in 2016 ....................... 3

   2.   Plaintiffs' argument that their sales of Star Gel within three years of Meshi's one-time sale to A to Z defeat Meshi's abandonment claim is groundless .......................................... 5

   3.   Miscellaneous assertions with no backing ..................................................................... 7

CONCLUSION .................................................................................................................. 10

CERTIFICATE OF SERVICE ........................................................................................... 11

# TABLE OF AUTHORITIES

**Pages (s)**

**Cases**

*Imperial Tobacco Ltd., Assignee of Imperial Group PLC v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990) ..................................................................................................7

*International Multifoods Corp. v. Commercial Union Insurance Co.*, 309 F.3d 76, 83 (2d Cir. 2002)........................................................................................................................................4

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007) ......................................................................................................................6

*Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010)........................................................................................................................................4

*Monbo v. Nathan*, 18-cv-5930, 2022 WL 4591905, at *32 (E.D.N.Y. Aug. 26, 2022), reconsideration denied, 18-cv-5930, 2022 WL 4134455 (E.D.N.Y. Sept. 11, 2022)……………………………………………………………………………………………10

*Pado, Inc. v. SG Trademark Holding Co. LLC*, 527 F. Supp. 3d 332, 341 (E.D.N.Y. 2021) ...5

*Piccirillo v. FCB/Leber Katz Partners, Inc.*, No. 87-cv-2192, 1988 WL 96587, at *11 (S.D.N.Y. Sept. 9, 1988) ......................................................................................................3

*Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (N.Y. 2009).4

**Statutes**

15 U.S.C. § 1114.............................................................................................................................9

15 U.S.C. § 1127.............................................................................................................................5

Defendant A. Meshi Cosmetics Industries Ltd. (**"Meshi"**) respectfully submits this reply memorandum of law in further support of its motion for summary judgment.

## INTRODUCTION

The Plaintiffs' Memorandum of Law in Opposition to Meshi's Motion for Summary Judgment, served on Meshi on January 19, 2023 ("**Opposition**") is devoid of evidence, legal support and is, at times, frankly incomprehensible. It cites to no case law for any of its theories. It is full of hysterical proclamations, some of which defy logic and all of which lack factual foundation, that Plaintiffs seem to think they can wish into existence. But saying something does not make it true.

The story in this litigation is clear. After purchasing modest amounts of Star Gel hair gel between 2004 and 2012 from Meshi, a small Israeli family-operated cosmetics manufacturer, for distribution in niche markets, Plaintiffs' parents, who imported various foreign products into the US through their company, Global Manufacturing Import Export Inc. ("**GMIE**") decided to stop doing so. They did not order the product from any other manufacturer, and the product fizzled out of the market, with GMIE making its last sale of it in October 2015. Plaintiffs' parents never took the trouble to register a trademark for this hair gel, perhaps because it was generating them profits of some c. $14,000 over a three-year period of sales.

In 2016, GMIE's former customer, A to Z Import Inc. ("**A to Z**"), decided to reintroduce the product and reached out to Meshi to place a small order. Having not heard from GMIE for some four years and with their contractual relationship long over, Meshi produced and sold 3,600 units to A to Z in the fall of 2016. Some six months later, and upon discovering that A to Z was experiencing unexpected success with the product, the Rosenshine family, and

Plaintiffs in particular, regretted giving it up. [1] Frustrated, they became determined to benefit from the product, even without any legal or factual right to do so. They concocted an entitlement to damages of over $8,500,000 (which Plaintiffs propose should be trebled to a nice, round $25,000,000 figure) to make the prospect of settling more appealing to Meshi than the difficult, costly path to clearing its name in a foreign jurisdiction.

The Opposition fails to provide a stitch of evidence to challenge Meshi's assertions in its December 5, 2022 opening Memorandum of Law ("**Opening Memorandum**") and the documents offered in its support.  In an incredible about-face to their statement to this Court that there was no more Star Gel after 2015 and all evidence supporting it, Plaintiffs now expect the Court and Meshi to believe the contrary: that there actually exists, or at some point existed, a trove of evidence that demonstrates Plaintiffs' robust sales and/or attempts at sales of Star Gel following October 2015, which Plaintiffs simply could not locate or produce in the allotted discovery period.  They ask the Court to save their claims on the basis of their say-so.

Nearly 5 years after the Plaintiffs' predecessors in interest commenced this litigation, it is finally clear that this entire case is based on empty statements and wishful thinking.  But at the summary judgment stage, empty statements, no matter how bombastic, cannot sustain claims for recovery.  Plaintiffs seem to misunderstand that the burden of proving their case lies with them.  It is clear that if Plaintiffs had any evidence to support their claims, they would have, and certainly should have, already produced it.  With the evidentiary record in this matter devoid of any support for the Plaintiffs' theories, Meshi respectfully requests this Court to dismiss this case and spare it further undue distress and crushing legal costs.

---

[1] Had Plaintiffs/their parents truly remained engaged in the Star Gel market, it obviously would not have taken them so many months to discover that A to Z was now selling it.  Yet Plaintiffs did not fill out the simple US Patent and Trademark Office trademark registration application until May 2017 and did not send a cease and desist letter to anyone until June 2017.

Though the Opposition is replete with fallacies, Meshi does not wish to waste the Court's time by refuting each one.  The record in this case speaks for itself and has been provided in its entirety with Meshi's Opening Memorandum.  Rather, Meshi will address only the most egregious misstatements in what follows.

## **ARGUMENT**

### 1.  There is no legal or factual basis to the argument that the "exclusivity clause" in the 2004 agreement between Meshi and GMIE somehow bound Meshi in 2016

One of Plaintiffs' main arguments – that paragraph 7 of the 2004 agreement between GMIE and Meshi remained in force in 2016 and granted GMIE a perpetual exclusive right to the Star Gel trademark[2] – is misguided and fundamentally flawed.  Paragraph 7 of that agreement (Am. Compl. Exs. 2 & 3) confers no obligation on Meshi whatsoever.  It does not say "the manufacturer hereby grants" or "the manufacturer will …[do anything with regard to buyer's exclusivity]."  There is no "action item" in this clause for Meshi.  Rather, the clause states: "Buyer [GMIE] has exclusivity on this [Star Gel] name without time limit." That is, of course, a representation made by GMIE as to its alleged right to make use of the Star Gel name.  *See, e.g.*, *Piccirillo v. FCB/Leber Katz Partners, Inc.*, No. 87-cv-2192, 1988 WL 96587, at *11 (S.D.N.Y. Sept. 9, 1988) (finding that if there is no contractual obligation imposed on a party, there can be no breach of it).  There can be no other reasonable interpretation of this clause.

The use of the present tense in this clause is a statement of what the Buyer already claims to possess, prior to entering into this agreement with Meshi, as contrasted with the future tense/future date obligations imposed on the parties by the agreement.  Under New

---

[2] *See, e.g.*, Opposition at pp. 1, 3, 24.

York law, the initial question on a motion for summary judgment with respect to a contract claim is "whether the contract is unambiguous with respect to the question disputed by the parties," which is a question of law for the courts. *International Multifoods Corp. v. Commercial Union Insurance Co.*, 309 F.3d 76, 83 (2d Cir. 2002). It is axiomatic that where "the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language." *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (internal quotations and citations omitted). The language here is clear and unambiguous. Plaintiffs' proposed interpretation would require the insertion of words into the clause and would render its use of the present tense meaningless.

Indeed, the next clause in the agreement, paragraph 8, makes this point even more obvious. Reference to the entire agreement is, of course, a basic tenet of contractual interpretation. The entire contract must be reviewed and "[p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. *Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (N.Y. 2009). Paragraph 8 states: "The buyer hereby declares that he is unaware the requested trademark is being used by another commercial entity in the U.S." The two clauses, read together, form a complete representation given by GMIE to Meshi that the former has the exclusivity on the Star Gel name by virtue of being unaware that the trademark is used by any other commercial entity.

In any event, Meshi had no power to confer any rights to the Star Gel name to GMIE or anyone at all. GMIE's exclusive right to use the name, at least in the US, is entirely a question of US trademark law and not a matter for contract with a product manufacturer that claimed no ownership of it. Meshi could have no knowledge or control over whether another manufacturer was already producing or would one day produce a similar product with the same

4

name, perhaps even registering the trademark at some point.  The only common-sense interpretation of this clause is that it offered protection to Meshi in the event that GMIE misrepresented its exclusivity to this name, and Meshi somehow became liable for breaching someone else's trademark.  In that event, Meshi would be able to demonstrate its good faith to a third party or recover any costs it might be forced to incur due to the misrepresentation from GMIE.  Contrary to the Plaintiffs' assertion, the clause in question conferred an obligation on their parents' company only and, ironically, it is GMIE, not Meshi, that carried any associated risk of liability.

This is not the only reason for which Plaintiffs' breach of contract claim must fail. As already argued, this cause of action, along with most other causes of action in the Plaintiffs' Amended Complaint, requires a showing of harm resulting from the alleged breach.  Setting aside their one-page table claiming damages in the many millions, Plaintiffs have demonstrated no actual harm from Meshi's one-time sale of Star Gel to A to Z in the fall of 2016.

**2.  Plaintiffs' argument that their sales of Star Gel within three years of Meshi's one-time sale to A to Z defeat Meshi's abandonment claim is groundless**

Plaintiffs misguidedly suggest that their sales of Star Gel in October 2015 – which took place within three years of Meshi's one-time sale of Star Gel to A to Z in November 2016 – "defeat Meshi's abandonment claim."[3]  That displays a faulty understanding of the law.  There is no requirement under the Lanham Act that a mark be in disuse for three years to be deemed abandoned.  It seems that Plaintiffs are mistaken about 15 U.S.C. § 1127, which states, in relevant part, that three consecutive years of nonuse constitute "*prima facie* evidence of abandonment." *See, e.g.*, *Pado, Inc. v. SG Trademark Holding Co. LLC*, 527 F. Supp. 3d

---

[3] *See, e.g.*, Opposition at pp. 10, 11, 19, 22.

332, 341 (E.D.N.Y. 2021).  That provision simply creates a presumption of nonuse and shifts the evidentiary burden away from the party claiming trademark abandonment in situations where the mark has been in disuse for three years.  It does not impose a necessary three-year time period (or any time period) to demonstrate abandonment, which is an inquiry individual to each case.  *See, e.g., Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007) (granting the defendant's motion for summary judgment when the nonuse period of the unregistered trademark in question was far shorter than three years).

In the present case, there is absolutely no evidence that Plaintiffs were using or intended to resume the use of the Star Gel mark in the relevant abandonment period – from October 2015, when Plaintiffs stopped selling Star Gel, until December 2016, when Meshi manufactured and sent Star Gel to A to Z.  Plaintiffs showed no sales or attempted sales, no advertisement campaigns or communications with any clients or prospective clients and no efforts to source more Star Gel from any manufacturer.  In sum, Plaintiffs demonstrated no commercial activity whatsoever utilizing the unregistered Star Gel mark and no inkling of an intent to resume it.  Asserting that they never ceased using the mark or that they could register it anytime is insufficient at this stage of the litigation, as the Federal Circuit made clear in the salient case on this issue:

> In every contested abandonment case, the respondent denies an intention to abandon its mark; otherwise there would be no contest. Under Fed. R. Civ. P. 56 … one must, however, proffer more than conclusory testimony or affidavits.  An averment of no intent to abandon is little more than a denial in a pleading, which is patently insufficient to preclude summary judgment on the ground the facts are disputed. As this court has frequently said in connection with motions for summary judgment, a conclusory statement on the ultimate issue does not create a genuine issue of fact.  The registrant must put forth evidence with respect to what activities it engaged in during the nonuse period or what outside events occurred from which an intent to resume use during the nonuse period may reasonably be inferred.

*Imperial Tobacco Ltd., Assignee of Imperial Group PLC v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990) (granting the defendant's motion for summary judgment).

### 3. Miscellaneous assertions with no backing

As previously mentioned, many of Plaintiffs' assertions are simply wrong or lack logical soundness. Only a few require this Court's attention.

1) Plaintiff claims that A to Z is currently selling its Star Gel for $27/unit, undercutting the genuine Star Gel MSRP of $40/unit.[4] Evidence in this case demonstrates that Plaintiffs were receiving at most $10 per unit of Star Gel. Khaskelis Decl. Ex. 7. Setting aside the general concern that Plaintiffs provide no support for either sales figure or the suggestion that A to Z is currently selling any Star Gel to anyone, this claim is illogical on its face. It is unclear how Plaintiffs claim to have been undercut when the price they received per unit of Star Gel was significantly lower than the price allegedly charged by A to Z.

2) Plaintiffs claim that Meshi admitted to counterfeiting at least 3,600 units of Star Gel.[5] Not so. Meshi has made no secret of manufacturing 3,600 units of hair gel to sell to A to Z. It specifically denied "counterfeiting" anything, as Plaintiffs had no protectable Star Gel mark in the relevant time period.

3) The statement claiming that "[a] cursory look at Am. Compl. Ex. 5 would, quite literally, instantly convince any person on the planet that customer confusion is 100% certain"[6] is an example of just how misguided Plaintiffs are about the concepts of evidence and burden of proof. Such bald assertions, which Plaintiffs no doubt wish to conjure into facts, do not equate to proof.

---

[4] *See, e.g.*, Opposition, p. 14.
[5] Opposition, p. 13.
[6] Opposition, p. 14.

4) It is worth noting that Plaintiffs' only examples of the "rampant ongoing counterfeiting" of Star Gel amount to two Florida listings (Hollywood, FL and Aventura, FL).[7]  Meshi has made no secret of the fact that it sold 3,600 units of Star Gel to A to Z in 2016. Meshi knows nothing about these units' journey through the stream of commerce once they left its factory.  There is no indication of how long these units have been listed as available for sale, from whom they were acquired and when.   In any event, these listings have no effect on the New York market that forms the subject matter of the Plaintiffs' Amended Complaint.

5) Similarly, Plaintiffs incongruously infer that Meshi must have been selling Star Gel after 2016 from Meshi's suggestion in the Opening Memorandum that in 2015, all of Plaintiffs' Star Gel inventory was at least three years old and, by industry recommendations, unfit for sale.   They state, for example: "[a]s Meshi claims that hair gel is invalid for sale after 36 months, the only conclusion that follows is that the current counterfeit Star Gel available for sale was sold by Meshi later than the fall of 2016"[8]; "Meshi's claim that it only sold 3,600 units of counterfeit Star Gel on November 2016 is contradicted by Meshi itself, as the counterfeit Star Gel on the market today was sold by Meshi less than three years from this date (January 2020 or later), as it would otherwise be invalid for sale according to Meshi.   Hence, this proves Meshi sold counterfeit Star Gel after the trademark was registered in May 2017." [9]   These leaps defy all logic.   Though Meshi has well-grounded doubts about the viability and salability of old hair gel, it has no control, as solely the product's manufacturer, over what happens to its product once it leaves Meshi's factory.   If some parties are still

---

[7] Opposition, p. 12, n.1.
[8] Opposition, p. 11.
[9] Opposition, p. 18.

selling or attempting to resell 6-year-old Star Gel, that says absolutely nothing about Meshi's own actions.  It is telling that Plaintiffs rely on these far-fetched arguments, rather than on actual evidence, to try to convince the Court that Meshi continues to manufacture and supply Star Gel to this day.   For the avoidance of all doubt, Meshi has neither manufactured not sold any Star Gel to anyone since November 2016, as all evidence demonstrates.

6) Plaintiffs' assertions that "[a]ll this proves decisively that Meshi had been actively deceiving IG's numerous U.S. customers, including AZ" and "the proof is in the pudding: Meshi's own admission of the successful sales of counterfeit Star Gel to Plaintiffs' long-time customer A to Z proves, beyond any and all doubt, not only potential, but actual customer confusion"[10] are not understood.  It appears that Plaintiffs allege that A to Z was somehow confused about something, and that this confusion, whatever it may be, is definitive proof of customer confusion of the type necessary to make out their various claims.   Certainly A to Z, as the client of Plaintiffs' parents' company, understood that it was purchasing Star Gel from GMIE, and not someone else.  Surely A to Z was aware that GMIE simply imported Star Gel that it sourced from a manufacturer.  A to Z requested that its name and address appear on the label for the product it sourced directly from Meshi.   The contents of the gel that Meshi manufactured for A to Z were identical to the contents of the gel that it previously manufactured for GMIE.   About what, exactly, was A to Z confused or deceived?

7) Plaintiffs maintain that they can overcome their lack of standing to bring a claim under 15 U.S.C. § 1114 because Meshi put Star Gel into the stream of commerce, so "Plaintiffs would still be entitled to collect their full Section 32 damages from any actor

---

[10] Opposition, pp. 3 and 16, respectively.

in the counterfeiting chain, including the original manufacturer (in this case, Meshi), even if the original manufacturer put the counterfeit merchandise into the stream of commerce before the trademark registration date."[11]  They, of course, supply no legal support for this wishful theory.  Nor could they.  To the contrary, "[c]ourts in this Circuit and others have held that a plaintiff cannot recover for infringement of a registered mark based on conduct that occurred prior to the plaintiff's registration of its mark."  *Monbo v. Nathan*, 18-cv-5930, 2022 WL 4591905, at *32 (E.D.N.Y. Aug. 26, 2022), reconsideration denied, 18-cv-5930, 2022 WL 4134455 (E.D.N.Y. Sept. 11, 2022).

## <u>CONCLUSION</u>

For the foregoing reasons, and all the reasons adduced in Meshi's Opening Memorandum, Meshi respectfully requests that the Court grant its motion for summary judgment in its entirety and award Meshi such other or further relief as this Court may deem just and proper, including costs and attorneys' fees.

Dated:   January 26, 2023
        New York, New York

        Respectfully submitted,

        By:  */s/ Allison Khaskelis*

        Yisrael Hiller
        Allison Khaskelis
        yisrael.hiller@asserson.co.uk
        allison.khaskelis@asserson.co.uk
        Asserson Hiller PC
        11 Broadway, Suite 615
        New York, New York 10004
        Telephone: (212) 939-7585
        Facsimile:  (212)  939-6406

        *Attorneys for Defendant A. Meshi*
        *Cosmetics Industries Ltd.*

---

[11] Opposition, pp. 17-19 (quotation at p. 19).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2023, I served the foregoing Reply Memorandum of Law in Further Support of A. Meshi Cosmetics Industries Ltd.'s Motion for Summary Judgment on Plaintiffs by electronic mail.  I also arranged for these documents to be served on Plaintiffs via first class mail.

*/s/ Allison Khaskelis*

ALLISON KHASKELIS
Asserson Hiller P.C.
*Attorney for Defendant A. Meshi*
*Cosmetics Industries Ltd*