FILED
in the Clerk's Office
U.S. District Court,
EDNY, Brooklyn
Feb 28, 2023, 12:58 PM
Pro Se Office via Box.com

February 27, 2023

Honorable LaShann DeArcy Hall
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East, Courtroom 4H North
Brooklyn, NY 11201

Re: <i>Rosenshine v. A. Meshi Cosmetics Industries Ltd. et al</i>, Case # 1:18-cv-03572-LDH-LB

Dear Judge DeArcy Hall,

    We are writing to address Meshi's reply to our opposition to its motion for summary judgment, as the reply introduced numerous novel arguments that were not raised by Meshi in its original motion, depriving us of the opportunity to address them in our opposition. Such arguments must therefore be stricken down outright, but we would like to address them for the record as they are not only fundamentally flawed, but thoroughly misleading.

**Introduction**

    In its introduction section, Meshi has concocted an elaborate "story" lacking any factual basis, in reply to our evidence-based opposition to its motion for summary judgment.

    First, Meshi reduces the Star Gel® brand, which has been our (and our predecessors') flagship brand for almost two decades until this very day, to a "modest", insignificant operation, that our predecessors decided to simply abandon one day. Needless to say, there is not a single iota of evidence on the record to back this novel, fabricated allegation. Meshi further claims the Star Gel® brand eventually "fizzled out of the market", with the last sale occurring in October 2015, and even purports to know how much profits we and/or our predecessors have generated from our own brand. Meshi is basing all these false allegations on the partial sales record we established when we submitted the invoices we found for some of the Star Gel® sales that occurred between the years 2012 and 2015 (while declaring on the record that there were additional Star Gel® sales and sales of complementary products during this time period and beyond).

    Meshi goes on to label our (and our predecessors') customer, A to Z Import Inc. ("AZ"), as a "former" customer who decided to "reintroduce" the Star Gel® brand and reached out to Meshi to place a "small" order. All these cynical allegations, as usual, completely contradict the evidentiary record, which establishes that Meshi contacted AZ, our (and our predecessors') long-time customer, and deceived AZ into thinking Meshi is the owner of Star Gel® rather than we and/or our predecessors. Meshi further asserts its contractual relationship with us and/or our predecessors was "long over" by then, even though the contract is undeniably in force as section 7 specifies that Meshi's obligation to only produce Star Gel® for us and/or our predecessors has no time limit. Meshi's boasting about AZ's experience with the counterfeit Star Gel® as an "unexpected success" demonstrates Meshi's cynical attitude and complete disregard for our Star Gel® trademark rights.

    Meshi's own admission that our damages claim makes it more appealing for Meshi to settle this dispute rather than litigate it proves that Meshi's only goal in this litigation is to launder its criminal activities and defend its continued counterfeiting of our Star Gel® brand.

    Meshi tries to shift the evidentiary burden of proving its trademark abandonment claim to us, even though the invoices we produced clearly show we used the Star Gel® trademark in the three years prior to Meshi's sale of counterfeit Star Gel® to our customer AZ in 2016. As Meshi itself explains, the evidentiary burden in a trademark abandonment claim shifts away from the party claiming trademark abandonment only in situations where the mark has been in disuse for three years. As the invoices we

produced show the Star Gel® trademark had been in use for the past three years prior to Meshi's sale of counterfeit Star Gel® to our customer AZ, the burden of proof does not shift to us but stays with Meshi to prove its trademark abandonment claim. Meshi's assertion that we lack evidence of use of Star Gel® after October 2015, when AZ proceeded to divert sales away from our predecessors by soliciting orders and/or pre-orders for counterfeit Star Gel® and complementary products from our predecessors' customers, is cynical in and of itself and demonstrates its utter failure in proving its trademark abandonment claim.

1. **There is a strong legal and factual basis to our position that the exclusivity clause in the 2004 agreement bounds Meshi to this day**

    Meshi's claim that section 7 of the 2004 agreement only represents GMIE's alleged right to make use of the Star Gel® name contradicts section 7 itself, which deals with Meshi's obligations to GMIE, not GMIE's representations to Meshi regarding its alleged right to make use of the Star Gel® name. Specifically, the first sentence of section 7 specifies the name of the hair gel that Meshi is obliged to produce for GMIE's order, and the second sentence refers to Meshi's obligation to produce hair gel with that name (i.e., Star Gel®) exclusively for GMIE. Hence, the second sentence of section 7 cannot be associated with section 8, which deals with GMIE's representation to Meshi regarding its alleged right to make use of the Star Gel® name, not with Meshi's obligations to GMIE. Meshi is asking the Court, in effect, to help its case by repositioning the second sentence of section 7, which deals with Meshi's obligations, to section 8, which deals with GMIE's representations; or, alternatively, by creating some nonexistent association between these two unrelated, distinct clauses. Meshi's claim that the present tense in section 7 proves that it is merely a statement, as opposed to an obligation that must be set in the future tense as in the rest of the agreement, is refuted as the present tense is used throughout the entire agreement in other obligation sections (e.g., section 1 states, "buyer hereby orders"; section 5 states, "Delivery date of the merchandise to the buyer is until 10.31.2004."; etc.). This fact disproves Meshi's claim that the second sentence of section 7 is not an obligation conferred upon Meshi simply because it is written in the present tense. Evidently, in the context of the contract's language, the use of the present tense in the second sentence of section 7 cannot, on its own, be used to determine the meaning of this clause or the intent of the parties regarding its purpose.

    Meshi's claim that it had no power to confer any rights to the Star Gel® name to GMIE or anyone at all is unrelated to Meshi's obligation to produce hair gel with the Star Gel® name only for GMIE. Hence, Meshi's claim that it had no ownership of the Star Gel® trademark, and/or no knowledge or control over whether another manufacturer was already producing or would one day produce a similar product with the same name, does not relieve Meshi's obligation to produce hair gel with the Star Gel® name exclusively for GMIE. Meshi simply attempts to associate or move the second sentence of section 7, which deals with Meshi's obligation to GMIE, to section 8, which deals with GMIE's representation to Meshi regarding its alleged right to make use of the Star Gel® name, in order to mislead the Court by transforming Meshi's obligation to GMIE into GMIE's obligation to Meshi, thus distorting the original contract.

    Furthermore, Meshi's intentional distortion of the second sentence of section 7, billing it as a representation by GMIE rather than an obligation by Meshi, does not make any sense, as there would have been no need for section 8 at all had the parties meant for section 7 to serve as a representation by GMIE to Meshi regarding GMIE's rights to use the Star Gel® name. Meshi's distorted interpretation would effectively render section 8 redundant. Instead, reading the contract as a whole, the only reasonable interpretation that is plainly visible to any unbiased reader is that the second sentence of section 7 serves as Meshi's obligation to GMIE to produce Star Gel® exclusively for GMIE, and conversely, section 8 serves as GMIE's representation to Meshi regarding its alleged right to make use of the Star Gel® name. Meshi's distorted interpretation would mean that Meshi obtained from GMIE the representation it was

seeking *twice*, whereas GMIE failed to bind Meshi to produce Star Gel® exclusively for GMIE – a nonsensical proposition.

Additionally, Meshi's distorted interpretation of the exclusivity clause does not make any sense due to the fact that, back in 2004, GMIE could not claim exclusivity to the Star Gel® name, as, at that point, the name had of course not been used in commerce yet. GMIE could only represent that it was unaware of any other commercial entity's use of the Star Gel® name, as stated in section 8. Hence, the only possible interpretation of the exclusivity clause is that it is an obligation by Meshi to GMIE to produce hair gel with the Star Gel® name exclusively for GMIE without time limit. Indeed, the condition, "without time limit", could only make sense from GMIE's point of view, not from Meshi's point of view, as the contract only obligated Meshi to produce one order for GMIE, so Meshi's only concern would have been GMIE's usage rights at that point in time, not GMIE's future usage rights to the Star Gel® name. In contrast, GMIE had every interest to ensure that, after Meshi's initial sale of Star Gel® to GMIE, Meshi would not offer other buyers to manufacture Star Gel® for them (as the present litigation sorely demonstrates). Therefore, the time limit condition only makes sense when the exclusivity clause is interpreted as Meshi's obligation to GMIE, and not the other way around as Meshi wishfully proposes.

Finally, Meshi's distorted interpretation of the exclusivity clause as a representation by GMIE regarding the exclusivity it purportedly holds to the Star Gel® name by virtue of its ignorance of other commercial entities' use of the Star Gel® name as represented in section 8, makes no sense at all, as the fact that GMIE is unaware of any other entity's use of the Star Gel® name cannot confer exclusivity rights to GMIE for the Star Gel® name. Prior to ever using the mark in commerce, GMIE could only represent that it was unaware of anyone else using the mark, and it does not follow from such representation that GMIE had exclusivity rights to the mark, nor could it claim as such, never mind the fact that the agreement does not refer to any concrete support for such supposed exclusivity. The only possible conclusion, from both a logical and a legal standpoint, is that the exclusivity clause in section 7 has nothing to do with GMIE's representation in section 8, but is instead an independent condition to the agreement without which GMIE would have never entered into contract with Meshi.

Meshi's argument that we failed to show harm is directly controverted by Meshi's own admission to have sold counterfeit Star Gel® to our customer AZ, thus diverting sales from us and/or our predecessors.

2. **Meshi failed to prove that we abandoned the Star Gel® trademark**

Meshi's claim that we produced no evidence that showed we were using or intended to use the Star Gel® trademark from October 2015 and on contradicts Meshi's acknowledgment that only nonuse for at least three consecutive years constitutes "prima facie evidence of abandonment" that shifts the evidentiary burden away from the party claiming trademark abandonment. As Meshi concedes, the invoices we produced during discovery demonstrate unequivocally our usage of the Star Gel® mark within the three-year period prior to Meshi's first sale of counterfeit Star Gel® to our customer AZ. Hence, the evidentiary burden, including the burden to establish the lack of intent to resume use element of abandonment, remains with Meshi and does not shift to us. Therefore, Meshi's claim of our lack of evidence of use of the Star Gel® trademark from October 2015 and on cannot satisfy Meshi's evidentiary burden of proving we abandoned the Star Gel® trademark in October 2015, when AZ proceeded to solicit pre-orders for counterfeit Star Gel® and complementary products from our and/or our predecessors' customers, as Amir Rosenshine testified in his declaration. Meshi thereby failed to prove that we abandoned the Star Gel® trademark.

Meshi's reference to *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, claiming it demonstrates the "granting of the defendant's motion for summary judgment when the nonuse period of the unregistered trademark in question was far shorter than three years", only demonstrates Meshi's

desperation. In that case, the Court found that the plaintiff's evidence did not demonstrate use of the mark in the ordinary course of trade. The Court noted, "It is undisputed that IHE never sought or generated revenue from the services it provided under the mark.". *Intern. Healthcare Exchange v. Global Healthcare*, 470 F. Supp. 2d 365, 372 (S.D.N.Y. 2007). Hence, the defendant prevailed in that case because no use in commerce by the plaintiff was ever established, not because the plaintiff stopped using the mark for a period that "was far shorter than three years", as Meshi inexplicably claims.

Similarly, Meshi's quotation from *Imperial Tobacco Ltd., Assignee of Imperial Group PLC v. Philip Morris, Inc.* is taken wholly out of context. In that case, the Court found, "Imperial simply has proffered no viable excuse for nonuse of the mark for over five years. The prima facie case of abandonment of the mark arising from that nonuse was, therefore, not overcome.". *Imperial Tobacco v. Philip Morris, Inc.*, 899 F.2d 1575, 1583 (Fed. Cir. 1990). Whereas Imperial admitted to at least two years of nonuse (when only two years of nonuse was considered prima facie abandonment at the time), and failed to provide an explanation for its nonuse, we never claimed to stop using our Star Gel® trademark in October 2015, when AZ started to divert Star Gel® sales and sales of complementary products away from our predecessors by undercutting them on price, leading to steadily declining genuine Star Gel® sales, as testified in the declaration of Amir Rosenshine. Moreover, Meshi's claim that we did not source additional Star Gel® stock cannot serve as proof that we abandoned the Star Gel® trademark as we and/or our predecessors had plenty of Star Gel® inventory available, as attested in the declaration of Amir Rosenshine, so there was no need at all to source additional Star Gel® inventory.

Meshi did not cite any case, nor can it, that shows a trademark owner was deemed to have abandoned or intended to abandon its mark due to inability to sell as a result of a counterfeiter diverting sales by undercutting it on price. Such a determination would grant a green light to anyone who wishes to counterfeit a trademark to simply do so aggressively enough to drive the rightful owner out of the market and then claim abandonment by the owner – an absurd, cynical proposition that only a shameless, dyed-in-the-wool counterfeiter such as Meshi could have the audacity to propound.

**3.     All the rest of our assertions have ample backing**

1)  Meshi's claim that we did not provide any support for the MSRP of genuine Star Gel® and for the $27 price at which AZ is selling counterfeit Star Gel® is meritless, as we provided testimony in the form of declarations as well as screenshots of online listings showing AZ is selling the counterfeit Star Gel® at a price of $27 per unit. Meshi itself undercut us and our predecessors when it sold counterfeit Star Gel® to our customer, AZ, for $3.00 per unit, when AZ used to purchase genuine Star Gel® from our predecessors for at least $8.00 per unit, as can be seen from the invoice Meshi produced and from the invoices we produced, respectively. Needless to say, as free riders unencumbered by any marketing costs, Meshi, AZ, and the rest of our deceived customers have been able to easily undercut the genuine MSRP of $40 per unit by selling Meshi's counterfeit Star Gel® merchandise at $27 per unit to end users, and at correspondingly lower prices across all levels of distribution. Meshi is making an irrelevant and misleading comparison, comparing our and/or our predecessors' wholesale price of $10 per unit to AZ's end-user price of $27 per unit, knowing full well that there are multiple levels of resellers in the distribution channel and that the only relevant comparison that can be made between the genuine and counterfeit channels is between prices at the same level of distribution.

2)  Meshi's claim that it did not counterfeit Star Gel® because the mark was not registered when Meshi first sold counterfeit Star Gel® to our customer AZ, is meritless as Meshi not only never bothered to take any action to stop the counterfeiting operation after placing the counterfeit Star Gel® products in the stream of commerce in November 2016 (even after cease-and-desist letters were sent or the trademark was registered), but in fact continues to counterfeit the mark to this very day.

4

3)     Meshi's claim that the photos of genuine and counterfeit Star Gel® do not prove the potential for customer confusion is an empty statement. No wonder Meshi does not even bother to propose what constitutes proof of potential customer confusion.

4)     We made it abundantly clear that Meshi's counterfeit Star Gel® is being sold both online and offline to this very day and listed several examples in a footnote to demonstrate our point, including an example of a retailer based in New York. These examples by no means represent an exhaustive list of all the channels at which Meshi's counterfeit Star Gel® is currently being offered for sale, as Meshi is well aware. There is no point in generating an exhaustive list of all channels where counterfeit Star Gel® merchandise is currently being sold, as naturally such channels change frequently as various retailers sell out and new ones appear. Meshi's claim that it does not know the journey of its counterfeit Star Gel® units after placing them in the stream of commerce does not absolve it of liability for the counterfeiting operation it has spearheaded and continues to run. Meshi's claim that our listed examples have no effect on the New York market is meritless as all online listings are obviously available for sale across the U.S., including New York.

5)     Meshi's claim that it has no control over sales of 6-year-old Star Gel® serves as proof that Meshi cannot invalidate our and/or our predecessors' Star Gel® inventory in 2015 and beyond on the basis that it was more than three years old and thus supposedly unfit for sale.

6)     Meshi's claim that AZ was not deceived by Meshi is utterly cynical. By selling counterfeit Star Gel® merchandise to our and/or our predecessors' long-time customers, including AZ, Meshi has convinced these customers that we and/or our predecessors had never been the true owners of the Star Gel® brand, just mere distributors of a brand owned by Meshi itself. The reputational and credibility damage we and our predecessors sustained as a result of this brazen deception has been enormous, not to mention the emotional distress we and our predecessors experienced as a result of the derision we had to endure from our own deceived customers. Hence, Meshi's admission of selling counterfeit Star Gel® to AZ is the ultimate proof of actual customer confusion, coming from none other than the perpetrator itself.

7)     Unlike *Monbo v. Nathan*, where the acts of infringement occurred prior to registering the mark, Meshi's acts have continued past the trademark registration date and Meshi has never bothered to take any action to stop or reverse its counterfeiting operation, even after the trademark was registered. Meshi's claim that it only sold counterfeit Star Gel® merchandise one time before the trademark registration date, a claim we vehemently deny based on the evidence, cannot save it, as Meshi has never pointed to any case where the mastermind of a counterfeiting operation was determined to be immune from liability, simply because it placed the counterfeit merchandise in the stream of commerce before the trademark registration date, not to mention when said mastermind had been intimately familiar with the trademark it deliberately counterfeited since well before its official registration date, as Meshi had been. Meshi surely must be held accountable, jointly and severally, for any sales of its counterfeit merchandise that occur after the trademark registration date by other actors in the counterfeiting operation chain that it conceived.

    For the foregoing reasons, as well as all the reasons adduced in our opposition, we respectfully request that the Court deny Meshi's motion for summary judgment in its entirety, and award us other or further relief as this Court may deem just and proper, including costs and attorneys' fees.

Respectfully submitted,

                                         */s/ Oren Rosenshine*    */s/ Amir Rosenshine*
                                           Oren Rosenshine     Amir Rosenshine