UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

OREN ROSENSHINE AND AMIR
ROSENSHINE,

                    Plaintiffs,

      v.

A. MESHI COSMETICS INDUSTRIES LTD., A
TO Z IMPORT INC., AND EYAL NOACH,

                    Defendants.

**MEMORANDUM AND ORDER**
18-cv-3572 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

Oren Rosenshine and Amir Rosenshine ("Plaintiffs"), proceeding pro se, bring the instant action against Defendants A. Meshi Cosmetics Industries Ltd. ("Meshi"), A to Z Import Inc. ("A to Z"), and Eyal Noach, asserting claims pursuant to the Lanham Act and New York state laws. (Amended Complaint ("Am. Compl."), ECF No. 32.)  Meshi moves pursuant to Rule 56.1 of the Federal Rules of Civil Procedure for summary judgment to dismiss Plaintiffs' amended complaint in its entirety.

## STATEMENT OF UNDISPUTED FACTS[1]

This dispute arises from Plaintiffs' purported trademark rights to "Star Gel" hair care product.  Meshi is an Israeli cosmetics company.  (Pls.' Resp. to Def. A. Meshi Cosmetics Industries LTD's Statement of Undisputed Material Facts ("Pls.' 56.1 Resp.") ¶¶ 1-2, ECF No. 94.)  Global Manufacturing Import Export Inc. ("GMIE") was a company specializing in

---

[1] The foregoing facts are undisputed unless otherwise noted.  Further, facts that were not contradicted by citations to admissible evidence are deemed admitted.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

importing foreign cosmetics into the United States for sales to distributors and retail customers. (*Id.* ¶ 6.) Meshi and GMIE entered an agreement on October 4, 2004 (the "Agreement"), pursuant to which Meshi agreed to manufacture 2,000 units of a jojoba hair gel for GMIE at the price of $2.45 per unit, for a total payment of $4,900. (Am. Compl., Exs. 2-3 ¶ 9.)[2] The Agreement also affixed a label with the "Star Gel" mark and stated: "The name of the gel will be Star Gel according to the logo that was recently sent and hereby attached. Buyer has exclusivity on this name without time limit." (*Id.* ¶ 7.) From 2004 to 2012, Meshi supplied approximately $10,000 worth of Star Gel to GMIE annually. (Pls.' 56.1 Resp ¶ 10.) Neither Plaintiffs nor their predecessors in interest ordered any Star Gel from Meshi after 2012. (*Id.* ¶ 11.) In fact, Meshi did not sell any Star Gel after 2012 until it was approached by A to Z in fall 2016. (*Id.* ¶ 27.)[3]

Following negotiations, Meshi sold 3,600 Star Gel units to A to Z in November 2016 for $10,800. (*Id.* ¶ 34; Decl. of Allison Khaskelis ("Khaskelis Decl.") Ex. 9, ECF No. 92-11.) In doing so, Plaintiffs claim that Meshi supplied A to Z with "counterfeit" versions of Star Gel that "have been circulating on the market past the trademark registration date." (Reply Def. A. Meshi Cosmetics Indstrs., LTD ("Def.'s 56.1 Resp.") ¶¶ 10, 13, ECF No. 95.)[4] On May 8, 2017,

---

[2] Although the Agreement was written in Hebrew, (Am. Compl., Ex. 2), Plaintiffs attach a translated version to their Amended Complaint, (Am. Compl., Ex. 3.)

[3] In disputing this and many other facts proffered by Meshi, Plaintiff relies on declarations submitted by Oren and Amir Rosenshine. (Pls.' Stmnt. Add'l Facts, Ex. 1, ECF No 94.) Plaintiffs, however, cannot simply point to their own declarations to place a fact in dispute. *See Pressley v. City of New York*, No. 11-cv-03234, 2016 WL 1271480, at *3 (E.D.N.Y. Mar. 31, 2016) ("[A] self-serving affidavit that merely reiterates conclusory allegations in affidavit form and is ... insufficient to preclude summary judgment."); *Petrisch v. HSBC Bank USA, Inc.*, No. 07-cv-3303, 2013 WL 1316712, at *10 (E.D.N.Y. Mar. 28, 2013) ("[I]t is well established that a self-serving affidavit that merely reiterates conclusory allegations in affidavit form is insufficient to preclude summary judgment.") (collecting cases). Accordingly, where Plaintiffs dispute facts based on their own declaration, the Court deems such facts admitted.

[4] Plaintiffs received rights under the Agreement through various assignments. In 2014, GMIE transferred rights to the "Star Gel" mark to International Grooming, Inc. ("International Grooming"), which was run by Plaintiffs and

Plaintiffs' predecessors in interest applied to the U.S. Patent and Trademark Office ("USPTO") to register the Star Gel mark for the first time. (*Id.* ¶ 39.) USPTO registered the Star Gel trademark on December 19, 2017. (*Id.*)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).

Where the non-movant bears the burden of proof at trial, the movant's initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *See Celotex Corp.*, 477 U.S. at 325. "But where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis omitted) (quoting W. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)); *see also Leone v. Owsley*, 810 F.3d 1149, 1153-54 (10th Cir. 2015) (collecting cases).

---

their sister. (Pls.' 56.1 Resp. ¶ 7.) On January 31, 2018, International Grooming assigned rights to the Star Gel trademark to Plaintiffs' father, who assigned the rights to Plaintiffs on January 1, 2019. (*Id.*)

Once the movants meets their initial burden, the non-moving party may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

Finally, "[i]t is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," though "the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Pierre v. City of New York*, 531 F. Supp. 3d 620, 624-25 (E.D.N.Y. 2021) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

## DISCUSSION

### 1. Trademark Counterfeiting Under the Lanham Act

Section 32 of the Lanham Act provides that any person who uses a counterfeit or reproduction of a registered mark in commerce, without the consent of the registrant, shall be liable to the registrant for trademark infringement. 15 U.S.C. § 1114(1). Critically, Section 32(1) makes plain that liability may only arise in connection with the counterfeit of a registered trademark. *Sojuzplodoimport v. Spirits Int'l B.V.*, 726 F.3d 62, 72 (2d Cir. 2013); *Monbo v. Nathan*, 623 F. Supp. 3d 56, 115 (E.D.N.Y. 2022). That is, unregistered trademarks are not afforded protection under Section 32. It is axiomatic, therefore, that to recover for trademark counterfeiting, a plaintiff must demonstrate that the alleged counterfeiting occurred after a mark was registered. *Monbo*, 623 F. Supp. 3d at 115 ("[C]ourts in this Circuit and others have held

4

that a plaintiff cannot recover for infringement of a registered mark based on conduct that occurred prior to the plaintiff's registration of its mark.") (collecting cases). Meshi argues that Plaintiffs fail to adduce any such evidence and the claim for trademark counterfeiting must be dismissed as a matter of law. (Mem. L. Supp. A. Meshi Cosmetics Indsts. LTD.'s Mot Sum. J. ("Def.'s Mem.") at 18, ECF No. 99-1.) The Court agrees.

There is no dispute that Plaintiffs applied to register the Star Gel trademark with USPTO, which registered the mark on December 19, 2017. (Pls.' 56.1 Resp. ¶ 39.) Accordingly, to hold Meshi liable for counterfeiting the Star Gel mark, Plaintiffs must adduce some evidence that Meshi's conduct occurred sometime thereafter. *Monbo*, 623 F. Supp. 3d at 115. Meshi argues that Plaintiffs have not and cannot adduce such evidence. This is so, according to Meshi, because the only evidence in the record on this point demonstrates that Meshi's single sale of 3,600 Star Gel units to A to Z took place in November 2016, at which time the mark was unregistered. (Def.'s Mem. at 17-18.) In opposition, Plaintiffs directs the Court to certain online listings of Meshi's counterfeit hair gel resembling the Star Gel mark sold through Amazon, Walmart, and eBay. (Pls.' Opp. A. Meshi Cos. Indstrs. Ltd.'s Mot. Sum. J. ("Pls.' Mem.") at 17-19, ECF No. 100; Pls.' 56.1 Resp. ¶ 41; ECF No. 99-15.) These listings, however, are undated and fail to establish whether they post-date Plaintiffs' registration in 2017.

Moreover, even if Plaintiffs had demonstrated that the online listing post-dated their registration—again, which they have not—Plaintiffs failed to attribute the listings to Meshi. Plaintiffs' bare assertion that "Meshi is the one who knowingly put the counterfeit Star Gel[] merchandize into the stream of commerce" through its 2016 sale to A to Z is simply not enough. (Pls.' Mem. at 18.) Plaintiffs must adduce evidence that Meshi made the online sales, which here they have not. S*ee BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508,

5

521 (S.D.N.Y. 2019) (observing that "the fundamental questions in determining liability in counterfeiting cases is whether the items at issue are, in fact, counterfeit and *whether Defendants sold those items*") (emphasis added and alteration omitted); *see also Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010) (finding that eBay's use of Tiffany's mark did not constitute direct trademark infringement where "eBay did not itself sell counterfeit Tiffany goods; only the fraudulent vendors did"). From the record, Meshi's only sale of Star Gel was in 2016, which predates Plaintiffs' registration of the mark and falls outside the scope of Section 32(1). *Monbo*, 623 F. Supp. 3d at 115. The Court therefore grants Meshi's motion for summary judgment as to Plaintiffs' trademark counterfeiting claim.

### 2. Trademark Infringement Under the Lanham Act and New York Law

Even though Plaintiffs did not register the mark until 2017, that does not preclude Meshi's liability under the Lanham Act. Both registered and unregistered trademarks are afforded protection against infringement under Section 43(a) of the Lanham Act. *Fed. Treasury Ent. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013). To prevail on an unregistered trademark claim, a plaintiff must establish that it has a valid trademark entitled to protection and that the defendant's use of the mark is likely to cause confusion with Plaintiffs mark. *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997). "Preliminary to making this showing, however, a plaintiff must demonstrate its own right to use the mark . . . in question." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007)). Of particular relevance, a plaintiff cannot establish the requisite right to use the mark where the mark has been abandoned. *See Pado, Inc. v. SG Trademark Holding Co. LLC*, 527 F. Supp. 3d 332, 341 (E.D.N.Y. Mar. 22, 2021). Meshi argues that such is the case here. (Def.'s Mem. at 19.) Not so.

"To establish abandonment under 15 U.S.C. § 1127, an alleged infringer must establish both (i) 'non-use of the [mark] by the legal owner,' and (ii) 'no intent by that person or entity to resume use in the reasonably foreseeable future.'" *Pado,* 527 F. Supp. 3d at 341 (quoting *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 169 (2d Cir. 2016)). "Use" in this context means the "bona fide use of a mark made in the ordinary course of trade." *Id.*[5]

Here, there is no dispute that Plaintiffs did not successfully supply, market, or sell Star Gel from October 2015 to November 2016. Meshi contends further that Plaintiffs did not intend to do so and directs the Court to Oren Rosenshine's testimony before Magistrate Judge that "after 2015 there is no Star Gel." (Khaskelis Decl., Ex. 8, 19:1.) For this reason, Meshi maintains that the Court should deem the Star Gel mark abandoned. (Def.'s Mem. at 19.) Read in the context of the question posed, however, Oren Rosenshine appears to be saying there are no Star Gel *invoices* after 2015. (Khaskelis Decl., Ex. 8, 18:16-24) (asking Plaintiffs about the invoices they produced to Meshi—"Were the invoices for January 2012 through today?"). At most, Plaintiffs' testimony concedes that Plaintiffs had no invoices dated after 2015 because they never sold Star Gel after that date, not that Plaintiff had no Star Gel or ceased efforts to sell it. Indeed, "[a] plaintiff does not abandon a mark just because it has not succeeded in selling the product featuring the trademark." *Int'l Stamp Art Inc. v. U.S. Postal Serv.*, No. 1:02-CV-2459, 2005 WL 3947951, at *6 (N.D. Ga. May 27, 2005), *aff'd*, 456 F.3d 1270 (11th Cir. 2006).

Moreover, even if the Court was convinced that Plaintiffs made no effort to sell Star Gel between October 2015 and November 2016, this 13-month period falls far short from the statutory presumption of nonuse after three years. *See* 15 U.S.C. § 1127; *Total Control Apparel,*

---

[5] Pursuant to 15 U.S.C. § 1127, three years' consecutive non-use of a trademark "shall be prima facie evidence of abandonment." *Ducon Env't Sys. Inc. v. Delta Conveying, Inc.*, No. 98-CV-0466, 2000 WL 270976, at *5 (E.D.N.Y. Mar. 8, 2000). Because Meshi concedes that the non-use period here is October 2015 to November 2016—*i.e.* less than three years—the burden remains on Meshi to prove abandonment. (Def.'s Mem. at 19.)

7

*Inc. v. DMD Int'l Imports, LLC*, 409 F. Supp. 2d 403, 410 (S.D.N.Y. 2006) (no abandonment where "[t]his nonuse does not approach the three years necessary to establish prima facie abandonment"); *see also Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1169 (11th Cir. 2002) (no abandonment of trademark for radio station brand after 13 months' alleged nonuse). Perhaps cognizant of this fact, Meshi directs the court to *Int'l Healthcare Exch. v. Global Healthcare Exch.*, where the Southern District of New York found no "use in commerce" after two years. (Def.'s Mem. at 19); 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007). But the court there did not address abandonment. Ultimately, the court there concluded that it was not satisfied that "a handful of presentations, seminars and lectures" constituted the requisite use to even establish trademark rights. *Int'l Healthcare*, 470 F. Supp. 2d at 371. In contrast, here, Meshi does not contend—nor could it—that Plaintiffs' sale of Star Gel before October 2015 does not constitute "use" within the meaning of the statute. Meshi's abandonment argument relies exclusively on the 13-month period of purported non-use, which this Court finds insufficient to deem abandoned.

Having refused to find the mark abandoned, the Court would typically move on to consider whether Meshi's use of its mark would likely cause confusion with Plaintiffs' mark. *See RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, 527 F. Supp. 3d 305, 316 (E.D.N.Y. 2021). In making this determination the Court is advised to consider what are dubbed the "*Polaroid* factors", which include "(1) strength of plaintiff's mark; (2) similarity of competing marks; (3) competitive proximity of the products; (4) likelihood that plaintiff will bridge the gap between the markets in which the products are sold; (5) actual confusion; (6) defendant's good faith in adopting the mark; (6) quality of defendant's product; and (8) sophistication of the buyers." *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188,

8

205 (E.D.N.Y. 2007) (quoting *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).

Unfortunately, Meshi fails altogether to address these factors. Instead, Meshi relies entirely on the argument that Plaintiffs abandoned the mark. (Def.'s Mem. at 18-19.) Without sufficient briefing on the subject, the Court declines to reach the question of confusion, thereby precluding summary judgment as to Plaintiffs' trademark infringement claim. *See S&L Vitamins*, 521 F. Supp. 2d at 206 ("The parties have not sufficiently addressed the *Polaroid* factors to enable the Court to make a determination, as a matter of law, that there is no likelihood of confusion."); *Fraga v. Smithaven MRI*, 866 F. Supp. 107, 113 (E.D.N.Y. 1994) (denying motion for summary judgment "because neither party has presented any evidence relating to the seventh or eighth factors" and "the Court cannot at this time undertake a complete analysis of the *Polaroid* factors"). And, as Meshi correctly notes, the elements necessary to prevail on trademark infringement under New York common law mirror the Lanham Act claims. (Def.'s Mem. at 19); *see Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014). Accordingly, the Court denies Meshi's motion for summary judgment as to Plaintiffs' federal and state law infringement claims.

### 3. False Designation of Origin Under the Lanham Act

Section 43 of the Lanham Act provides for liability where a person in connection with any goods:

> "uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services or commercial activities by another person . . . ."

9

15 U.S.C. § 1125(a)(1). "The false designation of origin provision has 'two purposes: to prevent consumer confusion and to protect the synonymous right of a trademark owner to control his product's reputation.'" *City of New York v. Blue Rage, Inc.,* 435 F. Supp. 3d 472, 485 (E.D.N.Y. 2020) (quoting *Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 445 (S.D.N.Y. 2014)). Like Section 32 claims for trademark infringement, false designation of origin claims require application of the *Polaroid* factors to determine whether the trademark's use "is likely to cause confusion." *Greenpoint Fin. Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405, 414 (S.D.N.Y. 2000) ("The *Polaroid* factors, which are used to evaluate confusion in infringement cases, are also applicable in cases under 43(a).") Therefore, as with Plaintiffs' infringement claim, the Court denies summary judgment because the parties have not fully briefed the *Polaroid* factors.

    **4. Trademark Dilution Under the Trade Dilution Revision Act**

    Pursuant to the Trade Dilution Revision Act ("TDRA"):

> "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."

15 U.S.C.A. § 1125(c). "Thus, to prevail on a claim under the TDRA, a plaintiff must establish that: (1) the senior mark is famous; (2) the defendant is making use of the junior mark in commerce; (3) defendant's use of the junior mark began after the senior mark became famous; and (4) a likelihood of dilution." *Walker Wear LLC v. Off-White LLC*, 624 F. Supp. 3d 424, 429 (S.D.N.Y. 2022) (internal quotation marks omitted). "[T]he element of fame is the key ingredient because, among the various prerequisites to a dilution claim, the one that most narrows the universe of potentially successful claims is the requirement that the senior mark be

truly famous before a court will afford the owner of the mark the vast protections of the TDRA." *Id.* (citing *Savin*, 391 F.3d at 449). Here, Meshi argues that Plaintiffs have not established that the Star Gel mark was famous. (Def.'s Mem. at 21.) The Court agrees.

Courts "generally have limited famous marks to those that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public." *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F. Supp. 3d 675, 702 (S.D.N.Y. 2014). For example, the Second Circuit found that "Dupont, Buick, or Kodak" exemplify famous marks because they "are marks that for the major part of the century have been household words throughout the United States." *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 99 (2d Cir. 2001). This district deemed the name "James Van Praagh" famous because he "is recognized worldwide for the alleged psychic services he provides, which involves publishing books and appearing on widely syndicated television shows and at large conferences throughout the United States." *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 305 (E.D.N.Y. 2014). Likewise, the Southern District of New York deemed the "DIESEL" mark famous where "Plaintiffs have generated an average of over $129 million in sales of apparel featuring one or more of the DIESEL marks per year in the United States over the past ten years." *Diesel S.p.A. v. Diesel Power Gear, LLC*, No. 1:19-CV-9308-MKV, 2022 WL 956223, at *16 (S.D.N.Y. Mar. 30, 2022). The examples go on.

Here, by contrast, Plaintiffs have failed to produce any evidence to prove the Star Gel mark is similarly famous. Based on the invoices provided, Plaintiffs sold a sum total 2,131 units of Star Gel between January 2013 and October 2015, almost all of which in the New York City area, for $19,812 in total revenue. (Khaskelis Decl., Ex. 7.) These low sales figures, combined with the niche market, hardly make the Star Gel mark "famous."

11

Plaintiffs argue that the invoices paint an incomplete picture as to their sale of Star Gel and that additional invoices exist, which Plaintiffs "could not locate . . . before the end of discovery." (Pls.' Mem. at 21; Pls.' 56.1 Resp. ¶ 18.)  But the Court is limited to the evidence on the record.[6]  The Court therefore grants Meshi's motion for summary judgment as to Plaintiffs' dilution claim under the TDRA.

Plaintiffs' state law dilution claim, however, warrants a different result.  "Unlike federal trademark dilution law . . . New York's trademark dilution law does not require a mark to be 'famous' for protection against dilution to apply." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009) (citing 15 U.S.C. § 1125(c) and N.Y. Gen. Bus. Law § 360–l).  Instead, "[t]o prevail on a claim under section 360–1 of the New York General Business Law, *first*, the plaintiff's trademark must be distinctive and *second*, the plaintiff must show a likelihood of dilution." *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 381 (S.D.N.Y. 2008).  Because Meshi does not address those elements of N.Y. Gen. Bus. Law § 360–l, the Court denies Meshi's motion for summary judgment as to Plaintiffs' state law dilution claim.

### 5. False Advertising Under the Lanham Act and New York Law[7]

To establish a false advertising claim under the Lanham Act, Plaintiffs "must show that the challenged statements were (1) false, (2) made in connection with commercial advertising or promotion, (3) material (that is, likely to influence purchasing decisions), (4) placed in interstate

---

[6] Indeed, Plaintiffs have had over *five years* since commencement of this action to track down these mystery invoices.  *See* (Khaskelis Decl., Ex. 8, 19:9-11) (The Court:  "Mr. Rosenshine, you've had four years to collect documents. Why would any more time be fruitful here?").  And, as discussed earlier, Plaintiffs appear to contradict their position that more invoices exist by expressly stating otherwise at the discovery conference.  (*Id.* 19:1) ("after 2015 there is no Star Gel").

[7] Plaintiffs purport to bring Lanham Act claims for both false advertising and unfair competition.  (Am. Compl. ¶¶ 89-98.)  Under Section 43 of the Lanham Act, "there is no specific Federal cause of action for unfair competition." *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272 (E.D.N.Y. 2014).  Accordingly, "the Court dismisses the Plaintiff's unfair competition claim under the Lanham Act as duplicative of the Plaintiff's trademark infringement and false advertising claims under that statute." *Id.*

12

commerce; and (5) that they were injured by the false statement." *SourceOne Dental, Inc. v. Patterson Companies, Inc.*, 328 F. Supp. 3d 53, 61 (E.D.N.Y. 2018) (citing 15 U.S.C. § 1125(a) and *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001)). To establish falsity, Plaintiffs "may demonstrate either 'that the challenged advertisement is literally false, *i.e.*, false on its face,' or that the advertisement, 'while not literally false, is nevertheless likely to mislead or confuse consumers.'" *Id.* (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)). Meshi argues that Plaintiffs' false advertising claim should be dismissed as a matter of law because Plaintiffs have failed to identify any portions of the A to Z label that are false. (Def.'s Mem. at 22.) The Court agrees.

Certainly, the labels on Plaintiffs' and A to Z's hair gel products are strikingly similar. (Am. Compl. Ex. 5.) In fact, the only difference appears omission of the trademark (™) symbol and inclusion of the A to Z branding. (*Id.*) In resisting summary judgment, Plaintiffs simply repeat their claim that the A to Z packaging uses the Star Gel name. (Pls.' Mem. at 21.) But false advertising is not a trademark infringement claim. *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 212 n.12 (D.D.C. 2014) (observing that "[a]lthough false advertising is proscribed within the same section of the Lanham Act as trademark infringement, it involves separate elements that require independent analysis"). But Plaintiffs fail to identify how the A to Z label is somehow "false," which proves fatal to their false advertisement claim. *See Howard v. Lowe's Home Centers*, *LLC*, 306 F. Supp. 3d 951, 960 (W.D. Tex. 2018) (granting summary judgment where plaintiff "failed even to identify an advertisement she believes to be false, much less provided evidence to establish the other elements of a false advertising claim").

13

Even if Plaintiffs had established falsity, Plaintiffs' false advertising claim would nonetheless be ripe for dismissal because Plaintiffs fail to demonstrate how the purportedly false statements are "material." That is, to maintain a claim for false advertising, in addition to falsity, the plaintiff must also plausibly allege materiality, i.e., "that the false or misleading representation involved an inherent or material quality of the product." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 56 (2d Cir. 2022) (quoting *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016)). Put differently, Plaintiffs bear the burden of showing that "the allegedly false or misleading representation . . . was likely to influence purchasing decisions." *Apotex*, 823 F.3d 51, 68 (2d Cir. 2016) (internal quotation marks and citations omitted). Here, even if the A to Z label falsely suggested that A to Z held trademark rights to Star Gel, that alone does not affect the "inherent or material quality of the product." *Int'l Code Council*, 43 F.4th at 56. Further, "there is no record evidence that this inaccuracy would dissuade consumers from purchasing" the Star Gel brand hair gel that Plaintiffs claim they were attempting to sell. *Apotex*, 823 F.3d at 68 (affirming summary judgment for false advertisement claim where plaintiff's evidence "does not reveal anything about the impact on consumers' purchasing decisions"). The Court therefore grants Meshi's motion for summary judgment as to Plaintiff's false advertisement claim under the Lanham Act. [8]

Turning to Plaintiffs' state law claim, Meshi is correct that "[t]he New York common law claim for unfair competition is even more demanding than a claim under the Lanham Act." (Def.'s Mem. at 23.) "To establish a claim for common law unfair competition [under New

---

[8] Meshi also argues that Plaintiffs fall outside the "zone of interest" by having no commercial interest in the reputation or sales of the alleged counterfeit products. (Def.'s Mem. at 22.) However, the "zone of interest" requirement is one of standing, which the Court already resolved in ruling on Meshi's motion to dismiss. (ECF No. 51 at 16); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014) ("The zone-of-interests test is therefore an appropriate tool for determining who may invoke the cause of action in § 1125(a).").

14

York law], 'the plaintiff must state a Lanham Act claim coupled with a showing of bad faith or intent.'" *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F Supp 3d 137, 157 (E.D.N.Y. 2016).  Because the Court finds that Plaintiffs' false advertising claim under the Lanham Act does not survive summary judgment, the Court also grants Meshi's motion for summary judgment as to Plaintiffs' "more demanding" analog claim under New York law.

### 6. Common Law Contributory Trademark Infringement

"Contributory trademark infringement is a judicially created doctrine derived from the common law of torts that typically applies to manufacturers and distributors of goods." *Ferring B.V. v. Fera Pharms., LLC*, No. CV 13-4640 SJF AKT, 2015 WL 4623507, at *7 (E.D.N.Y. July 6, 2015), report and recommendation adopted, No. 13-CV-4640 SJF AKT, 2015 WL 4611990 (E.D.N.Y. July 31, 2015) (internal quotation marks omitted).  "To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Monbo*, 623 F. Supp. 3d at 126 (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013)).

Meshi argues that Meshi never induced A to Z to sell any Star Gel.  (Def.'s Mem. at 23.)  The Court agrees.  Meshi's declaration—as corroborated by the emails provided by Plaintiffs—demonstrate that a representative from A to Z first contacted Meshi about the purchase of Star Gel.  (Rosenshine Decl., Ex. 2; Khaskelis Decl., Ex. 1 ¶¶ 33-35.)  Meshi, therefore, did not "induce" A to Z into infringing on Plaintiffs' alleged trademark interest.  Plaintiffs respond that Meshi's 2016 sale "constitutes inducement as Meshi was familiar with Plaintiffs' Star Gel" and that Meshi "continued to supply" Star Gel after the sale with A to Z. (Pls.' Mem. at 22-23.)  But there is no evidence on the record beyond Plaintiffs' speculation that Meshi continued supplying Star Gel after the one-time sale with A to Z, which A to Z initiated.  Accordingly, the Court

15

grants Meshi's motion for summary judgment as to Plaintiffs' claim for contributory trademark infringement.

### 7. Tortious Conspiracy Under New York Law

Under New York law, "a mere conspiracy to commit a tort is never of itself a cause of action," but a plaintiff may make allegations of conspiracy "to connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (N.Y. 1986) (internal citations and quotes omitted); *accord Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). Meshi argues that Plaintiffs cannot maintain a claim for tortious conspiracy because Plaintiffs have failed to establish a primary tort. (Def.'s Mem. at 24.) The Court agrees.

Although Plaintiffs fail to define the "otherwise actionable tort" here, the Court—as it did in denying Meshi's motion to dismiss on this claim—infers that Plaintiffs complain of a "conspiracy" between Meshi and A to Z in connection with the alleged trademark infringement. (ECF No. 51 at 21-22.) Plaintiffs' opposition brief supports this inference by focusing on "Meshi's sale of counterfeit Star Gel[] to AZ." (Pls.' Mem. at 24.) As discussed, however, the record demonstrates that A to Z first contacted Meshi, which sold Star Gel without referencing Plaintiffs' purported trademark rights. (Rosenshine Decl., Ex. 2, ECF No. 92-9; Khaskelis Decl., Ex. 1 ¶¶ 33-35.) Plaintiffs respond that Meshi's sale with A to Z "demonstrates a tort by diverting Star Gel[] sales from Plaintiffs." (Pls.' Mem. at 24.) But there is no evidence "connect[ing] the actions of" A to Z "with an otherwise actionable tort. *See Alexander*, 68 N.Y.2d at 969. The Court therefore grants Meshi's motion for summary judgment as to Plaintiffs' claim for tortious conspiracy.

### 8. Breach of Contract Under New York Law

Under New York law, "[t]he elements of a breach of contract claim under New York law are: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and[ ] (4) damages resulting from the breach." *Fersel v. Paramount Med. Servs., P.C.*, 588 F. Supp. 3d 304, 314 (E.D.N.Y. 2022) (internal quotation marks omitted). "The question for the court on a motion for summary judgment in a contract case is 'whether the contract is unambiguous with respect to the question disputed by the parties.'" *Id.* (quoting *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010)).

*First*, Meshi argues it cannot breach the Agreement because no valid contractual relationship between the Plaintiff/their predecessors in interest and Meshi existed in the fall of 2016, when Meshi made a one-time sale to A to Z, and there had been no commercial dealings between Meshi and Plaintiffs' predecessors since 2012. (Def.'s Mem. at 25.) The Court rejects this argument. The Agreement was entered in 2004 between Meshi and GMIE, which transferred its rights to the mark to International Grooming, which transferred its rights to Plaintiffs' father, who assigned the rights to Plaintiffs. (Pls.' 56.1 Resp. ¶ 7.) As discussed in the Court's opinion denying Meshi's motion to dismiss this claim, "the Agreement here did not contain an anti-assignment provision," so the Court declines to grant summary judgment on this ground. (ECF No. 51 at 13.)

*Second*, Meshi argues that Paragraph 7 of the Agreement "is merely a statement and not a conferral of any obligation on Meshi." (Def.'s Mem. at 25.) Plaintiffs respond that this argument is contradicted by the Agreement itself. (Pls.' Mem. at 24.) The Court agrees with Plaintiffs. The Agreement, while short, plainly confers several obligations on Meshi. For example, the Agreement dictates the price, quantity, color, and branding of the Star Gel

17

purchased. (Am. Compl., Ex. 3 ¶ 7.) Just the same, a reasonable jury could find that Paragraph 7 of the Agreement—which granted the buyer "exclusivity" to the Star Gel name—in turn conferred an obligation for Meshi *not* to affix the Star Gel name to its own hair gel products. (*Id.*) Or, at a minimum, there is a question of material fact for the jury to resolve. *See United States for Use of N. Maltese and Sons, Inc. v. Juno Const. Corp.*, 759 F.2d 253, 255 (2d Cir. 1985) ("It is hardly necessary to cite authority for the proposition that whether there has been a breach of contract is a question of fact."). Thus, the Court denies Meshi's motion for summary judgment as to Plaintiffs' breach of contract claim.[9]

## CONCLUSION

For the foregoing reasons, Meshi's motion for summary judgment is GRANTED as to Plaintiffs' claims for trademark counterfeiting, trademark dilution under the Lanham Act, unfair competition and false advertising under the Lanham Act, contributory trademark infringement, and tortious conspiracy. Meshi's motion for summary judgment is DENIED as to Plaintiffs' claims for trademark infringement, false designation of origin, trademark dilution under New

---

[9] Meshi also appears to argue that—if the Agreement is read to confer an obligation as to the trademark's transferal—then the Agreement is an impermissible contract in perpetuity. (Defs'. Mem. at 25.) The Court rejects this argument. Although New York law generally disfavors contracts in perpetuity, *Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc.*, 178 F. Supp. 655 (S.D.N.Y. 1959), *aff'd*, 280 F.2d 197 (2d Cir. 1960), a written contract "is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir.1992). Here, Paragraph 7 of the Agreement plainly states that "Buyer has exclusivity on this name without time limit." (Am. Compl., Ex. 3 ¶ 7.) Because the Agreement expressly provides for Buyer to have exclusivity as to the Star Gel name "without time limit," the Court declines to contravene the parties' intentions by rewriting a durable term into the Agreement. *See P.C. Films Corp. v. Turner Ent. Co*., 954 F. Supp. 711, 716 (S.D.N.Y. 1997), *aff'd on other grounds sub nom. P.C. Films Corp. v. MGM/UA Home Video Inc.*, 138 F.3d 453 (2d Cir. 1998) (finding that the parties intended for an agreement "to convey perpetual distribution rights, i.e. rights that last forever"). Meshi also argues that Plaintiffs' breach of contract claim fails because Plaintiffs have failed to evince any damages, but Meshi's one-time sale of Star Gel amounts to Plaintiffs' minimum damages if Plaintiffs prove they maintained rights to the Star Gel trademark at the time.

York law, and breach of contract. The Clerk of Court is respectfully directed to mail a copy of this order to the pro se litigants.

                                                SO ORDERED.

Dated: Brooklyn, New York                 /s/ LDH
       October 3, 2023                     L<small>A</small>SHANN D<small>E</small>ARCY HALL
                                          United States District Judge