UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

OREN ROSENSHINE AND AMIR ROSENSHINE,

                       Plaintiffs,

    -against-

A. MESHI COSMETICS INDUSTRIES LTD., A TO Z
IMPORT INC., AND EYAL NOACH,

                       Defendants.
------------------------------------------------------------------X

**REPORT & RECOMMENDATION**

18-CV-3572 (LDH) (SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

      Plaintiffs Oren Rosenshine and Amir Rosenshine ("Plaintiffs"), who are proceeding *pro se*, filed this action on June 18, 2018, asserting claims under the Lanham Act, 15 U.S.C. §§ 1114, 1125 and New York state law against Defendants A. Meshi Cosmetics Industries LTD ("Meshi" or "Defendant Meshi"), A to Z Import Inc., and Eyal Noach.  On April 18, 2025, after nearly seven years of litigation, the Plaintiffs and Meshi agreed to a settlement on the record.  *See* Redacted Transcript of Proceedings on April 18, 2025 ("Redacted Transcript"), Dkt. No. 157; Minute Entry dated April 18, 2025.  As is typical when settlements are reached on the record, the parties planned to reduce their agreement to writing but agreed that the oral settlement was binding.  Later, Plaintiffs and Meshi could not agree on the specific language of a release of claims associated with the settlement.  *See* Dkt. No. 159; Order dated Sept. 8, 2025.

      Presently before the Court is Defendant Meshi's Motion to Enforce the settlement, arguing that notwithstanding the parties' disagreement on the specific wording of a release, the settlement is enforceable.  *See* Defendant's Motion to Confirm and Enforce Allocuted Settlement ("Mot. to Enforce"), Dkt. No. 161-163.  Plaintiffs oppose, arguing that the settlement is not enforceable

1

absent an agreement on the specific terms of the written release. *See* Plaintiffs' Opposition to Defendant's Mot. to Enforce ("Pls.' Opp'n"), Dkt. No. 166, Ex. A. For the reasons outlined below, the undersigned respectfully recommends that Defendant Meshi's Motion to Enforce be GRANTED, that Meshi be ordered to pay Plaintiffs the amount agreed to on the record, and that all claims against Meshi be dismissed with prejudice.

## BACKGROUND

### I. Procedural Background

Plaintiffs initiated this action on June 18, 2018. *See* Dkt. No. 1. On March 3, 2019, Plaintiffs filed an Amended Complaint, alleging that Israeli-based cosmetics producer Meshi was selling counterfeit versions of Star Gel hair gel, a product for which Plaintiffs have a federally registered U.S. trademark.[1] *See* Plaintiffs' Amended Complaint ("Am. Compl."), Dkt. No. 32. Meshi filed a motion to dismiss Plaintiffs' claims on May 2, 2019. *See* Dkt. No. 43. On March 30, 2020, United States District Judge LeShann DeArcy Hall issued an Order dismissing some of Plaintiffs' claims against Meshi. *See* Dkt. No. 51. Subsequently, after several years of discovery, on January 26, 2023, Meshi filed a motion for summary judgment against Plaintiffs. *See* Dkt. No. 99. Judge DeArcy Hall dismissed most of Plaintiffs' claims, however, she permitted Plaintiffs' claims for trademark infringement, false designation of origin, trademark dilution under New York

---

[1] In 2004, Global Manufacturing Import Export Inc. ("Global Manufacturing"), created the trademark for Star Gel hair gel ("the Trademark"). *See* Am. Compl. ¶ 4. Global Manufacturing entered into an agreement with Defendant Meshi on October 5, 2004, for manufacture of the Trademark. *See id.* ¶¶ 4, 6. Global Manufacturing then assigned its rights to the Trademark to International Grooming, Inc. ("International Grooming"). *See id.* ¶ 8. According to Plaintiffs, in November 2016 International Grooming discovered Meshi had been selling counterfeit versions of Star Gel. *See id.* ¶10. In 2017, International Grooming registered the Trademark with the U.S. Patent and Trademark Office and then assigned all rights to the Trademark to Elazar Rosenshine, who then assigned all rights to the Trademark to Plaintiffs on January 1, 2019. *See id.* at Ex. 6; Ex. 7, Ex. 8.

law, and breach of contract to proceed. *See* Dkt. No. 104. After several more years of litigation, the parties were scheduled to go to trial before Judge DeArcy Hall on April 21, 2025.

## II. April 2025 Settlement Discussions with the Court

On April 14, 2025, one week before trial, United States Magistrate Judge Lois Bloom, who was then-assigned to this case, held a settlement conference. During that conference, the parties exchanged a final demand and offer but could not reach an agreement on a settlement. *See* Order dated April 14, 2025. However, after the conference, Plaintiffs sent an email to the attorney for Meshi to accept the offer Meshi made at the settlement conference, absent some minor issues needing resolution. *See* Redacted Transcript at 3.

Around this time, United States Magistrate Judge Lara K. Eshkenazi was randomly selected to oversee jury selection for trial. *See* Order dated April 10, 2025. On April 18, 2025, Judge Eshkenazi held a video conference to discuss the jury selection process with the parties. *See* Order dated April 18, 2015. Given the movement toward settlement, the jury selection process became an impromptu settlement conference, where Judge Eshkenazi assisted the parties in reaching a final agreement.

## III. The Parties Agree to a Settlement on the Record

During the conference before Judge Eshkenazi, Plaintiffs and Defendant Meshi agreed to a settlement on the record. *See* Redacted Transcript; Minute Entry dated April 18, 2025. After much discussion, the parties reached an agreement on an amount of money to be paid by Meshi to Plaintiffs to settle the case.[2] *See* Redacted Transcript at 16, 49. The parties also agreed that Meshi would pay the settlement amount for a "mutual release," *see id.* at 51, that would resolve Plaintiffs'

---

[2] The specific monetary amount is not stated in this decision because the parties agreed to keep it confidential.

3

claims against Meshi "as if they went to trial and got a verdict on it in terms of those claims." *Id.* at 26.

Judge Eshkenazi painstakingly explained the proposed scope of release on the record. She explained the release would extinguish "[a]ll of the claims in this case," *see id.* at 45, and that "[a]nything that [Plaintiffs] could have raised related to the facts of this case, there will be a release which means [Plaintiffs] cannot sue [Meshi] again for this same issue and the same claims in this case." *Id.* at 18. Judge Eshkenazi emphasized that "all of the claims in this case go away . . . includ[ing] the claims that Judge DeArcy Hall ruled on in summary judgment." *Id.* at 45. These points were reiterated throughout the conference. *See, e.g., id.* at 20 ("[T]o the extent it's anything related to Star Gel products and what happened with Star Gel products and all of the claims in your complaint against Meshi, those would all be released."); *id.* at 47 ("After trial, every claim that is involved in this case, including what was decided on summary judgment that could have been raised, is done one way or the other . . . [a]nd that's the same thing that will happen if there's settlement.").

Importantly, Judge Eshkenazi made plain that "the result of the settlement is the same as the result of the trial in terms of the release." *Id.* at 47; *see also id.* at 26 ("[S]ettlement brings the same finality to this as a trial would. There's no difference."); *id.* at 31 ("Whether you go to trial or whether you sign the settlement, it's the same result."). She also reiterated that releases of all related claims are standard in settlements. *See, e.g., id.* at 23 ("The way settlements always work, always in every case, or no defendant would ever settle, is whatever is related to the claims in the complaint, those are settled and released."); *id.* at 24 ("[I]n every release in every settlement you are releasing all claims that they brought or could have brought based on the facts that they put forward in their complaint."); *id.* at 29 ("I can tell you how the courts work and I can tell you that

4

it is 100 percent standard that when you settle a case it gets rid of the whole case[.]"); *id.* at 34 ("In every case you release all claims related, that could have been brought in the case related to the facts.").

Ultimately, both Plaintiffs and Meshi agreed to the terms as explained on the record, with the understanding that the agreement would later be reduced to writing by the parties but was, nevertheless, already binding on the parties. *See, e.g.*, *id.* at 16 ("[THE COURT:] [O]nce we put the terms of the settlement on the record, it is a binding agreement."); *id.* at 17 ("[THE COURT:] [O]nce we put it on the record here of a [redacted] settlement, it is binding and enforceable."); *id.* at 45 ("Because yes, the language can be tweaked, but what's not going to change is the claims in this case."); *id.* at 50 ("THE COURT: But as I said, this settlement is binding, so don't come back to the Court next week and say you couldn't agree on the release and therefore there's no settlement."); *id.* at 51 ("[THE COURT:] [Y]ou've agreed to this and this is binding. Okay?").

### IV. The Parties Dispute the Proper Wording of the Settlement Release

Following the conference, Meshi's counsel drafted a Settlement Agreement and Mutual Release (the "Draft Agreement") and circulated it to Plaintiffs on April 30, 2025. *See* Dkt. No. 156-2. The release in the Draft Agreement stated: "Plaintiffs … hereby waive, release and forever discharge Meshi … from any and all claims … or causes of action of any kind or nature whatsoever … in connection with or arising from any claims … through the date of this Settlement Agreement relating to or arising from the facts alleged in the Amended Complaint." *See* Mot. to Enforce at 3. Plaintiffs rejected this language, which was broader in scope than the terms agreed to on the record. *See* Redacted Transcript at 47-48. Plaintiffs argued that they had agreed to a settlement that solely released them from one claim pertaining to a single sale from 2016, which was plainly more restrictive than the terms agreed to on the record. *See id.*

5

After further negotiation between the parties, Meshi revised the release language to read: "Plaintiffs … hereby release and forever discharge Meshi . . . from any and all claims … or causes of action of any kind or nature whatsoever … in connection with or arising from any claims … through the date of this Settlement Agreement for any and all claims in this Action as if a final judgment at trial was entered." *Id.*; Dkt. No. 156-2 Ex. A.  Plaintiffs rejected this language as well, insisting the release should be restricted to a single sale from 2016.  *See* Mot. to Enforce at 3.

### V. Meshi Brings the Instant Motion to Enforce the Settlement Agreement

On June 21, 2025, this matter was transferred from Judge Bloom to the undersigned.  *See* Order dated June 21, 2025.  In an attempt to resolve the issue, the undersigned convened both parties for conferences on August 4, 2025 and September 4, 2025 to discuss compromise release language.  The parties remained steadfast in their differences.  *See* Minute Entry dated Aug. 4, 2025; Minute Entry Dated Sept. 4, 2025.

On September 24, 2025, Defendant Meshi filed a Motion to Enforce the settlement agreement.  *See* Mot. to Enforce.  Plaintiffs served their Opposition on Defendant, and Defendant filed Plaintiffs' Opposition and Defendant's reply on October 29, 2025.  *See* Pls.' Opp'n; Defendant's Reply to Plaintiffs' Opposition ("Def.'s Reply"), Dkt. No. 166.  The Motion to Enforce was referred to the undersigned by Judge DeArcy Hall on September 26, 2025.  *See* Order dated Sept. 26, 2025.

### LEGAL STANDARD

"A settlement placed on the record is binding."  *Shea Dev. Corp. v. Watson*, 07-CV-11201, 2009 WL 274492, at *2 (S.D.N.Y. Feb. 3, 2009) (citing *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007)).  This is true even if the settlement agreement is never "reduced to writing, signed, or filed."  *Powell*, 497 F.3d at 129 (quoting *Role v. Eureka Lodge No. 434*, 402 F.3d 314, 318 (2d Cir.

6

2005)); *see also Samuel v. Bd. of Educ. of NYC*, 12-CV-4219, 2015 WL 10791896, at *3 (E.D.N.Y. Aug. 11, 2015), *aff'd sub nom. Samuel v. New York City Bd. of Educ.*, 668 F. App'x 381 (2d Cir. 2016) ("It is beyond question that verbal, in-court settlement agreements may be binding and enforceable, although the agreement was never reduced to writing."); *Medinol Ltd. v. Guidant Corp.*, 500 F. Supp. 2d 345, 353 (S.D.N.Y. 2007) ("A settlement stated on the record is one of the strongest and most binding agreements in the field of the law and is thus entitled to substantial deference.") (internal quotation marks omitted). An agreement is still enforceable even if a party has a "change of heart" before an oral settlement agreement can be reduced to writing. *Powell*, 497 F.3d at 129. "The party seeking to enforce the purported agreement bears the burden of proving that the parties entered into a binding agreement." *Velazquez v. Yog Servs., LLC*, 17-CV-842, 2017 WL 4404470, at *2 (S.D.N.Y. Sept. 25, 2017).

To determine whether parties have entered into an enforceable, binding contract absent a finalized written document, courts in the Second Circuit apply the four-factor test from *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78 (2d Cir. 1985). *See, e.g.*, *Edwards v. Schoenig*, 05-CV-5427, 2015 U.S. Dist. LEXIS 93381, at *6 (E.D.N.Y. Apr. 2, 2025); *Doe v. Kogut,* 15-CV-07726, 2017 WL 1287144, at *5 (S.D.N.Y. Apr. 6, 2017), *aff'd*, 759 F. App'x 77 (2d Cir. 2019). The factors are: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston*, 777 F.2d at 80.

Under *Winston*, "no single factor is decisive, but each provides significant guidance." *Marett v. Metro. Transp. Auth.*, 19-CV-5144, 2021 WL 961760, at *2 (S.D.N.Y. Mar. 15, 2021) (cleaned up). The "ultimate issue" of the *Winston* analysis is "whether the parties intended to be

7

bound, and if so to what extent." *Murphy v. Inst. of In'l Educ.*, 32 F.4th 146, 151 (2d Cir. 2022) (internal quotation marks omitted); *see also Chang v. CK Tours, Inc.*, 605 F. Supp. 3d 529, 538 (S.D.N.Y 2022) ("As with other agreements, that inquiry may be informed by the *Winston* factors, but only as a means to the ultimate end: determining and enforcing the parties' legitimately bargained expectations.").

## DISCUSSION

Meshi argues that Plaintiffs agreed to a binding and enforceable settlement on the record, which involved a release of all claims as if the parties had gone to trial. *See generally* Mot. to Enforce. Plaintiffs argue that there was no settlement agreement on the record because they allegedly reserved their right to see any release before agreeing to a settlement. *See* Pls.' Opp'n at 4. Alternatively, Plaintiffs argue that the parties agreed to a release of claims solely pertaining to the "single infringing sale of 3,600 units of Star Gel to A to Z Import Inc. that Meshi admitted to have made on November 23, 2016," and further that "Meshi and the Court both emphasized that the settlement does not cover any other sale besides the aforementioned single sale." *See* Decl. of Oren Rosenshine at 2 ¶4-5.

After analyzing each of the *Winston* factors and reviewing the record, the undersigned finds that the parties agreed to a binding settlement on the record with the assistance of a neutral and detached mediator, Judge Eshkenazi. The undersigned finds that parties agreed to a payment of a specific settlement amount by Meshi to Plaintiffs in exchange for release of all claims as if the parties had gone to trial, including claims that have already been adjudicated on summary judgment and claims that could have been brought. Thus, the undersigned respectfully recommends granting Defendant's Motion to Enforce the settlement agreement, ordering Meshi to pay the settlement amount to Plaintiffs, and dismissing this matter against Meshi with prejudice.

8

## I. Plaintiffs made no express reservation about the oral settlement agreement.

The first *Winston* factor that courts consider is whether "either party communicate[d] an intent not to be bound until he achieve[d] a fully executed document." *Winston*, 777 F.2d at 80. Although no one *Winston* factor is dispositive, the first factor is "frequently the most important." *Brown v. Cara,* 420 F.3d 148, 154 (2d Cir. 2005). Here, the undersigned finds that the parties understood and affirmatively agreed that their oral agreement was binding at the time they entered into it on the record. Thus, this important factor weighs in favor of enforcement.

At the outset of the April 18, 2025 conference, Judge Eshkenazi made clear the agreement on the record would be binding and enforceable:

> "[THE COURT:] And I want to explain that once we put the terms of the settlement on the record, it is a binding agreement. You cannot back out of it. You cannot two minutes after this call write and say I changed my mind. You can't call and say we changed our mind. You can't say I want [redacted] now. That's it. This is the settlement once the terms go on the record. It's a binding enforceable agreement."

Redacted Transcript at 16-17. The Court further explained, while a written version of the settlement would be circulated reflecting the terms of the agreement, the oral settlement agreement on the record would itself be binding and neither Plaintiff objected. *See id.* at 17. In fact, the Plaintiffs affirmatively indicated their agreement. *See id.*

Plaintiffs later expressed that they wanted to review the written language, and they now cite to these sections of the transcript as evidence that they did not intend to be bound by the agreement. *See* Pls.' Opp'n at 4. However, a request to review the written release does not negate an agreement to be bound by the settlement. Rather, "[b]ecause parties are free to enter into a binding oral settlement agreement even if they contemplate subsequently memorializing their oral agreement in writing, the mere fact that the parties contemplate a later writing is insufficient to

9

establish an intent not to be bound until that time." *Lindner v. Am. Exp. Corp.*, 06-CV-3834, 2007 WL 1623119, at *6 (S.D.N.Y. June 5, 2007); *see also Delyanis v. Dyna–Empire, Inc.*, 465 F. Supp. 2d 170, 174 (E.D.N.Y. 2006) ("[T]he parties' intent to record an agreement in the future does not prevent contract formation before execution."); *Aguiar v. New York*, 06-CV-3334, 2008 WL 4386761, at *5 (S.D.N.Y. Sept. 25, 2008), *aff'd as modified*, 356 F. App'x 523, 526 (2d Cir. 2009)) ("[S]imply because the parties contemplated that the agreement would be reduced to writing does not indicate that they had agreed, either explicitly or implicitly, not to be bound until a written agreement was signed.").

Further, a review of the proceedings *after* the sections cited by Plaintiffs only further affirms that the Plaintiffs understood the oral agreement to be binding. Judge Eshkenazi anticipated the exact argument that Plaintiffs now raise—that a dispute over the release may somehow undo the oral agreement—and made clear to Plaintiffs that it would not:

> "[THE COURT:] [T]his settlement is binding, so don't come back to the Court next week and say you couldn't agree on the release and therefore there's no settlement. We've explained the release... [Y]ou've agreed to this and this is binding. Okay? You can't change your minds. You can't change your mind tonight, you can't change your mind tomorrow, you can't change your mind on Monday."

Redacted Transcript at 50-51. After Judge Eshkenazi made this clear, the plaintiffs then explicitly agreed to the settlement. *See id.* at 51-52 ("THE COURT: Okay. So we have a settlement, yes? MR. O. ROSENSHINE: Yes. MR. A. ROSENSHINE: Mm hm. Yes. THE COURT: Mr. Amir Rosenshine? MR. A. ROSENSHINE: Yes.").

Additionally, the Minute Entry detailing the proceeding from the April 18, 2025 conference confirmed that the settlement on the record was binding. That docket entry reflects that "[t]he material terms of the settlement were discussed on the record and all parties confirmed

10

that they understood the settlement was binding[,]" and confirmed that the parties "allocated to understanding all of the material terms of the settlement and mutual releases, and *pro se* Plaintiffs confirmed that they were entering into the settlement knowingly and voluntarily." Minute Entry dated April 18, 2025. The Minute Entry cites to *Role*, 402 F.3d at 318, which holds that an agreement on the record is binding even absent a written document. *See id.; see also Samuel*, 2015 WL 10791896, at *4 (finding that the "icing on the cake" weighing in favor of enforcement under the first *Winston* factor was the presiding judge "entered a written order memorializing the fact that the parties had reached an agreement and that the case was settled."). Therefore, the entirety of the record affirms that Plaintiffs understood that their oral agreement was binding. *See, e.g.*, *Doe*, 2017 WL 1287144, at *5 (Affirming the enforcement of a settlement where the presiding judge stated explicitly that the parties were entering a binding and enforceable contract on the record and neither party objected).³

In sum, because Judge Eshkenazi explained on multiple occasions that the settlement agreement was binding and Plaintiffs not only failed to object but affirmatively agreed to settle on

---

³ Plaintiffs cite to *Lindner*, 2007 WL 1623119, where a settlement agreement was deemed not enforceable because there was an issue as to whether all terms were stated on the record. However, the circumstances in that case differ from the clear record here. The terms in *Lindner* were so unclear on the record that the Court commented that the defendants seeking to enforce the settlement should have requested the presiding judge "inquire more fully into the nature of Mr. Lindner's agreement, intent, and understanding, for example, inquiring whether Mr. Lindner understood that by agreeing to the terms of the agreement he was entering into a binding and enforceable agreement at the moment, and also that, by agreeing, his lawsuit would be dismissed and he would have no trial." *Id.* at 8. Here, the Court explained, thoroughly and repeatedly, that Plaintiffs were ending a binding settlement, reiterated the specific terms of that agreement, the parties agreed on the record to the settlement knowing the agreement to be binding, and the impending trial was cancelled. *See* Redacted Transcript at 16-17, 50-51. Plaintiffs also argue, per *Winston* and *Powell*, that even "minor" and "technical" changes arising during negotiations for a written settlement can point towards a conclusion that parties did not intend to be bound. *See* Pls.' Opp'n at 7. However, the *Powell* court clarified that such "minor" and "technical change" are relevant "only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect." *Powell*, 497 F.3d at 130. Here, much like in *Powell*, the "terms of this agreement were announced on the record and assented to by the plaintiff in open court." *Id.* at 131. As such, a party's "subsequent disagreement" with a term already agreed to does not "suggest that the point was left to be negotiated after the hearing." *Id.* at 130.

the record, the undersigned finds that the first *Winston* factor weighs in favor of enforcing the settlement agreement.

## II. The settlement agreement was partially performed.

The second *Winston* factor that Second Circuit courts consider is whether there has been partial performance of the contract. *See Winston*, 777 F.2d at 80. Here, the parties agreed on Friday, April 18, 2025 to adjourn the trial scheduled to take place Monday, April 21, 2025.[4] In other words, with a trial set to take place the very next business day, jury selection was cancelled, the trial was removed from the Court's calendar, and the parties ceased litigation. *See* Order dated April 21, 2025; Order dated May 9, 2025; Dkt. No. 162 at 9; Redacted Transcript at 53. The cessation of litigation, including the cancellation of a trial, can constitute partial performance. *See*, *e.g.*, *Geneva Lab'ys Ltd v. Nike W. African Imp. & Exp. Inc.*, 19-CV-4419, 2021 WL 7287611, at *6 (E.D.N.Y. Aug. 16, 2021) ("When both parties stop actively litigating the case based on the apparent settlement, courts may construe this as partial performance."); *Junjiang Ji v. Jling Inc.*, 15-CV-4194, 2019 WL 1441130, at *12 (E.D.N.Y. Mar. 31, 2019) ("Defendants partially performed by agreeing to adjourn the ongoing trial."); *Chang*, 605 F. Supp. 3d at 539 ("Here, the parties partially performed by jointly making the rather extraordinary request that the Court adjourn trial *minutes* before kickoff, in direct and immediate reliance on the settlement."); *Kaczmarczyk v. Acme Contr. LLC*, 06-CV-1005, 2009 U.S. Dist. LEXIS 110512, at *17 (E.D.N.Y. Nov. 3, 2009) ("There has been partial performance, however, by the plaintiffs, in the sense that they abandoned discovery and trial preparation, in contemplation of and reliance on the settlement

---

[4] In their Opposition, Plaintiffs argue the trial was "not canceled but adjourned to allow parties to finalize the terms of the settlement agreement[.]" *See* Pls.' Opp'n at 5. This semantic difference is inapposite; regardless of the word used, the parties cancelled the impending trial and jury selection with no backup date given the understanding that they had settled the case.

agreement."). Here, this agreement to adjourn the trial reflected the parties understanding that their dispute had been resolved.[5] Thus, the undersigned finds that the second *Winston* factor weighs in favor of enforcing the settlement.

### III. The terms of the settlement were agreed to on the record.

The third *Winston* factor requires courts to consider "whether all of the terms of the alleged contract have been agreed upon." *Winston,* 777 F.2d at 80. This factor requires that there was "literally nothing left to negotiate" at the time of the agreement. *Geneva Labs.*, 2022 U.S. Dist. LEXIS 39684, at *25 (internal citation and quotation marks omitted). Although Plaintiffs now claim they did not agree to the language and contents of the release, the April 18, 2025 conference ended with the understanding that the settlement had been completed and no terms needed to be negotiated. *See* Minute Entry dated April 18, 2025. Parties agreed to the timeframe of payment—20 days from the execution of the written agreement, *see* Redacted Transcript at 49—and, most importantly, the settlement amount. *See*, *e.g.*, *Gildea v. Design Distribs.*, 378 F. Supp. 2d 158, 161 (E.D.N.Y. 2005) ("The single most important term of the agreement[] [is] the settlement amount[.]"). The parties also agreed not to seek costs from each other. *See* Redacted Transcript at 13-16. And, although there was much negotiation over the scope of the release, Judge Eshkenazi set forth the agreed upon scope of the release during the conference.

Plaintiffs' arguments that there remained ambiguous terms surrounding the scope of the release and that the agreement only pertained to one product or one sale are contradicted by the record. When Plaintiffs did ask questions that injected ambiguity, Judge Eshkenazi was clear in her responses and Plaintiffs thereafter agreed to the settlement. For example, Plaintiff Amir

---

[5] Defendant Meshi also arguably partially performed by canceling its hotel reservations and airline tickets, *see* Redacted Transcript at 8-9, 11, booked for the trial that following Monday, at its own expense. *Cf. Jericho Grp. Ltd. v. Mid-Town Dev. Ltd. P'ship*, 14-CV-2329, 2016 WL 11263660, at *9 (E.D.N.Y. Dec. 5, 2016), *report and recommendation adopted*, 14-CV-2329, 2017 WL 4221068 (E.D.N.Y. Sept. 22, 2017).

13

Rosenshine asserted that the settlement would pertain only to the one 2016 transaction, and the Court responded quickly to clarify:

> "MR. A. ROSENSHINE: So we are going to trial on the (indiscernible). Right now, we're going to – if we're settling, we're settling for what we're going to trial on, one transaction.
>
> THE COURT: *No, you're settling the whole case.*"

Redacted Transcript at 27-28 (emphasis added). The Court reiterated the impact of the release minutes later:

> "MR. A. ROSENSHINE: So basically let's say we sign the settlement and tomorrow we find evidence that they did something back let's say two years ago, we can bring an action against them.
>
> THE COURT: No. *Related to the same claims and same product and same everything? No, you cannot.*"

*Id.* at 32 (emphasis added). And again, several minutes later:

> "[THE COURT:] In every case you release all claims related, that could have been brought in the case related to the facts. And if you go to trial, whatever happens at the trial, whether you win, whether they win, whatever happens, all those claims are done. They're done either way. It's finished. *Not the one transaction. Everything involved in the complaint. That's the final resolution.*"

*Id.* at 34 (emphasis added). When, once again, when Plaintiffs attempted to find a new angle to question the application of the releases to counterfeit sales aside from the 2016 sale, the Court reiterated the same position:

> "MR. A. ROSENSHINE: Let's say we -- the thing is that we filed this lawsuit in 2018 based on something they did in 2016. The lawsuit goes until now, 2025. When we filed the lawsuit, we just filed based on the 2016 sale. But if they did another sale, joined all those things at trial, then maybe it was brought based on this. So it's not really part of the lawsuit.
>
> THE COURT: It is part – it's done. I don't know how many more ways to explain this to you. *Whether you go to trial or whether you settle it, those claims are done.*"

14

*Id.* at 37 (emphasis added). That Plaintiffs now choose to simply disregard the clear terms as set forth by Judge Eshkenazi on the record does not negate the fact that, after these terms were specified, Plaintiffs agreed to the settlement. *See id.* at 48-52. *See also Chang,* 605 F. Supp. 3d at 540-41 ("Any lingering efforts to craft a precise release term cannot operate as an escape hatch for Defendants, permitting them to retroactively renounce the parties' clear, legitimately bargained expectation that each would be bound by the agreed-upon terms.").

Plaintiffs contend that the Court and Meshi represented to them that the Release applied to a single sale, relying entirely on one exchange where the Meshi attorney said that Plaintiffs can sue if there is "[a] whole new sale." Redacted Transcript at 42. The Court immediately clarified that they could sue for a new sale "that was not raised in [Plaintiffs'] complaint or could not have been raised . . . in [Plaintiffs'] complaint." *Id.* at 42.[6] Moreover, the transcript excerpt cited by Plaintiffs is best understood within the context of the entire conference, in which Plaintiffs were told repeatedly that the settlement, much like a trial, would release all claims that were or could have been brought in the complaint. *See*, *e.g.*, *id.* at 18-20, 21, 23, 26, 27, 28, 30-31, 32, 33, 34, 37, 40, 44, 47-48.

Defendant argues that the record supports a broader release, and that the agreement supports a full release for all claims up to and including present day. Defendant is correct that any previously adjudicated claims and claims that could have been brought to trial are necessarily included in the release. But it is also true that, as agreed to by Meshi's counsel, a hypothetical sale

---

[6] Plaintiffs further argue in their Opposition that they could not have possibly agreed to a "general release" because they are unfamiliar with that term. *See* Decl. of Oren Rosenshine, Dkt. No. 166-1 at 2 ¶ 7; Pls.' Opp'n at 3. That the *pro se* Plaintiffs are unfamiliar with specific legal jargon is inapposite when the contents and meaning of the release were explained and described to Plaintiffs repeatedly and thoroughly throughout the April 18, 2025 conference. *See Lauderdale v. City of New York*, 6-CV-13184, 2009 WL 2482158, at *3 (S.D.N.Y. Aug. 12, 2009) (noting that a plaintiff's *pro se* status "does not diminish the enforceability of the oral settlement agreement.").

15

that happened "yesterday" would fall outside the scope of release if the sale in question had not been previously adjudicated, had not been raised in the complaint, and could not have been raised in the complaint. *See id.* at 42-44, 48. In other words, the parties agreed to the terms of the release on the record after the Court explained, repeatedly and thoroughly, that the release would apply to all claims as if they had been decided at trial. Thus, the third *Winston* factor weighs in favor of enforcement.

### IV. The agreement at issue is type of contract usually committed to writing.

The final *Winston* factor assesses whether "whether the agreement at issue is the type of contract that is usually committed to writing." *Winston,* 777 F.2d at 80. The Second Circuit has recognized an exception to the usual rule that settlement agreements be in writing where the terms of the agreement were "announced on the record and assented to by the plaintiff in open court." *Powell,* 497 F.3d at 131; *see also* Minute Entry dated April 18, 2025 (citing *Role,* 402 F.3d at 318).

Additionally, oral settlement agreements are particularly common in settlements, like the one at issue, that involve a simple lump sum payment to be paid shortly after the signing of the agreement. *See, e.g.*, *Est. of Andrea Brannon v. City of New York*, 14-CV-02849, 2016 WL 1047078, at *3 (S.D.N.Y. Mar. 10, 2016) ("The Court finds that the lump sum . . . payment in this case was not sufficiently complex . . . such that there should be a formal writing.") (internal citation and quotation marks omitted); *Grullo v. Sodexo*, 23-CV-9142, 2025 WL 106120, at *3 (S.D.N.Y. Jan. 14, 2025) ("[B]ecause the settlement terms were simple, calling for a single lump sum payment, there is no indication that this is the type of contract usually committed to writing."). That Defendant's counsel made an off-hand remark about things "getting a little complicated," as Plaintiffs allude to in their Opposition, *see* Pls.' Opp'n at 7, has no bearing on the actual complexity

16

of the settlement agreement. Thus, the final *Winston* factor weighs in favor of enforcing the settlement.

## CONCLUSION

On April 18, 2025, Judge Eshkenazi took great pains to repeatedly and thoroughly lay out the terms of the parties' settlement agreement and explain to Plaintiffs that they were entering into a binding settlement. The terms of that agreement were for the payment by Meshi to Plaintiffs of a settlement amount, in exchange for Meshi to be released from claims as if they had gone to trial, including claims already adjudicated on summary judgment and claims that could have been raised in the initial complaint. Plaintiffs agreed to the settlement on the record and confirmed their understanding of its terms on multiple occasions. Thus, the undersigned recommends that Defendant's Motion to Enforce be GRANTED, that Meshi be ordered to pay Plaintiffs the amount agreed to on the record within 20 days of the Order, and that the Clerk of Court be directed to dismiss this case, with prejudice, as it pertains to Meshi.[7]

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of service. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). If any party fails to file timely objections to this Report and Recommendation, it will waive any right to further judicial review of the decision. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Kotlyarsky v. United States Dep't of Just.*, 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *Small v. Sec'y of HHS*, 892 F.2d 15, 16 (2d Cir. 1989).

---

[7] The undersigned notes that the settlement agreement does not relate to the other defendants in this case who have not yet appeared. On May 20, 2025, the Court ordered Plaintiffs to take appropriate action by May 30, 2025 regarding unresponsive Defendants A to Z Import Inc. and Eyal Noach. *See* Order dated May 9, 2025. Plaintiffs requested an entry of default on May 27, 2025. *See* Dkt. No. 151. The Clerk entered the certificate of default on June 3, 2025. *See* Dkt. No. 152. Defendant Meshi also confirmed at that conference that its Counsel does not represent A to Z and Eyal Noach and that the settlement on the record only pertains to Plaintiffs and Defendant Meshi. *See* Redacted Transcript at 18. The undersigned notes on April 18, 2025, Plaintiffs indicated that they planned to file a motion for default judgment against these defendants but, as yet, have failed to do so. *See id.* at 19.

17

**SO ORDERED.**

Dated: Brooklyn, New York
December 2, 2025

/S/ *SETH D. EICHENHOLTZ*
SETH D. EICHENHOLTZ
United States Magistrate Judge
Eastern District of New York